ORIGINAL

1    GARY E. WEISS (State Bar No. 122962)
      gweiss@orrick.com
2    FABIO E. MARINO (State Bar No. 183825)
      fmarino@orrick.com
3    MATTHEW H. POPPE (State Bar No. 177854) –
      mpoppe@orrick.com
4    ORRICK, HERRINGTON & SUTCLIFFE LLP
      1000 Marsh Road
5    Menlo Park, CA 94025
      Telephone:   650-614-7400
6    Facsimile:    650-614-7401

7    Attorneys for Plaintiffs
      BROCADE COMMUNICATIONS SYSTEMS, INC. AND
8    FOUNDRY NETWORKS, LLC

**FILED**

AUG 0 4 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9

10              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

12

13    BROCADE COMMUNICATIONS

14    SYSTEMS, INC., a Delaware corporation,
      and FOUNDRY NETWORKS, LLC, a
15    Delaware limited liability company,

16              Plaintiffs,

17          v.

18    A10 NETWORKS, INC., a California
      corporation, LEE CHEN, an individual,
19    RAJKUMAR JALAN, an individual, RON
      SZETO, an individual, and DAVID
20    CHEUNG, an individual,

21              Defendants.

Case No.   **CV-10-03428**

**COMPLAINT FOR PATENT
INFRINGEMENT, TRADE SECRET
MISAPPROPRIATION, BREACH OF
CONTRACT, INTERFERENCE
WITH PROSPECTIVE ECONOMIC
ADVANTAGE, INTERFERENCE
WITH CONTRACT, AND UNFAIR
COMPETITION UNDER CAL. BUS.
& PROF. CODE §§ 17200 et seq.**

**DEMAND FOR JURY TRIAL**

22

23

24

25

26

27

28

OHS West:260964448.2

COMPLAINT AND DEMAND FOR JURY TRIAL

1    Plaintiff Brocade Communications Systems, Inc. ("Brocade") and Foundry Networks,

2    LLC ("Foundry") (together, "Plaintiffs") allege as follows:

3        1.    Plaintiffs bring this action against defendants A10 Networks, Inc. ("A10"), Lee

4    Chen, Rajkumar Jalan, Ron Szeto, and David Cheung (collectively, "the Defendants") for patent

5    infringement, trade secret misappropriation, breach of contract, interference with prospective

6    economic advantage, interference with contract, and unfair competition under California Business

7    & Professions Code §§ 17200 *et seq.* This is an action for damages and injunctive relief arising

8    out of the Defendants' systematic theft and infringement of Plaintiffs' most valuable proprietary

9    information in application delivery technology. A10 is an entity composed primarily of former

10   employees of Foundry and Brocade and A10 was built unlawfully by exploiting Plaintiffs'

11   intellectual property.

12                                   **THE PARTIES**

13       2.    Plaintiff Brocade is a Delaware corporation with its principal place of business at

14   130 Holger Way, San Jose, California.

15       3.    Plaintiff Foundry is a Delaware limited liability company and was previously

16   named Foundry Networks, Inc. Foundry is a wholly owned subsidiary of Brocade. Brocade

17   acquired Foundry in December 2008, and thereafter has sold and further developed the former

18   Foundry products.

19       4.    Defendant A10 is a California corporation with its principal place of business at

20   2309 Bering Drive, San Jose, California.

21       5.    Defendant Lee Chen is a former founder and employee of Foundry and, on

22   information and belief, is the founder and Chief Executive Officer of A10. Chen resides in

23   Saratoga, California.

24       6.    Defendant Rajkumar Jalan is a former Foundry employee. Jalan resides in

25   Saratoga, California.

26       7.    Defendant Ron Szeto is a former Foundry employee. Szeto resides in Pleasanton,

27   California.

28       8.    Defendant David Cheung is a former Foundry and Brocade employee. Cheung

1   resides in Cupertino, California.

2                           **JURISDICTION AND VENUE**

3         9.      This Court has subject matter jurisdiction over this action pursuant to, *inter alia*,

4   28 U.S.C. §§ 1331, 1338(a) and (b), 1367, and the Patent Act, 35 U.S.C. §§ 1 *et seq.*

5         10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, *inter alia*,

6   a substantial part of the events and omissions giving rise to the claims occurred here and the

7   Defendants reside in this district and are subject to personal jurisdiction in this district.  Division

8   assignment to the San Jose Division of the United States District Court for the Northern District

9   of California is proper pursuant to Civil Local Rule 3-2(e) because this is an Intellectual Property

10  Action that arose in, among other places, Santa Clara County.

11                          **FACTUAL ALLEGATIONS**

12  **A.    Brocade, Foundry And The Layer 4-7 Proprietary Technology.**

13        11.     Brocade is an industry leader in providing innovative, high-performance, and

14  reliable networking solutions.  The United States Patent and Trademark Office has acknowledged

15  Brocade's innovative leadership in this field by awarding to Brocade nearly 100 patents in the

16  United States alone.

17        12.     Prior to Brocade's acquisition of Foundry, Foundry was an industry leader in the

18  design, manufacture, and sale of networking solutions, including application delivery systems

19  (also referred to as "Layer 4-7" systems), and also was awarded numerous U.S. patents.  After the

20  acquisition, Foundry's employees (including Defendant Cheung) became Brocade employees,

21  and Brocade began selling and further developing the former Foundry products, including the

22  Layer 4-7 systems, such as the ServerIron and ADX product lines.

23        13.     Foundry and now Brocade are leading innovators in application delivery systems,

24  including server load balancers and other networking technology intended to optimize Internet

25  performance and reliability.  The technology at issue may be used, for example, to optimize

26  network traffic between the Internet and a group of web servers.  Application delivery technology

27  has been and is a fundamental part of Plaintiffs' ServerIron and ADX products.

28        14.     The U.S. Patent and Trademark Office awarded Foundry numerous patents (later

1    assigned to Brocade) for its Layer 4-7 technology and other networking technology.  Among

2    them are U.S. Patent Nos. 7,558,195 ("the '195 Patent"), 7,581,009 ("the '009 Patent"),

3    7,454,500 ("the '500 Patent"), 7,574,508 ("the '508 Patent"), 7,649,427 ("the '427 Patent"),

4    7,657,629 ("the '629 Patent"), 7,584,301 ("the '301 Patent"), 7,716,370 ("the '370 Patent"), and

5    7,720,977 ("the '977 Patent") (collectively, "the Patents-in-suit").

6         15.    Plaintiffs have invested millions of dollars and enormous amounts of time into the

7    research, development, design and refinement of their products, including the ServerIron and

8    ADX products.  Such investment is necessary to design the sophisticated processes and

9    equipment that will satisfy the high standards of performance and reliability required by

10   Plaintiffs' customers.

11        16.    Through the substantial investment of time and money, Plaintiffs have developed

12   proprietary and confidential technical information used in connection with their Layer 4-7

13   technology, ServerIron products, and ADX products.  This proprietary information concerns, for

14   instance, the design and technology best suited for the products, software code, including source

15   code written for the products, the performance capabilities, constraints and challenges for the

16   product, as well as potential product development plans.  These trade secrets have allowed, and

17   continue to allow, Plaintiffs to design, implement, customize, service, and sell the ServerIron and

18   ADX products in an effective and cost-efficient manner.

19        17.    Along with the above-described technical trade secrets, Plaintiffs have developed a

20   great deal of valuable, proprietary, and confidential information regarding the customers and

21   marketing of their ServerIron and ADX products, including, for instance:  the unique needs,

22   attitudes, constraints, and experiences of each customer; the features and specifications of the

23   products and systems that each customer has purchased or needs; the terms of agreements

24   between Plaintiffs and their customers; and the identities and preferences of key personnel at each

25   customer.  These trade secrets have allowed, and continue to allow, Plaintiffs to optimize their

26   offerings, contracts, pricing, performance, marketing and sales, and to maintain good

27   relationships with their customers.

28        18.    Plaintiffs also have developed a great deal of confidential, proprietary, and

1   valuable information regarding the skill levels, experience, specialties, performance attributes,

2   compensation levels, and attitudes of their employees.  These trade secrets have enabled, and

3   continue to enable, Plaintiffs to maintain their premier employee base, and to allocate those

4   employees who are best suited and/or most experienced to particular customers and projects, all

5   of which enhances Plaintiffs' technology, products, performance, and relationships with their

6   customers and prospective customers.

7        19.    Plaintiffs have exercised reasonable efforts to preserve the secrecy of the above-

8   described trade secrets.  Among other measures, Plaintiffs' employees, in consideration for their

9   employment and receipt of confidential information, are required to sign agreements not to

10  disclose to any unauthorized person, or to use for any unauthorized purpose, any secret,

11  confidential or proprietary information connected with Plaintiffs' businesses.

12       20.    Defendant Chen was a co-founder of Foundry, and served as its Vice President of

13  Software Engineering until his departure in September 2004.  Chen supervised teams of engineers

14  responsible for the development of Foundry's Layer 4-7 technology, as well as Foundry's

15  ServerIron products.  Chen had complete access to Foundry's technical, customer and employee

16  trade secrets described above, including design documentation, product development plans and

17  software code used in Foundry's products.  Chen also supervised the named inventors of the

18  Patents-in-suit and was on Foundry's patent review committee.

19       21.    As a founder and executive officer, Chen enjoyed a position of trust and

20  confidence at Foundry, which gave him full access to all aspects of Foundry's proprietary

21  technology and intellectual property.  In particular, Chen was aware that Foundry had filed

22  several patent applications, some of which resulted in the Patents-in-suit, and maintained its

23  secret technical, customer, and employee information as trade secrets.  Chen also had personal

24  knowledge of the Foundry technology disclosed and claimed in the Patents-in-suit and the

25  Foundry products that embodied that technology.

26       22.    On July 7, 2004, while still employed by Foundry, Chen formed Raksha Networks,

27  Inc.  Raksha Networks was later renamed as A10.  On information and belief, before forming his

28  company, Chen devoted substantial time and effort to the development of A10.  On information

1    and belief, Chen resigned from Foundry to devote his efforts solely to Raksha/A10.

2        23.    On information and belief, Chen covertly, and under a pretext of developing non-
3    competing products, decided that A10 would operate in precisely the same specialized market as
4    Foundry, and thereby compete directly with Foundry.  Consequently, Chen set out to build his
5    company and develop products (the "Accused Products"), such as the A10 AX Series network
6    devices, that would copy and compete directly with the Foundry ServerIron products which he
7    helped develop while at Foundry.

8        24.    Chen and A10 recruited and hired more than two dozen employees from Plaintiffs.
9    At any given time since its inception, the ex-employees of Plaintiffs comprised anywhere from
10   1/3 to 1/2 of A10's entire work force.  On information and belief, A10 developed, marketed, and
11   sold its products through the acquisition and use of Plaintiffs' trade secrets.  On information and
12   belief, Chen determined the features to include in the Accused Products with full knowledge of
13   the content of the Patents-in-suit.

14       25.    Defendants Jalan and Szeto are former Foundry employees who, on information
15   and belief, were specifically recruited by Chen to work for A10.  On information and belief, Chen
16   targeted Jalan and Szeto because of their intimate knowledge of Foundry's valuable proprietary
17   technology and trade secrets as a result of their work in the development of the ServerIron
18   products, as well as their institutional knowledge of Foundry and its networking products,
19   including Layer 2-3 and other Layer 4-7 products.  While employed at Foundry, Jalan was the
20   chief architect of the ServerIron product line and Szeto was a senior engineer closely involved
21   with Jalan in the development of the ServerIron product line.  Both Jalan and Szeto also worked
22   at Foundry on Foundry's Layer 2-3 networking products.

23       26.    On information and belief, the hiring of Jalan and Szeto by A10 was strategic and
24   deliberate – to enable A10 to jump-start its development and bring to market a competing product
25   line in 2-3 years (or less) instead of a norm of 7-10 years in this industry.  Chen later publicly
26   boasted in an interview to an industry publication that the success of his company was due to the
27   fact that he had recruited "two of the best engineers from Foundry."

28       27.    On information and belief, Jalan is A10's Chief Technology Officer and Szeto is a

1   Software Manager at A10.  On information and belief, Jalan and Szeto have been deeply involved

2   in the development of the Accused Products from the time they joined A10 to the present and

3   both knew of the underlying patent applications that yielded the Patent-in-suit and of Foundry's

4   activities to patent its technology.

5        28.     Before leaving Foundry, Jalan and Szeto were very familiar with the Foundry trade

6   secrets, the design, performance, and constraints of the Foundry products, and the technology

7   identified in the Patents-in-suit, as well as the Foundry patent applications filed thereon.  For

8   example, Jalan is a named inventor on the '195 Patent, the '009 Patent, and the '500 Patent.  On

9   information and belief, Jalan and Szeto used the Foundry trade secrets, including Foundry's

10  source code, in the development of the A10 products and developed the A10 products with full

11  knowledge of the content of the Patents-in-suit.

12       29.     Defendant Cheung is a former Foundry and Brocade Layer 4-7 software engineer

13  who served in various roles at both companies, including Director of Layer 4-7 Software, from

14  July 1998 until his termination on March 15, 2010.  Cheung also had access to Plaintiffs' trade

15  secrets during his employment at Foundry and later Brocade.

16       30.     On information and belief, Cheung maintained a close relationship with Chen

17  during and after Chen's employment at Foundry.

18       31.     On information and belief, it was common practice, after Chen left Foundry, for

19  Chen to regularly socialize at Silicon Valley area restaurants and to frequently communicate by

20  electronic mail with Cheung and other Foundry and Brocade engineers (several of whom

21  subsequently joined A10).  On information and belief, at least Jalan also has been in

22  communication with Foundry and Brocade engineers since joining A10.

23       32.     On information and belief, Chen and other A10 employees used these social

24  gatherings to selectively recruit Plaintiffs' employees that had knowledge of Plaintiffs'

25  proprietary technology and trade secrets to leave Plaintiffs and join A10.

26       33.     On information and belief, at Chen's request, Cheung met with Chen and A10

27  engineers at A10's facility.

28       34.     On information and belief, at Chen's request, Cheung disclosed Plaintiffs'

1 technical trade secrets to Chen and A10 engineers with knowledge that Chen and the A10

2 engineers would use the information for A10's benefit.

3       35.    As Foundry employees, the individual defendants each signed contracts entitled

4 "Proprietary Information and Inventions Agreement" (the "Agreement"). Paragraph 1 of the

5 Agreement is entitled "Recognition of Company's Rights; Nondisclosure," and provides:

> At all times during the term of my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing. I hereby assign to the Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of the Company and its assigns and that the Company and its assigns shall be the sole owner of all patent rights, copyrights, mask work rights, trade secret rights and all other rights throughout the world in connection therewith.

13       36.    The Agreement defines "Proprietary Information" as "trade secrets, confidential

14 knowledge, data or any other proprietary information of the Company." By way of illustration,

15 but not limitation, the Agreement specified that Proprietary Information includes "information

16 regarding plans for research, development, new products, marketing and selling, business plans,

17 budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers;

18 and information regarding the skills and compensation of other employees of the Company."

19       37.    Paragraph 3(a) of the Agreement is entitled "Assignment of Inventions," and it

20 provides:

> I hereby assign to the Company all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or registerable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company.

24       38.    Paragraph 7 of the Agreement is entitled "Additional Activities," and it provides:

> I agree that during the period of my employment with the Company I will not, without the Company's express written consent, engage in any employment or business activity other than for the Company, and for the period of my employment by the Company and for one (1) year after the date of my employment by the Company I will not (i) induce any employee of the Company to leave the employ of the

1  Company or (ii) solicit the business of any client or customer of the
   Company (other than on behalf of the Company).

2

3  39.     Defendants Chen, Cheung, Jalan and Szeto continue to owe a contractual duty to

4  Plaintiffs not to disclose, use or retain their trade secrets without express written authorization.

5  The executed agreements are attached to the Complaint as **Exhibits A through D**, respectively.

6  **B.    Defendants Have Misappropriated Plaintiffs' Trade Secrets And Valuable
         Information.**

7

8  40.     On information and belief, the Defendants have engaged in schemes to

9  misappropriate for A10's use Plaintiffs' intellectual property with which they have familiarity as

10 a result of their employment, experience, and positions of confidence and trust at Foundry and

11 Brocade. The Defendants have misappropriated Plaintiffs' technical trade secrets as described

12 above, as well as the sales, marketing, and customer trade secrets. These were acquired through

13 the illicit use of Plaintiffs' employee trade secrets to enable Defendants to recruit Plaintiffs'

14 personnel. In effect, the Defendants embarked on a strategy to unlawfully leverage all aspects of

15 Plaintiffs' confidential and proprietary information in order to form a "turn-key" enterprise to

16 compete unfairly against the Plaintiffs in their unique market segment.

17 41.     According to a recent article published in the San Jose Mercury News, A10 has

18 sixty-seven employees. Of those, no fewer than twenty-four are former Foundry and Brocade

19 employees with intimate knowledge of Plaintiffs' proprietary technology, intellectual property

20 and highly-sensitive customer lists and contact information.

21 42.     On information and belief, the Defendants strategically recruited Plaintiffs'

22 employees with access to and knowledge of critical trade secrets and proprietary information. For

23 example, on information and belief, while the accused AX product was being planned, designed

24 and developed, A10's recruitment efforts from Foundry focused on, though was not limited to, a

25 significant number of Foundry engineers with access to and knowledge of Plaintiffs' source code

26 and other technical trade secrets, including Defendants Jalan and Szeto, Dan Chen, John Jokom,

27 Martina Pavloff, Brian Cho, Wen Chiu, John Wei, Steve Dwyer, Joyce Taylor, John Forte, Nick

28 Loglisci, Phillip Kwan, Gurudeep Kamat, and Liang Han. On information and belief, a number

1  of these individuals, including Loglisci, Wei, and Taylor, were privy to highly confidential sales,

2  marketing and customer information, including Plaintiffs' customer trade secrets. On information

3  and belief, each of these individuals also had access to Plaintiffs' employee trade secrets.

4      43.    On information and belief, A10 was funded at least in part by the investments of

5  several current and former Foundry and Brocade employees, including Cheung who continued to

6  work at Foundry, and later Brocade, where he had unfettered access to Plaintiffs' trade secrets

7  and proprietary information.

8  **C.**    **A10 Announces A Competing Product And Recruits Plaintiffs' Sales Staff To Sell It.**

9      44.    On information and belief, in and around late 2007, A10 announced a product line

10  known as the AX Series. The AX Series directly competes with the ServerIron and ADX

11  products. On information and belief, by using Plaintiffs' trade secrets, A10 was able to bring the

12  AX Series products to market more quickly and more cheaply than would have otherwise been

13  possible, thereby gaining an unfair competitive advantage over the Plaintiffs.

14      45.    On information and belief, the A10 AX Series products utilize software code

15  copied or substantially derived from Plaintiffs' trade secret software code.

16      46.    On information and belief, A10, including Chen, Jalan, and Szeto after their

17  employment by Foundry ended, possessed and, on information and belief still possess, one or

18  more unauthorized copies of the Foundry source code, which embodies Plaintiffs' trade secrets.

19  The individual defendants and others at A10 used this Foundry source code to develop the

20  software code for the Accused Products, and actually incorporated the Foundry source code in

21  whole or in part, into the code for the competing AX series.

22      47.    On information and belief, between 2008 and 2010, after having built the AX

23  Series products, which bear striking similarities to Plaintiffs' ServerIron products, A10

24  commenced a second phase of recruitment targeting Plaintiffs' sales and marketing personnel so

25  that A10 could leverage Plaintiffs' experience, knowledge, and customer contacts to sell the AX

26  Series products to Plaintiffs' actual and prospective customers.

27      48.    On information and belief, A10 recruited from Plaintiffs vital sales personnel to

28  join A10, including Lynn Sommerset, Todd Harcourt, Guy Butler, Bryan Meckley, Asoka De

1   Saram, Roland Messmer, and Vincent Mischke. On information and belief, during their

2   employment at Foundry and Brocade, these employees had access to trade secrets, including

3   confidential sales and marketing information regarding Plaintiffs' products and customers. On

4   information and belief, after joining A10, the Plaintiffs' former sales personnel continued to

5   market and sell to the same customers on behalf of A10 using Plaintiffs' trade secrets.

6        49.    On information and belief, A10 marketed its products by using Plaintiffs'

7   proprietary information and disrupting Plaintiffs' anticipated business relations. For example, on

8   information and belief, A10 claimed publicly that it "knows the weaknesses of Brocade's

9   products and fixed them." In addition, on information and belief, A10 stated that it provides the

10  "next generation of Foundry product" and that it offers "twice the performance at half the price"

11  of the ServerIron and ADX products. A10 even induced Plaintiffs' employees to intentionally

12  interfere with customer sales calls and meetings prior to their departure from Foundry and

13  Brocade. The combination of A10's unauthorized use of Plaintiffs' trade secrets and the false and

14  misleading statements to customers regarding Plaintiffs' businesses, products, and services has

15  resulted in the actual interference with Plaintiffs' prospective economic advantage and relations.

16  A10's practices have harmed longstanding customer relationships and have resulted in lost

17  business.

18       50.    As a result of the conduct described above, A10 (and/or third parties acting on

19  A10's behalf) manufactures, imports, sells, and/or offers to sell products, including its AX Series

20  products, that infringe the Patents-in-suit. A10 has competed directly with Plaintiffs' products

21  and product lines, such as the ServerIron products, on which some or all of these former

22  employees worked. On information and belief, some or all of these former Foundry and Brocade

23  employees have worked on the Accused Products.

24  **FIRST CLAIM FOR RELIEF**

25  **(Infringement of U.S. Patent 7,558,195 Against All Defendants Except Cheung)**

26       51.    Each of the foregoing paragraphs is incorporated in this First Claim for Relief as if

27  fully set forth herein.

28

1    52.    On July 7, 2009, the '195 Patent duly and legally issued to Foundry under its

2    former name of Foundry Networks, Inc.  This patent is titled "System and Method for Providing

3    Network Route Redundancy Across Layer 2 Devices."  A copy of the '195 Patent is attached

4    hereto as **Exhibit E** and made a part hereof.

5    53.    Brocade is the owner of the '195 Patent pursuant to an assignment from Foundry

6    and has the right to enforce the '195 Patent, including the right to bring this suit for injunctive

7    relief and damages.

8    54.    On information and belief, A10, Chen, Jalan, and Szeto have infringed and are

9    infringing the '195 Patent by making, using, selling, offering for sale, and/or importing, without

10   authority, products and services that are covered by one or more claims of the '195 Patent,

11   including, but not limited to, the Accused Products like the AX Series products.

12   55.    On information and belief, A10 and certain of its officers and employees,

13   including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '195 Patent

14   and/or one or more of the applications underlying the patent and, despite such knowledge, A10,

15   Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of

16   infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '195 Patent.

17   56.    Brocade has been and continues to be damaged by the infringement by A10, Chen,

18   Jalan, and Szeto of the '195 Patent, in an amount to be determined at trial.

19   57.    Brocade has suffered irreparable injury for which there is no adequate remedy at

20   law and will continue to suffer such irreparable injury unless the aforementioned infringement of

21   the '195 Patent is enjoined by this Court.

22   58.    This is an exceptional case and entitles Brocade to attorneys' fees and costs

23   incurred in prosecuting this action under 35 U.S.C. § 285.

24
                         **SECOND CLAIM FOR RELIEF**
25          **(Infringement of U.S. Patent 7,581,009 Against All Defendants Except Cheung)**

26   59.    Each of the foregoing paragraphs is incorporated in this Second Claim for Relief

27   as if fully set forth herein.

28

1       60.    On August 25, 2009, the '009 Patent duly and legally issued to Foundry under its

2   former name of Foundry Networks, Inc. This patent is titled "Global Server Load Balancing." A

3   copy of the '009 Patent is attached hereto as **Exhibit F** and made a part hereof.

4       61.    Brocade is the owner of the '009 Patent pursuant to an assignment from Foundry

5   and has the right to enforce the '009 Patent, including the right to bring this suit for injunctive

6   relief and damages.

7       62.    On information and belief, A10, Chen, Jalan, and Szeto have infringed and are

8   infringing the '009 Patent by making, using, selling, offering for sale, and/or importing, without

9   authority, products and services that are covered by one or more claims of the '009 Patent,

10   including, but not limited to, the Accused Products like the AX Series products.

11       63.    On information and belief, A10 and certain of its officers and employees,

12   including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '009 Patent

13   and/or one or more of the applications underlying the patent and, despite such knowledge, A10,

14   Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of

15   infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '009 Patent.

16       64.    Brocade has been and continues to be damaged by the infringement by A10, Chen,

17   Jalan, and Szeto of the '009 Patent, in an amount to be determined at trial.

18       65.    Brocade has suffered irreparable injury for which there is no adequate remedy at

19   law and will continue to suffer such irreparable injury unless the aforementioned infringement of

20   the '009 Patent is enjoined by this Court.

21       66.    This is an exceptional case that entitles Brocade to attorneys' fees and costs

22   incurred in prosecuting this action under 35 U.S.C. § 285.

23   

**THIRD CLAIM FOR RELIEF**

24   **(Infringement of U.S. Patent 7,454,500 Against All Defendants Except Cheung)**

25       67.    Each of the foregoing paragraphs is incorporated in this Third Claim for Relief as

26   if fully set forth herein.

27       68.    On November 18, 2008, the '500 Patent duly and legally issued to Foundry under

28

1   its former name of Foundry Networks, Inc. This patent is titled "Global Server Load Balancing."

2   A copy of the '500 Patent is attached hereto as **Exhibit G** and made a part hereof.

3        69.    Brocade is the owner of the '500 Patent pursuant to an assignment from Foundry

4   and has the right to enforce the '500 Patent, including the right to bring this suit for injunctive

5   relief and damages.

6        70.    On information and belief, A10, Chen, Jalan, and Szeto have infringed and are

7   infringing the '500 Patent by making, using, selling, offering for sale, and/or importing, without

8   authority, products and services that are covered by one or more claims of the '500 Patent,

9   including, but not limited to, the Accused Products like the AX Series products.

10       71.    On information and belief, A10 and certain of its officers and employees,

11  including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '500 Patent

12  and/or one or more of the applications underlying the patent and, despite such knowledge, A10,

13  Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of

14  infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '500 Patent.

15       72.    Brocade has been and continues to be damaged by the infringement by A10, Chen,

16  Jalan, and Szeto of the '500 Patent, in an amount to be determined at trial.

17       73.    Brocade has suffered irreparable injury for which there is no adequate remedy at

18  law and will continue to suffer such irreparable injury unless the aforementioned infringement of

19  the '500 Patent is enjoined by this Court.

20       74.    This is an exceptional case that entitles Brocade to attorneys' fees and costs

21  incurred in prosecuting this action under 35 U.S.C. § 285.

22  **FOURTH CLAIM FOR RELIEF**<br>**(Infringement of U.S. Patent 7,574,508 Against All Defendants Except Cheung)**

23

24       75.    Each of the foregoing paragraphs is incorporated in this Fourth Claim for Relief as

25  if fully set forth herein.

26       76.    On August 11, 2009, the '508 Patent duly and legally issued to Foundry under its

27  former name of Foundry Networks, Inc. This patent is titled "Canonical name (CNAME)

28  Handling for Global Server Load Balancing." A copy of the '508 Patent is attached hereto as

1    **Exhibit H** and made a part hereof.

2        77.    Brocade is the owner of the '508 Patent pursuant to an assignment from Foundry

3    and has the right to enforce the '508 Patent, including the right to bring this suit for injunctive

4    relief and damages.

5        78.    On information and belief, A10, Chen, Jalan, and Szeto have infringed and are

6    infringing the '508 Patent by making, using, selling, offering for sale, and/or importing, without

7    authority, products and services that are covered by one or more claims of the '508 Patent,

8    including, but not limited to, the Accused Products like the AX Series products.

9        79.    On information and belief, A10 and certain of its officers and employees,

10   including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '508 Patent

11   and/or one or more of the applications underlying the patent and, despite such knowledge, A10,

12   Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of

13   infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '508 Patent.

14       80.    Brocade has been and continues to be damaged by the infringement by A10, Chen,

15   Jalan, and Szeto of the '508 Patent, in an amount to be determined at trial.

16       81.    Brocade has suffered irreparable injury for which there is no adequate remedy at

17   law and will continue to suffer such irreparable injury unless the aforementioned infringement of

18   the '508 Patent is enjoined by this Court.

19       82.    This is an exceptional case that entitles Brocade to attorneys' fees and costs

20   incurred in prosecuting this action under 35 U.S.C. § 285.

21                              **FIFTH CLAIM FOR RELIEF**
                **(Infringement of U.S. Patent 7,647,427 Against All Defendants Except Cheung)**

22

23       83.    Each of the foregoing paragraphs is incorporated in this Fifth Claim for Relief as if

24   fully set forth herein.

25       84.    On January 12, 2010, the '427 Patent duly and legally issued to Foundry under its

26   former name of Foundry Networks, Inc.  This patent is titled "Redundancy Support for Network

27   Address Translation (NAT)."  A copy of the '427 Patent is attached hereto as **Exhibit I** and made

28   a part hereof.

85. Brocade is the owner of the '427 Patent pursuant to an assignment from Foundry and has the right to enforce the '427 Patent, including the right to bring this suit for injunctive relief and damages.

86. On information and belief, A10, Chen, Jalan, and Szeto have infringed and are infringing the '427 Patent by making, using, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '427 Patent, including, but not limited to, the Accused Products like the AX Series products.

87. On information and belief, A10 and certain of its officers and employees, including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '427 Patent and/or one or more of the applications underlying the patent and, despite such knowledge, A10, Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '427 Patent.

88. Brocade has been and continues to be damaged by the infringement by A10, Chen, Jalan, and Szeto of the '427 Patent, in an amount to be determined at trial.

89. Brocade has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless the aforementioned infringement of the '427 Patent is enjoined by this Court.

90. This is an exceptional case that entitles Brocade to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## SIXTH CLAIM FOR RELIEF
### (Infringement of U.S. Patent 7,657,629 Against All Defendants Except Cheung)

91. Each of the foregoing paragraphs is incorporated in this Sixth Claim for Relief as if fully set forth herein.

92. On February 2, 2010, the '629 Patent duly and legally issued to Foundry under its former name of Foundry Networks, Inc. This patent is titled "Global Server Load Balancing." A copy of the '629 Patent is attached hereto as **Exhibit J** and made a part hereof.

93. Brocade is the owner of the '629 Patent pursuant to an assignment from Foundry and has the right to enforce the '629 Patent, including the right to bring this suit for injunctive

1   relief and damages.

2       94.     On information and belief, A10, Chen, Jalan, and Szeto have infringed and are

3   infringing the '629 Patent by making, using, selling, offering for sale, and/or importing, without

4   authority, products and services that are covered by one or more claims of the '629 Patent,

5   including, but not limited to, the Accused Products like the AX Series products.

6       95.     On information and belief, A10 and certain of its officers and employees,

7   including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '629 Patent

8   and/or one or more of the applications underlying the patent and, despite such knowledge, A10,

9   Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of

10  infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '629 Patent.

11      96.     Brocade has been and continues to be damaged by the infringement by A10, Chen,

12  Jalan, and Szeto of the '629 Patent, in an amount to be determined at trial.

13      97.     Brocade has suffered irreparable injury for which there is no adequate remedy at

14  law and will continue to suffer such irreparable injury unless the aforementioned infringement of

15  the '629 Patent is enjoined by this Court.

16      98.     This is an exceptional case that entitles Brocade to attorneys' fees and costs

17  incurred in prosecuting this action under 35 U.S.C. § 285.

18                      **SEVENTH CLAIM FOR RELIEF**
        **(Infringement of U.S. Patent 7,584,301 Against All Defendants Except Cheung)**
19

20      99.     Each of the foregoing paragraphs is incorporated in this Seventh Claim for Relief

21  as if fully set forth herein.

22      100.    On September 1, 2009, the '301 Patent duly and legally issued to Foundry under

23  its former name of Foundry Networks, Inc. This patent is titled "Host-Level Policies For Global

24  Server Load Balancing." A copy of the '301 Patent is attached hereto as **Exhibit K** and made a

25  part hereof.

26      101.    Brocade is the owner of the '301 Patent pursuant to an assignment from Foundry

27  and has the right to enforce the '301 Patent, including the right to bring this suit for injunctive

28

1   relief and damages.

2      102.    On information and belief, A10, Chen, Jalan, and Szeto have infringed and are

3   infringing the '301 Patent by making, using, selling, offering for sale, and/or importing, without

4   authority, products and services that are covered by one or more claims of the '301 Patent,

5   including, but not limited to, the Accused Products like the AX Series products.

6      103.    On information and belief, A10 and certain of its officers and employees,

7   including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '301 Patent

8   and/or one or more of the applications underlying the patent and, despite such knowledge, A10,

9   Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of

10  infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '301 Patent.

11     104.    Brocade has been and continues to be damaged by the infringement by A10, Chen,

12  Jalan, and Szeto of the '301 Patent, in an amount to be determined at trial.

13     105.    Brocade has suffered irreparable injury for which there is no adequate remedy at

14  law and will continue to suffer such irreparable injury unless the aforementioned infringement of

15  the '301 Patent is enjoined by this Court.

16     106.    This is an exceptional case that entitles Brocade to attorneys' fees and costs

17  incurred in prosecuting this action under 35 U.S.C. § 285.

18
## EIGHTH CLAIM FOR RELIEF
**(Infringement of U.S. Patent 7,716,370 Against All Defendants Except Cheung)**
19

20     107.    Each of the foregoing paragraphs is incorporated in this Eighth Claim for Relief as

21  if fully set forth herein.

22     108.    On May 11, 2010, the '370 Patent duly and legally issued to Foundry under its

23  former name of Foundry Networks, Inc.  This patent is titled "Redundancy Support for Network

24  Address Translation (NAT)."  A copy of the '370 Patent is attached hereto as **Exhibit L** and

25  made a part hereof.

26     109.    Brocade is the owner of the '370 Patent pursuant to an assignment from Foundry

27  and has the right to enforce the '370 Patent, including the right to bring this suit for injunctive

28

1 relief and damages.

2      110.    On information and belief, A10, Chen, Jalan, and Szeto have infringed and are

3 infringing the '370 Patent by making, using, selling, offering for sale, and/or importing, without

4 authority, products and services that are covered by one or more claims of the '370 Patent,

5 including, but not limited to, the Accused Products like the AX Series products.

6      111.    On information and belief, A10 and certain of its officers and employees,

7 including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '370 Patent

8 and/or one or more of the applications underlying the patent and, despite such knowledge, A10,

9 Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of

10 infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '370 Patent.

11      112.    Brocade has been and continues to be damaged by the infringement by A10, Chen,

12 Jalan, and Szeto of the '370 Patent, in an amount to be determined at trial.

13      113.    Brocade has suffered irreparable injury for which there is no adequate remedy at

14 law and will continue to suffer such irreparable injury unless the aforementioned infringement of

15 the '370 Patent is enjoined by this Court.

16      114.    This is an exceptional case that entitles Brocade to attorneys' fees and costs

17 incurred in prosecuting this action under 35 U.S.C. § 285.

18                         **NINTH CLAIM FOR RELIEF**
19      **(Infringement of U.S. Patent 7,720,977 Against All Defendants Except Cheung)**

20      115.    Each of the foregoing paragraphs is incorporated in this Ninth Claim for Relief as

21 if fully set forth herein.

22      116.    On May 11, 2010, the '977 Patent duly and legally issued to Foundry under its

23 former name of Foundry Networks, Inc. This patent is titled "Cookie Invalidation or Expiration

24 by a Switch." A copy of the '977 Patent is attached hereto as **Exhibit M** and made a part hereof.

25      117.    Brocade is the owner of the '977 Patent pursuant to an assignment from Foundry

26 and has the right to enforce the '977 Patent, including the right to bring this suit for injunctive

27 relief and damages.

28

118. On information and belief, A10, Chen, Jalan, and Szeto have infringed and are infringing the '977 Patent by making, using, selling, offering for sale, and/or importing, without authority, products and services that are covered by one or more claims of the '977 Patent, including, but not limited to, the Accused Products like the AX Series products.

119. On information and belief, A10 and certain of its officers and employees, including, but not limited to, Chen, Jalan, and Szeto, are aware of the existence of the '977 Patent and/or one or more of the applications underlying the patent and, despite such knowledge, A10, Chen, Jalan, and Szeto continue to willfully, wantonly and deliberately engage in acts of infringement, as that term is defined in 35 U.S.C. § 271, without regard to the '977 Patent.

120. Brocade has been and continues to be damaged by the infringement by A10, Chen, Jalan, and Szeto of the '977 Patent, in an amount to be determined at trial.

121. Brocade has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless the aforementioned infringement of the '977 Patent is enjoined by this Court.

122. This is an exceptional case that entitles Brocade to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## TENTH CLAIM FOR RELIEF
**(Trade Secret Misappropriation, Cal. Civ. Code §§ 3426 *et seq.*, Against All Defendants)**

123. Each of the foregoing paragraphs is incorporated in this Tenth Claim for Relief as if fully set forth herein.

124. Plaintiffs have enjoyed, and continue to enjoy, an advantage over their existing and prospective competitors in the design, development, production, service, marketing, and sale of products and services because of the above-described confidential and proprietary information, including design documentation, plans and software code for the ServerIron and ADX products, as well as Plaintiffs' confidential customer and employee information.

125. Plaintiffs have made reasonable efforts under the circumstances to preserve the confidentiality of this information. Such information derives independent economic value from

1    not being generally known to the public or to other persons who can obtain economic value from

2    their disclosure or use. Accordingly, the above-described information constitutes "trade secrets,"

3    under California's Uniform Trade Secrets Act, California Civil Code §§ 3426 *et seq.*

4    126. Plaintiffs' current and former employees, including Chen, Jalan, Szeto, and

5    Cheung, have been, and continue to be, under a duty to keep Plaintiffs' proprietary and

6    confidential information secret, and not to use or disclose such information other than for the

7    benefit of Plaintiffs and with Plaintiffs' authorization. The individual defendants knew or should

8    have known that they had acquired such information under circumstances giving rise to a duty to

9    maintain its secrecy or limit its use, and/or derived from or through a person who has such a duty

10   and/or through improper means. Nevertheless, the individual defendants disclosed this

11   information to A10 and other persons acting in concert with A10, and have used and are using

12   that information, e.g., at A10 and in A10's products, including the AX series, all without the

13   express or implied consent of Foundry or Brocade.

14   127. The Defendants acquired the above-described information from persons they knew

15   or reasonably should have known owed a duty to Plaintiffs to maintain the information in secrecy

16   or acquired the information through improper means. The Defendants subsequently used this

17   information in connection with A10's business activities, in a manner adverse to Plaintiffs'

18   business interests.

19   128. The Defendants used and are using Plaintiffs' trade secrets without Plaintiffs'

20   express or implied consent and/or used improper means to acquire knowledge of the trade secrets.

21   129. The Defendants obtained the proprietary and confidential information described

22   above directly or indirectly from Plaintiffs and not from generally available information or from

23   the Defendants' own independent research and efforts.

24   130. The actions of the Defendants constitute misappropriation of Plaintiffs' trade

25   secrets under California Civil Code §§ 3426 *et seq.*

26   131. Each of the acts of misappropriation was done willfully and maliciously by the

27   Defendants, thereby entitling Plaintiffs to exemplary damages to be proven at trial pursuant to

28   California Civil Code § 3426.3(c).

132.    As a direct and proximate result of the Defendants' misappropriation of Plaintiffs' trade secrets, the Defendants have been unjustly enriched, and Plaintiffs have sustained damages in an amount to be proven at trial.  Brocade also has suffered irreparable harm as a result of the Defendants' activities, and will continue to suffer irreparable injury that cannot be adequately remedied at law unless the Defendants, and their officers, agents and employees, and all other persons acting in concert with them, are enjoined from engaging in any further acts of misappropriation.

## ELEVENTH CLAIM FOR RELIEF
### (Breach Of Contract Against All Defendants Except A10)

133.    Each of the foregoing paragraphs is incorporated in this Eleventh Claim for Relief as if fully set forth herein.

134.    Defendants Chen, Jalan, Szeto, and Cheung separately entered into valid contracts with Foundry.

135.    The Proprietary Information and Inventions Agreement provides: "[a]t all times during the term of my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information (defined below), except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an officer of the Company expressly authorizes such in writing."  In addition, the Agreement defines "Proprietary Information" as "trade secrets, confidential knowledge, data or any other proprietary information of the Company."

136.    The Agreement also states that "I hereby assign to the Company all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or registerable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company."

137.    The Agreement further states that "I agree that during the period of my employment by the Company I will not, without the Company's express written consent, engage

1  in any employment or business activity other than for the Company, and for the period of my

2  employment by the Company and for one (1) year after the date of termination of my

3  employment the Company I will not (i) induce any employee of the Company to leave the employ

4  of the Company or (ii) solicit the business of any client or customer of the Company (other than

5  on behalf of the Company)."

6      138.    On information and belief, Chen, Jalan, Szeto, and Cheung have breached their

7  obligations under the Proprietary Information and Inventions Agreements by, *inter alia*, using and

8  disclosing Foundry Proprietary Information without Foundry's (or Brocade's) permission or

9  authorization in the development, implementation, marketing, and sale of A10's competing

10 products; failing to assign to Foundry all right, title and interest in and to any and all inventions

11 made or conceived or reduced to practice during the period of their employment with Foundry;

12 using Foundry (or Brocade) Proprietary Information in the solicitation and hiring of former

13 Foundry and Brocade employees at A10; engaging in employment and/or business activities for

14 and on behalf of A10 during the period of their employment with Foundry (or Brocade) and

15 without Foundry's (or Brocade's) express written consent; inducing Foundry employees to leave

16 the employ of Foundry during and within one year of their respective departures from Foundry;

17 and/or soliciting the business of Foundry's (or Brocade's) customers and clients for and on behalf

18 of A10.

19      139.    Foundry and/or Brocade have performed all of their obligations under the

20 Agreements.

21      140.    As a result of these breaches, Plaintiffs have been damaged in an amount to be

22 proven at trial.

23                    **TWELFTH CLAIM FOR RELIEF**
   **(Intentional Interference With Prospective Economic Advantage Against All Defendants)**
24

25      141.    Each of the foregoing paragraphs is incorporated in this Twelfth Claim for Relief

26 as if fully set forth herein.

27      142.    Economic business relationships exist between Plaintiffs and their actual and

28

1    prospective customers.

2        143.    The Defendants are and were aware of the existence of these relationships between

3    Plaintiffs and their actual and prospective customers.

4        144.    The Defendants engaged in wrongful conduct designed to interfere with or disrupt

5    Plaintiffs' relationships with their actual and prospective customers, including by soliciting

6    Plaintiffs' actual and prospective customers in violation of the agreements with Foundry;

7    soliciting and hiring former Foundry and Brocade sales and marketing personnel in violation of

8    the agreements with Foundry and as a result of using and disclosing Plaintiffs' trade secrets and

9    proprietary information; using and disclosing confidential and proprietary Foundry and Brocade

10   sales, marketing, and customer information wrongfully acquired from Plaintiffs; and denigrating

11   the nature, performance, quality, and capabilities of Plaintiffs' technology, products, and services,

12   as well as the direction of Plaintiffs' businesses and strengths of their prospects.

13       145.    The Defendants' acts were intentional and carried out for the purpose of disrupting

14   Plaintiffs' relationships with their actual and prospective customers.

15       146.    As a result of the Defendants' intentional interference with Plaintiffs' prospective

16   economic advantage, Plaintiffs' relationships with their actual and prospective customers were in

17   fact disrupted and Plaintiffs have been damaged in an amount to be proven at trial.

18       147.    In addition, the Defendants' conduct has permanently and irreparably harmed

19   Brocade.  Brocade is therefore entitled to injunctive relief.

20       148.    The Defendants' acts and conduct to disrupt Plaintiffs' prospective economic

21   advantage were carried out willfully, fraudulently, maliciously, and with wanton disregard of

22   Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages to be proven at trial.

23                          **THIRTEENTH CLAIM FOR RELIEF**
                 **(Intentional Interference With Contract Against All Defendants)**
24

25       149.    Each of the foregoing paragraphs is incorporated in this Thirteenth Claim for

26   Relief as if fully set forth herein.

27       150.    On information and belief, the Defendants were aware of Plaintiffs' contracts with

28

1    their former employees, including but not limited to the individual defendants because, among

2    other things, each individual defendant signed an agreement as a condition of employment with

3    Foundry and were aware that the other former employees would have signed agreements as well.

4         151.   The individual defendants and other former Foundry and Brocade employees who

5    left to work for A10 breached their obligations under the Proprietary Information and Inventions

6    Agreements by, *inter alia*, using and disclosing Plaintiffs' proprietary information without

7    Plaintiffs' permission or authorization in the development, manufacture and sale of A10's

8    competing products; failing to assign to Plaintiffs all right, title and interest in and to any and all

9    inventions made or conceived or reduced to practice during the period of their employment with

10   Foundry and Brocade; using Plaintiffs' Proprietary Information in the solicitation and hiring of

11   former Foundry and Brocade employees at A10; engaging in employment and/or business

12   activities for and on behalf of A10 during the period of their employment with Foundry and

13   Brocade and without Foundry's and Brocade's express written consent; inducing Plaintiffs'

14   employees to leave the employ of Foundry and Brocade during and within one year of their

15   respective departures from Foundry and Brocade; and/or soliciting the business of Plaintiffs'

16   customers and clients for and on behalf of A10.

17        152.   On information and belief, the Defendants intentionally encouraged each other, as

18   well as other former Foundry and Brocade employees who had gone to work at A10, to use and

19   disclose Plaintiffs' proprietary information without Plaintiffs' permission or authorization in the

20   development, manufacture and sale of A10's competing products; to fail to assign to Plaintiffs all

21   right, title and interest in and to any and all inventions made or conceived or reduced to practice

22   during the period of their employment with Foundry and Brocade; to use Plaintiffs' proprietary

23   information to solicit and hire former Foundry and Brocade employees at A10; to engage in

24   employment and/or business activities for and on behalf of A10 during the period of their

25   employment with Foundry and Brocade and without Foundry's and Brocade's express written

26   consent; to induce Plaintiffs' employees to leave the employ of Foundry and Brocade during and

27   within one year of their respective departures from Foundry and/or Brocade; and/or to solicit the

28   business of Plaintiffs' customers and clients for and on behalf of A10.

1    153.    As a proximate result of the Defendants' conduct and the above described breach

2    of contract, Plaintiffs have suffered damages in an amount to be proven at trial.

3    154.    In addition, the Defendants' conduct has permanently and irreparably harmed

4    Brocade.  Brocade is therefore entitled to injunctive relief.

5    155.    The Defendants' aforementioned conduct was willful, malicious, fraudulent, and

6    in conscious disregard of Plaintiffs' rights and interests, and, on information and belief, was

7    undertaken with the intent to injure Plaintiffs' property and legal rights.  Accordingly, an award

8    of punitive damages is justified.

9                              **FOURTEENTH CLAIM FOR RELIEF**

10   **(Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Against All Defendants)**

11   156.    Each of the foregoing paragraphs is incorporated in this Fourteenth Claim for

12   Relief as if fully set forth herein.

13   157.    The Defendants have engaged in unlawful, unfair, and fraudulent business acts.

14   The Defendants knowingly engaged in unfair competition within the meaning of California

15   Business & Professions Code § 17200 by, among other things, exploiting relationships with

16   Plaintiffs' employees to build a company to compete with Plaintiffs; developing and furthering

17   plans to build a competitive business while they were employed by Foundry and/or Brocade;

18   covertly soliciting and/or inducing Plaintiffs' employees to terminate their employment; stealing

19   and interfering with Plaintiffs' prospective economic relations; and using ideas, concepts, and

20   inventions that the Defendants were obligated to disclose and assign to Foundry and/or Brocade.

21   158.    The Defendants also knowingly engaged in unfair competition within the meaning

22   of California Business & Professions Code § 17200 by making false and misleading statements to

23   Plaintiffs' actual and prospective customers about the nature and direction of Plaintiffs'

24   businesses and the quality, performance, features, and cost of Plaintiffs' technology, products,

25   and services.  These actions deceive the public as to the true nature and quality of the products

26   marketed by the Defendants and the products marketed by Plaintiffs.

27   159.    The Defendants knew that the conduct described above was improper and that they

28

were unlawfully, unfairly, and fraudulently competing with Plaintiffs when they sought to and did perform the acts described above.

160. The unfair practices are continuing in that the Defendants continue to solicit Brocade employees to leave Brocade and join A10; to interfere with Brocade's prospective economic relations; to use ideas, concepts, and inventions that should have been disclosed and assigned to Brocade; and to make false and misleading statements to Brocade's actual and prospective customers regarding Brocade's business, technology, products, and services.

161. As a direct and proximate result of this conduct, the Defendants have actually disrupted Plaintiffs' sales and customer relations and interfered with Plaintiffs' employee relations, and unjustly profited therefrom, while damaging Plaintiffs.

162. Accordingly, Plaintiffs are entitled to restitution and the return of any ideas, concepts, and inventions that should have been disclosed and assigned to them.

163. Brocade also is entitled to an injunction pursuant to Business & Professions Code § 17203 to prevent the on-going acts described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment as follows:

1. For entry of judgment against the Defendants on all Claims for Relief;

2. For an injunction preliminarily and permanently prohibiting the Defendants and A10's officers, agents, servants, employees, and all persons acting in concert with it and/or them, from directly or indirectly:

  a. Infringing, inducing the infringement of, and contributing to the infringing of each and every one of the Patents-in-suit, including, but not limited to, prohibiting the making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, any products and/or services that infringe the Patents-in-suit;

  b. Acquiring, using, possessing, disclosing, conveying, or communicating to any person any of Plaintiffs' trade secret or other valuable proprietary information;

  c. Manufacturing, producing, offering for sale, selling, or conveying to any

person any products, systems or services produced, manufactured, or marketed

using Plaintiffs' trade secrets or other valuable proprietary information;

     d.     Inducing any current or former Foundry or Brocade employee to breach

any contract, unfairly promote A10 technology using Plaintiffs' proprietary

marketing information, disrupt any actual or prospective Brocade business

relationship, or leave his or her employment with Brocade by and through the use

of Plaintiffs' trade secrets and/or false and misleading statements regarding

Brocade;

3.     For an injunction preliminarily and permanently requiring the Defendants, and

A10's officers, agents, servants, employees, and all persons acting in concert with it and/or them,

to return to Plaintiffs all copies of Plaintiffs' confidential, proprietary and trade secret information

in their possession, custody, and control, including without limitation, Foundry's source code,

and to fully disclose, under penalty of perjury, the names and whereabouts of all persons to

whom, and all entities to which, such information has been further distributed by them;

4.     For compensatory damages in an amount according to proof;

5.     For an award of treble damages for all claims for which treble damages are

authorized, and otherwise for the maximum enhancement allowed by law;

6.     For an award of punitive damages;

7.     For an award reflecting the amount by which the Defendants have been unjustly

enriched;

8.     For costs of suit and reasonable attorneys' fees incurred herein;

9.     For prejudgment and post judgment interest; and

10.     For such other relief as the Court deems just and proper.

/ / /

/ / /

Dated: August 4, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                         _____
                                              MATTHEW H. POPPE
                                              Attorneys for Plaintiffs
                                         BROCADE COMMUNICATIONS SYSTEMS, INC.
                                              AND FOUNDRY NETWORKS, LLC


## JURY DEMAND

Plaintiffs demand a trial by jury as to all issues so triable.

Dated: August 4, 2010                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                         _____
                                              MATTHEW H. POPPE
                                              Attorneys for Plaintiffs
                                         BROCADE COMMUNICATIONS SYSTEMS, INC.
                                              AND FOUNDRY NETWORKS, LLC