Scott R. Mosko (State Bar No. 106070)
scott.mosko@finnegan.com
Scott A. Herbst (State Bar No. 226739)
scott.herbst@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
Stanford Research Park
3300 Hillview Avenue
Palo Alto, California 94304-1203
Telephone: (650) 849-6600
Facsimile: (650) 849-6666

Attorneys for Defendants
A10 NETWORKS, INC., LEE CHEN,
RAJKUMAR JALAN, and RON SZETO

(Additional counsel listed on signature page.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation; and FOUNDRY NETWORKS, LLC, a Delaware limited liability company,<br><br>        Plaintiffs,<br><br>        v.<br><br>A10 NETWORKS, INC., a California corporation; LEE CHEN, an individual; RAJKUMAR JALAN, an individual; RON SZETO, an individual; and DAVID CHEUNG, an individual,<br><br>        Defendants. | Case No. 5:10-cv-03428-LHK<br><br>**DEFENDANTS A10 NETWORKS, INC., LEE CHEN, RAJKUMAR JALAN, AND RON SZETO'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     January 27, 2011<br>Time:    1:30 p.m.<br>Location:  Courtroom 4, 5th Floor<br>Judge:   Honorable Lucy H. Koh |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.  INTRODUCTION .................................................................................................. 1

II.  ARGUMENT .......................................................................................................... 2

    A.  Applicable Pleading Requirements ........................................................... 2

    B.  The Patent Claims (Counts 1 - 9) Asserted Against the
        Individual Defendants Are Fatally Deficient ........................................... 3

    C.  Plaintiffs' Trade-Secret Misappropriation Claim (Count 10)
        Against All Defendants Falls Outside the Statute of
        Limitations, is Factually Unsupported, and Must Be Dismissed .............. 6

        1.  The Trade Secret Misappropriation Claim Is Time
            Barred ............................................................................................. 6

        2.  Even if Timely Filed, Plaintiffs' Trade-Secret
            Misappropriation Claims Lack Sufficient Facts and
            Should Be Dismissed Under Rule 12(b)(6) ................................... 8

    D.  Plaintiffs Fail to State a Claim for Breach of Contract (Count
        11) Against the Individual Defendants, and Such Claim Is
        Time Barred ................................................................................................ 11

        1.  The Allegation of Using and Disclosing Proprietary
            Information Is Insufficient and Time Barred ............................... 12

        2.  The Failure to Assign Allegation Is Insufficient and
            Time Barred ................................................................................... 13

        3.  The Allegation of Engaging in Employment or
            Business Activities for A10 While Still Employed by
            Foundry Is Insufficient and Time Barred ..................................... 14

        4.  The Allegations of Inducing Others to Leave and
            Soliciting Clients and Customers Are Unenforceable,
            Insufficient, and Time Barred ..................................................... 15

            a.  The Anti-Inducement Provision is
                Unenforceable Under California Law ............................... 15

            b.  The Anti-Solicitation Provision is also
                Unenforceable Under Applicable State Law ................... 16

    E.  Plaintiffs' Claim for Intentional Interference With Prospective
        Economic Advantage (Count 12) Fails Under Rule 12(b)(6)
         and Is Time Barred .................................................................................... 18

DEFENDANTS' MOT. TO DISMISS COMPLAINT
Case No. 5:10-cv-03428-LHK

F.     Plaintiffs' Intentional Interference With Contract Claim Fails Under Rule 12(b)(6) and is Time Barred.................................................20

G.     Plaintiffs' Unfair Competition Claim Fails Under Rule 12(b)(6)..........................21

III.    CONCLUSION.............................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
  260 F. Supp. 2d 941 (N.D. Cal. 2003) ........................................................................... 18, 21

*Alamar Biosciences v. Difco Labs.*,
  40 U.S.P.Q.2d 1437, 1996 U.S. Dist. LEXIS 18239 (E.D. Cal. 1996) ........................... 6

*Ardco, Inc. v. Page, Ricker, Felson Mfg.*,
  25 U.S.P.Q.2d 1382 (N.D. Ill. 1992) ............................................................................... 4

*Ashcroft v. Iqbal*,
  556 U.S. __, 129 S. Ct. 1937 (2009) ................................................................... 2, 3, 9, 10

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
  No. C 08-3931 RS, 2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ....................................... 19

*Bauer & Cie v. O'Donnell*,
  229 U.S. 1 (1913) ........................................................................................................... 4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) ....................................................................................... 3

*Cadence Design Sys., Inc. v. Avant! Corp.*,
  29 Cal. 4th 215 (2002) ................................................................................................... 6

*Caviness v. Horizon Cmty. Learning Ctr.*,
  590 F.3d 806 (9th Cir. 2010) ......................................................................................... 3

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (Cal. 1999) ...................................................................................... 21, 22

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) ....................................................................................... 3, 5

*CoreBrace LLC v. Star Seismic LLC*,
  566 F.3d 1069 (Fed. Cir. 2009) ..................................................................................... 3

*Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*,
  No. 99CV10522, 2001 WL 327826 (C.D. Cal. Feb. 26, 2001) ..................................... 4

*D'Sa v. Playhut*,
  85 Cal. App. 4th 927 (2000) ......................................................................................... 17

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
  517 F.3d 1284 (Fed. Cir. 2008) ................................................................................... 13

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376 (1995) ................................................................................................. 18

*Digital Envoy, Inc. v. Google, Inc.*,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) ....................................................................... 22

DEFENDANTS' MOT. TO DISMISS COMPLAINT
Case No. 5:10-cv-03428-LHK

*Edwards v. Arthur Anderson,*
    44 Cal. 4th 937 (2008) ............................................................................................... 17

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.,*
    No. C-07-2424 SC, 2007 U.S. Dist. LEXIS 67941 (N.D. Cal. Sept. 5, 2007) ............................. 18

*FLIR Sys., Inc. v. Parrish,*
    174 Cal. App. 4th 1270 (2009) .................................................................................... 11

*Halton Co. v. Streivor, Inc.,*
    No. C 10-00655 WHA, 2010 U.S. Dist. LEXIS 50649 (N.D. Cal. May 21, 2010)...................... 22

*Hutchens v. Alameda County Social Servs. Agency,*
    No. C-06-06870 SBA, 2008 U.S. Dist. LEXIS 69429 (N.D. Cal. Sept. 9, 2008) ...................... 10

*Intermedics, Inc. v. Ventritex, Inc.,*
    822 F. Supp. 634 (N.D. Cal. 1993) ........................................................................ 7, 8, 13

*Jackson v. Ocwen Loan Servicing, LLC,*
    No. 2:10-cv-00711-MCE-GGH, 2010 U.S. Dist. LEXIS 93524 (E.D. Cal. Aug. 20, 2010) ......... 21

*Kasparian v. Los Angeles,*
    38 Cal. App. 4th 242 (1995) ....................................................................................... 19

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ..................................................................................... 22

*Knoell v. Petrovich,*
    76 Cal. App. 4th 164 (Cal. Ct. App. 1999) ..................................................................... 20

*Lam Research Corp. v. Deshmukh,*
    No. 05-353230, 2005 WL 3159685, 157 Fed. Appx. 26 (9th Cir. Nov. 29, 2005) ...................... 11

*Memry Corp. v. Ky. Oil Tech.,*
    No. C-04-03843 RMW, 2007 U.S. Dist. LEXIS 73311 (N.D. Cal. Sept. 20, 2007) .................. 6, 7

*Metro Traffic Control, Inc. v. Shadow Traffic Network,*
    22 Cal. App. 4th 853 (1994) ....................................................................................... 17

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,*
    806 F.2d 1565 (Fed. Cir. 1986) ..................................................................................... 5

*Paper Converting Mach. Co. v. Magna-Graphics Corp.,*
    745 F.2d 11 (Fed. Cir. 1984) (Nies, J., dissenting in part) .................................................... 3

*Podolsky v. First Healthcare Corp.,*
    50 Cal. App. 4th 632 (Cal. Ct. App. 1996) ..................................................................... 21

*Portney v. CIBA Vision Corp.,*
    No. SACV 07-0854 AG (MLGx), 2008 U.S. Dist. LEXIS 106676 (C.D. Cal. Dec. 24, 2008) ....... 8

*Rotec Indus. Inc. v. Mitsubishi Corp.,*
    215 F.3d 1246 (Fed. Cir. 2000) ..................................................................................... 4

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
   No. C-07-0635 JCS, 2007 U.S. Dist. LEXIS 39599 (N.D. Cal. May 16, 2007) ........................... 21

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
   983 F. Supp. 1303 (N.D. Cal. 1997) ................................................................................................. 19

*Sinaltrainal v. Coca-Cola Co.*,
   578 F.3d 1252 (11th Cir. 2009) .......................................................................................................... 3

*SiRF Tech., Inc. v. ITC*,
   601 F.3d 1319 (Fed. Cir. 2010) ....................................................................................................... 13

*SmileCare Dental Group v. Delta Dental Plan of California, Inc.*,
   88 F.3d 780 (9th Cir. 1996) ................................................................................................................ 3

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ......................................................................................................... 3, 5

*Swingless Golf Club Corp. v. Taylor*,
   No. C 08-05574 WHA, 2009 WL 2031768 (N.D. Cal. Jul. 7, 2009) ............................................ 18, 20

*Terarecon, Inc. v. Fovia, Inc.*,
   No. C 05-4407 CW, 2006 WL 1867734 (N.D. Cal. Jul. 6, 2006) ..................................................... 19

*Thomas Weisel Partners LLC v. BNP Paribas*,
   No. C 07-6198 MHP, 2010 U.S. Dist. LEXIS 11626 (N.D. Cal. Feb. 9, 2010) ............................... 15

*Wechsler v. Macke Int'l Trade, Inc.*,
   486 F.3d 1286 (Fed. Cir. 2007) ......................................................................................................... 5

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010) ......................................................................................................... 5

**Statutes and Codes**

35 U.S.C. (1994)
   § 271(a) ............................................................................................................................................. 4
   § 271(i) .............................................................................................................................................. 4

Cal. Bus. & Prof. Code
   §§ 17200 *et seq.* ............................................................................................................................ 24

Cal. Civ. Code
   § 3426.6 ............................................................................................................................................. 7

Cal. Civ. Proc. Code
   § 337 ................................................................................................................................................ 15
   § 339 .......................................................................................................................................... 22, 23

DEFENDANTS' MOT. TO DISMISS COMPLAINT
Case No. 5:10-cv-03428-LHK

**Rules**

Fed. R. Civ. P.
    Rule 8 ............................................................................................................... 17
    Rule 8(a) ..................................................................................................... 11, 25
    Rule 8(a)(2) ........................................................................................................ 2
    Rule 9(b) .......................................................................................................... 26
    Rule 12(b)(6) .............................................................................................. passim

**Treatises**

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed. 1990)
    § 1224 ............................................................................................................. 10

DEFENDANTS' MOT. TO DISMISS COMPLAINT
Case No. 5:10-cv-03428-LHK

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 27, 2011, at 1:30 p.m., in Courtroom 4, located on the 5th Floor of the above-entitled Court at 280 South First Street, San Jose, California, or as soon thereafter as the matter may be heard before the Honorable Lucy H. Koh, each of the Defendants Lee Chen, Rajkumar Jalan, and Ron Szeto will and hereby do move this Court for an order dismissing all of the Plaintiffs' claims against them, and Defendant A10 Networks, Inc. moves this Court for an order dismissing all claims against it, other than Plaintiffs' patent infringement claims.

This motion is based upon this Notice of Motion and Memorandum of Points and Authorities, other papers and pleadings on file, and on such additional argument and evidence as may be presented to the Court at or prior to the hearing on this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs Brocade Communications Systems, Inc. ("Brocade") and Foundry Networks, LLC ("Foundry") filed this action against Defendants A10 Networks, Inc. ("A10") and four former Foundry employees, Lee Chen ("Chen"), Rajkumar Jalan ("Jalan"), Ron Szeto ("Szeto"), and David Cheung ("Cheung"). In their Complaint, Plaintiffs claim that the Defendants misappropriated Foundry's trade secrets and other intellectual property and used that information to build and market the A10 AX Series computer network devices that stand accused of infringing nine U.S. patents. Brocade and Foundry also assert claims for breach of contract, intentional interference with prospective economic advantage, intentional interference with contract, and unfair competition. The patent infringement claims are asserted against all Defendants except for Cheung, while the breach of contract claims are asserted against Messrs. Chen, Jalan, Szeto, and Cheung, but not A10. The other claims are asserted against all Defendants. This motion to dismiss is brought by all Defendants except Cheung.

The only products accused of patent infringement are the AX Series devices, but Plaintiffs' Complaint fails to assert any facts whatsoever suggesting that any of Chen, Jalan, or Szeto (collectively, the "Individual Defendants") could have committed any acts of patent infringement

with respect to those devices.  That deficiency warrants dismissal of the patent infringement claims (Counts 1 - 9) as to the Individual Defendants.

The Complaint is also fatally defective with respect to most of the other counts because the applicable statutes of limitation ran well before the filing of this action.  Specifically, the claims for trade-secret misappropriation, breach of contract, intentional interference with prospective economic advantage, and intentional interference with contract must be dismissed because they are time barred.  Even if each of the applicable statutes has not run, the Complaint nevertheless fails to allege sufficient facts upon which relief can be granted against A10 and/or the Individual Defendants for any of the state-law claims.  Because those claims are not supported by enough facts to make them plausible on their face, as required by *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009), they should be dismissed with respect to A10 and Messrs. Chen, Jalan, and Szeto.  Moreover, certain statutory and public policy pronouncements protecting an individual's rights to pursue a lawful business in California make some of the allegations asserted in the breach of contract count unenforceable—namely, the allegation concerning the inducement of employees to leave Foundry and the allegation concerning solicitation of Foundry customers.

For these and other reasons, all discussed in more detail below, Messrs. Chen, Jalan, and Szeto move to dismiss all of the claims that have been alleged against them, and A10 moves to dismiss all but the asserted patent infringement claims.

## II. ARGUMENT

### A. Applicable Pleading Requirements

While Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," dismissal is warranted if the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  As the Supreme Court recently explained in *Ashcroft*, a claim should be dismissed under Rule 12(b)(6) if the complaint fails to allege sufficient facts under Rule 8(a)(2) to make the claim "plausible on its face." *Ashcroft*, 129 S. Ct. at 1949; *see also SmileCare Dental*

/ / /

/ / /

*Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).[1]  A claim is "plausible" if the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949.

While allegations of material fact are accepted as true and must be construed in the nonmoving party's favor, that is *not* the case for bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences, which alone cannot save a complaint from dismissal.  *See Ashcroft*, 129 S. Ct. at 1951; *Caviness v. Horizon Cmty. Learning Ctr.,* 590 F.3d 806, 812 (9th Cir. 2010); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

As discussed in detail below, each of the Complaint's fourteen counts fails to meet the Supreme Court's pleading standard and should be dismissed.

## B.     The Patent Claims (Counts 1 - 9) Asserted Against the Individual Defendants Are Fatally Deficient

Section 271(a) of the patent statute prescribes the specific acts that constitute patent infringement:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a) (1994).  The Federal Circuit has made clear that "only an affirmative act" (*e.g.*, "making" all of the recited claim elements) "can give rise to the tort of direct infringement."  *See, e.g.*, *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570 n. 25 (Fed. Cir. 1994).[2]

---

[1]  For procedural issues, such as the standards for evaluating a 12(b)(6) motion implicated by this motion, the governing law is that of the appropriate regional circuit (here, the 9th Circuit), not the Federal Circuit.  *See, e.g.*, *CoreBrace LLC v. Star Seismic LLC*, 566 F.3d 1069, 1072 (Fed. Cir. 2009).

[2]  "[T]he 'patented invention' means that *all* of its claimed elements must be united."  *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 25 (Fed. Cir. 1984) (Nies, J., dissenting in part) (emphasis in original).  "Thus, if the *claimed* invention comprises the elements A, B, C and D, it is only the *combination* in its entirety that is protected.  The making of the lesser combination A, B and D falls short of direct infringement . . . ."  *Id.* (emphasis in original).

Congress and the courts have expressly defined each of the enumerated acts of infringement:

- "makes": "The right to make can scarcely be made plainer by definition, and embraces the construction of the thing invented." *Bauer & Cie v. O'Donnell*, 229 U.S. 1, 10 (1913).

- "uses": "The right to use is a comprehensive term and embraces within its meaning the right to put into service any given invention." *Bauer & Cie*, 229 U.S. at 10-11.

- "offers to sell"/"sells": "an 'offer for sale' or an 'offer to sell'. . . [is] that in which the sale will occur before the expiration of the term of the patent" (*see* 35 U.S.C. § 271(i)) under a "traditional contractual analysis" *i.e.*, courts "loo[k] to contract law concepts to find the required elements of a sale. " *See, e.g.*, *Rotec Indus. Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1259 (Fed. Cir. 2000); *Ardco, Inc. v. Page, Ricker, Felson Mfg.*, 25 U.S.P.Q.2d 1382, 1384-85 (N.D. Ill. 1992).

- "imports": "imports into the United States extends only to that party which is the actual 'importer' of the goods, and not to third parties which play some role in the shipment of goods, but are not the 'importer.' *Cybiotronics, Ltd. v. Golden Source Elecs., Ltd.*, No. 99CV10522, 2001 WL 327826, at *8 (C.D. Cal. Feb. 26, 2001).

The Complaint, however, completely fails to allege that any of the Individual Defendants have committed any of those recognized acts of patent infringement.

As to Messrs. Jalan and Szeto, for example, the Complaint alleges only that they "have been deeply involved in the development of the Accused Products from the time they joined A10 to the present" (Complaint at ¶ 27), and that they were "very familiar with [the] technology identified in the Patents-in-suit" (*id.* at ¶ 28) and "developed the A10 products with full knowledge of the content of the Patents-in-suit" (*id.*). None of those allegations, however, sounds in "patent infringement" as codified in Section 271(a). Being "involved" in a product's development, however "deeply," even while being "familiar" with and/or having "full knowledge" of a patent, falls far short of a satisfactory allegation of patent infringement. The Complaint bears absolutely no facts that even come close to alleging that either Jalan or Szeto affirmatively made (*i.e.*, constructed), used (*i.e.*, put into service), contractually offered to sell or sold, or actually imported any of Plaintiffs' "patented inventions."

So, too, with Mr. Chen. The Complaint merely alleges that Chen "had personal knowledge" of the "Foundry technology disclosed and claimed in the Patents-in-suit" (*id.* at ¶ 21) and that Chen,

once armed with that knowledge, then "set out to build" A10 and "develop" the accused AX Series products, "determin[ing] the features to include in the Accused Products with full knowledge of the content of the Patents-in-suit" (*id.* at ¶¶ 23-24). However, as with Messrs. Jalan and Szeto, none of that conduct attributed to Mr. Chen amounts to what the law recognizes as actionable "patent infringement."

Turning to Defendant A10, the Complaint alleges that A10 "manufactures, imports, sells, and/or offers to sell products, including its AX Series products, that infringe the Patents-in-suit." (*See* Complaint at ¶ 50). Assuming, as A10 does, the sufficiency of that allegation, there is simply no basis in fact or law for simply tacking liability for the same patent infringement onto A10's employees. While the Complaint does allege that Defendant Chen is an officer of A10 Networks (*see id.* at ¶ 5 (Chen "is the founder and Chief Executive Officer of A10")), it is only in rare circumstances not even alleged to be present here (let alone actually present) that a corporate officer may be personally liable for tortious acts committed by the corporation. The Complaint provides no factual basis to support an allegation that Chen should be held personally liable for any of A10's alleged patent infringement. As the Federal Circuit recently explained:

> [T]he "corporate veil" shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' "alter ego". *See Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007). To determine whether corporate officers are personally liable for the direct infringement of the corporation under § 271(a) requires invocation of those general principles relating to piercing the corporate veil. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986).

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010). Plaintiffs' Complaint is completely silent as to the validity of A10's corporate status, and alleges no facts that could possibly warrant piercing the corporate veil as to Mr. Chen.

In sum, Plaintiffs' Complaint includes little more than factually unsupported, conclusory statements that fail to state a claim for patent infringement against the Individual Defendants. *See*, *e.g.*, *Sprewell*, 266 F.3d at 988; *Clegg*, 18 F.3d at 754-55. Plaintiffs' patent-infringement claims against the Individual Defendants (Counts 1 - 9) should, therefore, be dismissed.

/ / /

DEFENDANTS' MOT. TO DISMISS COMPLAINT
Case No. 5:10-cv-03428-LHK

**C.    Plaintiffs' Trade-Secret Misappropriation Claim (Count 10) Against All Defendants Falls Outside the Statute of Limitations, is Factually Unsupported, and Must Be Dismissed**

**1.    The Trade Secret Misappropriation Claim Is Time Barred**

The California Uniform Trade Secrets Act ("CUTSA") requires assertion of a trade-secret claim "within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  Cal. Civ. Code § 3426.6.  The three-year period begins to run as soon as there is reason to suspect misappropriation that a reasonable investigation would have revealed, even if no such investigation was done.  *Memry Corp. v. Ky. Oil Tech.*, No. C-04-03843 RMW, 2007 U.S. Dist. LEXIS 73311 (N.D. Cal. Sept. 20, 2007) (*quoting Alamar Biosciences v. Difco Labs.*, 40 U.S.P.Q.2d 1437, 1439-1440, 1996 U.S. Dist. LEXIS 18239 (E.D. Cal. 1996)).  Of particular importance here, "a continuing misappropriation constitutes a single claim."  Cal. Civ. Code § 3426.6; *see Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 227 (2002) ("Plaintiffs' claim for misappropriation of a trade secret against a defendant arises only once, when the trade secret is initially misappropriated.").

Plaintiffs' trade-secret misappropriation claim is time barred because their Complaint alleges a continuing scheme of misappropriation dating all the way back to 2004, some six years before they filed this action.  The Complaint essentially alleges that Foundry knew of the supposedly improper conduct at the time it was happening.  Specifically, the Complaint alleges that Messrs. Chen, Jalan, and Szeto were all heavily involved in developing Foundry's ServerIron products (Complaint at ¶¶ 20, 25), and that "the Defendants embarked on a strategy to unlawfully leverage all aspects of Plaintiffs' confidential and proprietary information in order to form a 'turn-key' enterprise to compete unfairly against the Plaintiffs in their unique market segment."  (*Id.* at ¶ 40.)  Allegedly, Mr. Chen had a position of "trust and confidence" at Foundry, yet started a directly competing company—which became A10—before he left Foundry in 2004, and when he eventually exited Foundry, he took Foundry trade secrets with him.  (*Id.* at ¶¶ 20-23, 46.)  The Complaint also alleges that after Chen left Foundry, it was "common practice" for him "to regularly socialize at Silicon Valley area restaurants and to frequently communicate by electronic mail with Cheung and other Foundry and Brocade engineers (several of whom subsequently joined A10)."  (*Id.* at ¶ 31.)  Based

on the Complaint's allegations, Foundry was either clearly aware of the alleged misappropriation, or had reason to suspect and investigate it, at that time. Under either test, the clock started to tick for this claim in 2004. *Memry Corp.*, 2007 U.S. Dist. LEXIS at * 24-25.

Noticeably absent from the Complaint are any allegations that the Individual Defendants either kept their alleged acts of misappropriation hidden from Foundry, that a reasonable investigation at that time would not have revealed any misappropriation, or that Plaintiffs discovered Foundry's former employees' allegedly wrongful acts less than three years ago. There is a reason for those omissions: they would run counter to the entire flavor of the Complaint, which is built around—and emphasizes over and over again—a scheme of allegedly wrongful acts that began even before Mr. Chen left Foundry's employ in 2004. (*See, e.g.*, Complaint at ¶ 22-34.) The Complaint acknowledges that A10 formally announced its AX Series product line "in and around late 2007" (*id.* at ¶ 44), yet it stops there, never alleging that such announcement failed to mark the date when Plaintiffs first learned of A10's or Messrs. Chen's, Jalan's, and Szeto's alleged misappropriation.

In view of the Complaint's allegations of an on-going wrongful scheme beginning in 2004, the statute of limitations began to run at that time. "[S]ince what trade secret law protects (under the UTSA and under the First Restatement of Torts) is not a series of arguably separate 'properties' owned by plaintiff, but a right to maintain the integrity of a confidential relationship, it is the first known (or reasonably discoverable) breach of that relationship that creates the right to sue and thus triggers the running of the statute of limitations." *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 653 (N.D. Cal. 1993). According to the Complaint, the statute was triggered over six years ago.

Furthermore, "once plaintiff knows or should know that a defendant who once was trusted has shown, by any act of misappropriation, that he cannot be trusted, plaintiff should understand that there is a risk that that defendant will commit additional acts of misappropriation . . . ." *Intermedics*, 822 F. Supp. at 654 (the CUTSA's statute of limitations begins to run once a "fracture in the confidential relationship" was or should have been discovered). *Id.* The Complaint plainly alleges that Foundry knew or should have known that its "trust and confidence" in Mr. Chen were fractured in 2004 when he allegedly started a competing company, Raksha Networks (A10's predecessor), while still working for Foundry (*see* Complaint at ¶ 22)), then left Foundry to join that company.

The Complaint also alleges that after Mr. Chen left Foundry in 2004, he poached "two of the best engineers from Foundry." (*Id.* at ¶¶ 24-26.) Thus, Foundry knew or should have known that its confidential relationships with Messrs. Jalan and Szeto were irreparably fractured at that time.

Even if Foundry did not actually know about the alleged misappropriation at that time, it surely should have. In the 2004-2005 timeframe, Foundry allegedly lost one of its co-founders, Mr. Chen, and one key engineer after another, to A10. *See id.* at ¶ 5, 20-28. "California law assumes that once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to protect other secrets." *Intermedics*, 822 F. Supp. at 654. Thus, Foundry was on notice of the alleged problem at that time, yet it waited five to six years before it took any action. For example, after Mr. Chen left Foundry's employ, Foundry should have asked its own employees about their communications with A10 and Mr. Chen. *See Portney v. CIBA Vision Corp.*, No. SACV 07-0854 AG (MLGx), 2008 U.S. Dist. LEXIS 106676 (C.D. Cal. Dec. 24, 2008) (holding that statute of limitations had expired because it was unreasonable for "a sophisticated businessperson" to fail to verify that confidentiality provisions of agreement were fulfilled). Thus, the three-year statute of limitations began to run for A10 and Messrs. Chen, Jalan, and Szeto no later than sometime in 2005. Plaintiffs' trade-secret claim, therefore, has been time barred for at least two years, and should be dismissed with prejudice.

### 2. Even if Timely Filed, Plaintiffs' Trade-Secret Misappropriation Claims Lack Sufficient Facts and Should Be Dismissed Under Rule 12(b)(6)

The Complaint contains numerous allegations about Messrs. Chen's, Jalan's, and Szeto's employment with Foundry, their importance to Foundry, their involvement with Foundry's relevant products, and the allegedly secret information that they acquired while working there. But a careful reading of the Complaint reveals virtually no facts supporting the allegedly wrongful act, *i.e.,* that the Individual Defendants and/or A10 misappropriated Foundry trade secrets. Under *Ashcroft*, a valid Complaint must allege sufficient *facts* to make a claim plausible on its face, whereas Plaintiffs' Complaint features only legal conclusions about Defendants' alleged misappropriation. (*See, e.g.,* Complaint at ¶¶ 23-24, 28, 40, 44-47, 49, and 126.) This Court should not treat conclusory

allegations as facts, or treat them as true. *Ashcroft*, 129 S. Ct. at 1949-51.

For example, the Complaint alleges, on information and belief, that Mr. "Chen set out to . . . develop products (the "Accused Products"), such as the A10 AX Series network devices, that would copy . . . the Foundry ServerIron products" (*id.* at ¶ 23), that (i) "A10 developed . . . its products through the acquisition and use of Plaintiffs' trade secrets" (*id.* at ¶ 24), (ii) "Jalan and Szeto used the Foundry trade secrets, including Foundry's source code, in the development of the A10 products" (*id.* at ¶ 28), (iii) "Defendants have engaged in schemes to misappropriate for A10's use Plaintiffs' intellectual property" (*id.* at ¶ 40), and (iv) A10 "marketed its products by using Plaintiffs' proprietary information" (*id.* at ¶ 49). Such bare allegations, however, provide no details about such alleged schemes, copying, acquisition, development, or use of Plaintiffs' alleged secrets, much like the allegations rejected by the Supreme Court as conclusory in *Ashcroft*.

The Supreme Court's *Ashcroft* opinion is instructive. While the Court's opinion does not directly quote the various "factual" statements from the Complaint that it ultimately rejected as conclusory (*Ashcroft* at 1950-51*)*, Justice Souter's does:

> Iqbal alleges that after the September 11 attacks the Federal Bureau of Investigation (FBI) "arrested and detained thousands of Arab Muslim men," that many of these men were designated by high-ranking FBI officials as being "of high interest," and that in many cases, including Iqbal's, this designation was made 'because of the race, religion, and national origin of the detainees, and not because of any evidence of the detainees involvement in supporting terrorist activity[.]" The complaint further alleges that Ashcroft was the "principal architect of the policies and practices challenged," and that Mueller "was instrumental in the adoption, promulgation, and implementation of the policies and practices challenged[.]" According to the complaint, Ashcroft and Mueller 'knew of, condoned, and willfully and maliciously agreed to subject [Iqbal] to these conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest" . . . .

(*Id.* at 1959 (Souter, J. dissenting) (citations omitted).) Like Iqbal's allegations, Plaintiffs' allegation are simply too conclusory to support their claims.

The Complaint's allegations that Messrs. Jalan and Szeto took Foundry source code (an alleged trade secret), and that A10's AX Series products utilize software code copied or substantially derived from Foundry's code (*id.* at ¶¶ 28, 45-46), are no less conclusory than the allegations

rejected in *Ashcroft*.  Plaintiffs try to bootstrap those allegations with the typical "on information and belief" qualifiers (*id.*), but such boilerplate incantations cannot magically turn legal conclusions into allegations of fact sufficient to satisfy Rule 8(a) and *Ashcroft*.  On the contrary, qualifying such allegations with the phrase "on information and belief" obviously means that the Plaintiffs lack supporting facts, such as which computer programs—and which version(s) of such programs— allegedly were taken and used, when they were taken, how they were taken, how much was taken, how they were used, and how Plaintiffs know they were taken and used.  *See Hutchens v. Alameda County Social Servs. Agency*, No. C-06-06870 SBA, 2008 U.S. Dist. LEXIS 69429, at *12-13 (N.D. Cal. Sept. 9, 2008) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff *but he [or she] has sufficient data to justify interposing an allegation on the subject*," emphasis added, *quoting* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (2d ed. 1990)).  Facts, as opposed to legal conclusions, involve the "Five Ws" — the who, what, when, where, and why—of a defendants' wrongful actions that, when taken together, lead to the legal conclusion.  The allegations rejected in *Ashcroft* lacked such details, as do Plaintiffs' allegations here.  The part of Plaintiffs' claim describing Defendants' allegedly wrongful acts contains no Ws.  If there were more facts to support Plaintiffs' claims, they surely would have asserted them, and therefore it is highly unlikely that the Complaint's deficient allegations can be fixed.

The Complaint's basic allegation that A10 and Messrs. Chen, Jalan, and Szeto misappropriated Plaintiffs' trade secrets is grounded on little more than a suspicion that because A10 got to market with its AX Series products faster than Plaintiffs think it should have, A10 must have used Foundry's trade secrets.  (*Id.* at ¶ 26.)  *Ashcroft* requires more, *i.e.*, sufficient facts to show that there is probably no alternate explanation for the effect that the Complaint alleges that the defendant has caused.  *Ashcroft*, 129 S. Ct. at 1951.  In other words, the Complaint must plead enough facts that, when taken as true, show causation.  Contrary to the Complaint's version of things, it is equally plausible that A10 brought its accused AX Series to market through completely proper means, including, for example, by independently engineering a new architecture design that could be

implemented quicker and without using any of Foundry's alleged trade secrets. Significantly, the Complaint pleads *no* facts that are inconsistent with such a scenario. Because this explanation is completely consistent with getting a product to market within the timeframe alleged by Plaintiffs, the Complaint fails to plead sufficient facts to show causation.

Indeed, upon careful consideration, the Complaint alleges little if anything more than misappropriation by "inevitable disclosure" (*see, e.g.*, Complaint at ¶¶ 20-21, 25, 28-29, 32, 40-43, and 48), a theory *not* recognized in California. *See, e.g.*, *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1277 (2009) ("The doctrine of inevitable disclosure is not the law in California."); *Lam Research Corp. v. Deshmukh*, No. 05-353230, 2005 WL 3159685, 157 Fed. Appx. 26, 28 (9th Cir. Nov. 29, 2005) (same). It is insufficient to merely allege a former employee's access to trade secrets and then ask the Court to infer that improper disclosure or use occurred. *Id.*

For these reasons, Plaintiffs' trade-secret misappropriation claim should be dismissed with respect to A10 and Messrs. Chen, Jalan, and Szeto.

### D. Plaintiffs Fail to State a Claim for Breach of Contract (Count 11) Against the Individual Defendants, and Such Claim Is Time Barred

The Complaint asserts breach of several provisions in the employment contracts between Foundry and the Individual Defendants. (*See* Complaint, Exs. A and C-D.) Specifically, Plaintiffs' allege that the Individual Defendants breached the following five contractual provisions: (1) "using and disclosing" what the Complaint calls "Proprietary Information," (2) failing to assign their inventions, (3) engaging "in employment and/or business activities" for A10 while employed by Foundry, (4) inducing Foundry employees to leave, and (5) soliciting Foundry's customers and clients. (*Id.* ¶ 138.) The breach of contract count, however, must be dismissed because the Complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft,* 129 S. Ct. at 1960. In addition and in any event, the four-year statute of limitations ran on each of these alleged breaches before the Complaint was filed.

/ / /

/ / /

/ / /

DEFENDANTS' MOT. TO DISMISS COMPLAINT
Case No. 5:10-cv-03428-LHK

### 1. The Allegation of Using and Disclosing Proprietary Information Is Insufficient and Time Barred

The Individual Defendants allegedly signed contracts with Foundry under which they agreed not to disclose or use Foundry's "Proprietary Information." (*See*, *e.g.*, Complaint, Ex. A at 1.) In a circuitous fashion, however, the contracts define "Proprietary Information" as "trade secrets, confidential knowledge, data or any other proprietary information . . . ." *Id.* To the extent that Plaintiffs are claiming that the Individual Defendants breached their contracts by disclosing "trade secrets," this portion of the allegation fails for the same reasons as the misappropriation of trade secrets count fails. *See* Section II.C.2., *supra*. The Complaint fails to plead facts regarding what alleged trade secrets were improperly disclosed, how and/or to whom they were improperly disclosed, and to the extent the Complaint alleges that some Foundry-proprietary information was improperly disclosed or used, it fails to allege facts supporting a claim that such information qualifies as a trade secret.

To the extent that the Complaint contends that the Individual Defendants breached this provision by using or disclosing one or more of the examples of "Proprietary Information" found in the contract, *e.g.*, "inventions, mask works, trade secrets, ideas, processes, formulas . . ." (Complaint, Ex. A at 1), these examples are equally vague. The Complaint provides no detail as to what the Individual Defendants allegedly disclosed or used. For example, while the Complaint alleges that "Proprietary Information" was used in Plaintiffs products, such as "design and technology . . . software code, including source code written for the products . . ." (Complaint at ¶ 16), it is not clear if the Complaint relies on these examples for this portion of the breach of contract count. Even if it does, there are no allegations of what design, what technology, or what code was disclosed or used. The Complaint further fails to allege to whom this "Proprietary Information" was disclosed or the circumstances under which it was disclosed.

Similarly, the Complaint vaguely references "confidential information regarding . . . customers and marketing . . . ." (*id.* at ¶ 17), but fails to allege specific facts or provide concrete details of what is meant by this phrase. There are no allegations of what specific customers or what part of their "confidential marketing" information was used or disclosed, how it was used or

disclosed, and what the effects of such use and disclosure were. Instead, the Complaint simply

alleges, in conclusory fashion, that the Individual Defendants "use[d] and disclos[ed] Foundry's

Proprietary Information." (*Id.* at ¶ 138.) The Federal Rules, as recently clarified in *Ashcroft*, require

substantially more facts to assert an actionable claim for breach of contract. Plaintiffs' Eleventh

Claim for Relief therefore must be dismissed.

Moreover, Plaintiffs' breach of contract claim is time barred based on the four-year statute of

limitations. Cal. Civ. Proc. Code § 337. For an alleged breach based on disclosing or using

proprietary information, the statute of limitations runs at the same time as any claim for trade secret

misappropriation. *Intermedics*, 822 F. Supp. at 644-46 (holding that the breach of a contract that

created a confidential relationship is treated like a CUTSA claim with respect to the statute of

limitations). Thus, the time within which Foundry could have sued expired four years after each

defendant left Plaintiffs' employ. Plaintiffs allege that Mr. Chen left Foundry in September, 2004.

Plaintiffs are fully aware that Messrs. Jalan and Szeto left in 2004 and 2005,[3] respectively. Thus,

Plaintiffs' claims for breach of disclosing or using proprietary information against Messrs. Chen,

Jalan, and Szeto should be dismissed with prejudice.

### 2. The Failure to Assign Allegation Is Insufficient and Time Barred

The Complaint also fails to allege sufficient facts that any the Individual Defendants failed to

assign inventions to Foundry. The "assignment" language upon which Plaintiffs rely is automatic

and self-executing: "I hereby assign . . . all my right, title and interest in and to any and all

Inventions." (Complaint, Ex. A. at 1 (¶ 3).) *See DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,

517 F.3d 1284, 1290 (Fed. Cir. 2008) (language to "hereby grant and assign" is an automatic

assignment). Thus, as a matter of law, Messrs. Chen, Jalan, and Szeto fully met their assignment

obligations to Foundry because they signed a contract containing a self-executing assignment. *SiRF*

*Tech., Inc. v. ITC*, 601 F.3d 1319, 1326 (Fed. Cir. 2010) (whether a contract provision works an

---

[3] The Complaint states that Mr. Chen departed Foundry's employ in September 2004. (Complaint at ¶ 20.) Although the Complaint does not allege when Messrs. Jalan and Szeto departed Foundry, Plaintiffs know that they left Foundry in December 2004 and May 2005, respectively. Thus, Plaintiffs cannot possibly amend this claim to state facts that would avoid the four-year statute of limitations.

automatic assignment is a question of law). The Complaint states no facts to the contrary.

In any event, the allegations of breach (improper use and disclosure) are hopelessly vague and insufficient. The Complaint fails to allege, for example, (i) what inventions the Individual Defendants invented and failed to assign, (ii) when these unknown "inventions" were invented, (iii) the circumstances under which Plaintiffs contend these unknown "inventions" were invented, and which of the Individual Defendants invented them, and (iv) how and why, given the self-executing language of the provision relied upon, these unknown "inventions" are not owned by Plaintiffs. Instead, the Complaint only conclusorily alleges that the Individual Defendants "fail[ed] to assign to Foundry all right, title and interest in and to any and all inventions made or conceived or reduced to practice during the period of their employment with Foundry." (Complaint at ¶ 138). These allegations do not clear the *Ashcroft* hurdle and should be dismissed pursuant to Rule 12(b)(6).

Moreover, given the self-executing nature of the relied-upon contractual language, the assignment of the subject inventions had to occur during Messrs. Chen's, Jalan's, and Szeto's employment at Foundry. Having departed Foundry's employ in the 2004-2005 timeframe, the statute of limitations ran with respect to this claim no later than sometime in 2009, presenting an independent basis for dismissing this part of the breach of contract claim, with prejudice.

### 3. The Allegation of Engaging in Employment or Business Activities for A10 While Still Employed by Foundry Is Insufficient and Time Barred

Without providing any details or facts to support the barest of conclusions, the Complaint alleges that the Individual Defendants "engaged in employment and/or business activities for and on behalf of A10 during their employment [with Foundry] without [Foundry's] written consent." (Complaint at ¶ 138.) The problems with that conclusory allegation include failing to (i) identify which Individual Defendant allegedly breached his contract with Foundry, (ii) define what is meant by "employment and/or business activities," (iii) explain how such activities were carried out, and (iv) indicate when the allegedly improper activities occurred. Defendants and this Court are left to guess at the myriad facts that might support this vague allegation.

/ / /

Pursuant to Rules 8 and 12(b)(6), and as discussed in *Ashcroft*, this part of the breach of contract claim fails.  Moreover, given that Messrs. Chen and Jalan left Foundry in 2004, and Mr. Szeto left Foundry's employ in 2005, this claim cannot be asserted because the four-year statute of limitations has run, and therefore should be dismissed with prejudice.  *See* Sections II.D.1.- 2., *supra*.

### 4. The Allegations of Inducing Others to Leave and Soliciting Clients and Customers Are Unenforceable, Insufficient, and Time Barred

Each of the Individual Defendants' employment contracts with Foundry states (in pertinent part):

> I agree that during the period of my employment by the Company
> I will not, without the Company's express written consent, engage
> in any employment or business activity other than for the Company,
> and for the period of my employment by the Company and for one (1)
> year after the date of termination of my employment by the Company
> I will not (i) induce any employee of the Company to leave the employ
> of the Company or (ii) solicit the business of any client or customer of
> the Company (other than on behalf of the Company).

*See, e.g.,* Complaint, Ex. A at 3 (¶ 7).  Neither restriction, however, is enforceable and both are time barred.

### a. The Anti-Inducement Provision is Unenforceable Under California Law

The Complaint alleges that Messrs. Chen, Jalan, and Szeto breached each part of this provision.  (Complaint at ¶ 138).  Regarding part (i) of this provision—which asserts that the Individual Defendants, after they left Plaintiffs' employ, induced other employees to leave—the Complaint fails to allege enough facts to make such a claim plausible.  The provision states that for one year after the Defendant left, he would not "induce any employee of the Company to leave the employ of the Company . . . ."  (*Id*., Ex. A at 3 (¶ 7).)  While California courts may, under certain circumstances, enforce a provision that prevents a former employee from soliciting company employees (*see, e.g., Thomas Weisel Partners LLC v. BNP Paribas*, No. C 07-6198 MHP, 2010 U.S. Dist. LEXIS 11626 (N.D. Cal. Feb. 9, 2010)), it is unclear what "induce" means here, and whether the caselaw that has enforced clauses baring a former employee from soliciting remaining employees

to join the former employee's new place of work, apply to this contract which prevents the former employee from "induc[ing]" a remaining employee to leave. (Complaint., Ex. A at 3 (¶ 7).) Moreover, the only charge of improperly inducing employees to leave is made on "information and belief." (*Id.* at ¶ 138.) These "information and belief" allegations show that Plaintiffs have no facts upon which they can support this allegation, even if this provision were otherwise enforceable.

Moreover, the Complaint fails to identify a single person who was allegedly improperly "induced" by any of the Individual Defendants to leave Foundry's employ. Regarding Mr. Chen, the Complaint asserts "on information and belief" only, that he "recruited" Messrs. Jalan and Szeto (*id.* at ¶ 25) but conspicuously omits any supporting facts. The Complaint fails to address when any alleged wrongful activity occurred, and what was actually communicated by Chen that violated this provision. Under *Ashcroft*, and the cases and authority cited and discussed in Section II.A., *supra*, Plaintiffs' Complaint fails to allege sufficient *facts* supporting a claim that any of the individual defendants *induced* a Foundry employee to leave, assuming "induce[ment] . . . to leave" is even actionable.

Moreover, the statute of limitations bars this breach of contract claim against Messrs. Chen, Jalan, and Szeto. Regarding Mr. Chen, the Complaint alleges that he left Foundry in September 2004. (*Id.* at ¶ 20.) Assuming the breach of inducing others to leave provision is enforceable at all, it was only in effect for one year. Thus, the latest that this claim could have arisen concerning Mr. Chen was September 2005. Thus, the four-year statute of limitations ran, at the latest, nearly a year before Plaintiffs filed their Complaint. As for Messrs. Jalan and Szeto, while the Complaint fails to plead when they actually left Foundry, Plaintiffs cannot assert this claim against them because they know that at least five years have passed since either was employed by Foundry. Thus, this part of the breach of contract claim against Messrs. Chen, Jalan, and Szeto must be dismissed with prejudice.

### b. The Anti-Solicitation Provision is also Unenforceable Under Applicable State Law

The Complaint asserts that the Individual Defendants "solicited . . . Foundry's . . . customers and clients for and on behalf of A10." (*Id.* at ¶ 138.) However there are no facts in this Complaint to

support this conclusory allegation.  For example, the Complaint fails to identify a single customer or client, and fails to allege what was communicated to these unnamed customers and clients.  Further, there are no allegations in the Complaint that detail when this supposed solicitation occurred.  Such details would be key because this term, even if it were enforceable, was limited to one year after the individual defendant left Foundry.  Moreover, even if such details were alleged, this portion of Plaintiffs' Complaint is still unenforceable pursuant to Business and Professions Code Section 16600.[4]

In *Edwards v. Arthur Anderson*, 44 Cal. 4th 937 (2008), the California Supreme Court recently invalidated a contractual provision that is very similar to the language at issue here.  The contract in *Edwards* prohibited the defendant from (i) providing services for any client on whose account he had worked during the eighteen months prior to his termination, and (ii) soliciting any client in the former employer's office.  The court invalidated those provisions, explaining that the purpose behind Section 16600 codified a settled policy in favor of open competition and employee mobility, to ensure that every citizen retains the right to pursue lawful employment and an enterprise of his or her choice.  *See Edwards*, *supra*, at 946; *D'Sa v. Playhut*, 85 Cal. App. 4th 927, 933 (2000); *Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, 859 (1994).  Under *Edwards*, the applicable provisions of the Foundry agreements improperly prevent the Individual Defendants from pursuing a lawful business operation (because they bar each from "any" client or customer), and should be deemed invalid as contrary to public policy.

Finally, for the same reasons that a claim based on part (i) of this provision cannot be pursued based on the four-year statute of limitations, the statute has also run with respect to part (ii).  Because more than five years have passed since each of Messrs. Chen, Jalan, and Szeto left Foundry, Plaintiffs cannot, as a matter of law, pursue a breach of contract claim against any of them.  This part of Plaintiffs' breach of contract claim therefore should be dismissed with prejudice.

/ / /

/ / /

---

[4]  That statute provides that ". . . every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

### E. Plaintiffs' Claim for Intentional Interference With Prospective Economic Advantage (Count 12) Fails Under Rule 12(b)(6) and Is Time Barred

Under California law, a claim based upon intentional interference with prospective economic advantage must have the following elements: "(1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of defendant." *Swingless Golf Club Corp. v. Taylor*, No. C 08-05574 WHA, 2009 WL 2031768, at \*4 (N.D. Cal. Jul. 7, 2009); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal. 4th 376, 392 (1995). Plaintiffs' Complaint fails to allege *any* facts corresponding to these elements. For example, the Complaint fails to allege an economic relationship between Plaintiffs and any others, or that Defendants knew of any such relationships, rendering requisite elements (1) and (2) fatally missing.

Furthermore, the vaguely alleged acts upon which the Complaint relies for this count are not independently wrongful, as required by precedent. *See, e.g.*, *Della Penna*, 11 Cal. 4th at 393; *see also Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 956 (N.D. Cal. 2003). Here, the Complaint merely alleges that A10 and the Individual Defendants (a) solicited Foundry's customers in breach of contract; (b) solicited and hired Foundry's employees in breach of contract and as a result of using and disclosing Foundry's alleged trade secrets; (c) used and disclosed Foundry's alleged trade secrets; and (d) denigrated Plaintiffs' technology, products, and services. (Complaint at ¶ 144). To the extent Plaintiffs are relying on their breach of contract allegations to support this claim for interference, such reliance is improper. As shown above (see, e.g., Section II.D., *supra*), the breach of contract count must be dismissed. Moreover, even if the breach of contract count were sufficiently alleged, this Court has already held that an alleged breach of a confidentiality and non-solicitation agreement by the defendant to solicit business from plaintiff's customers cannot state a claim for intentional interference with prospective economic relations. *First Advantage Background Servs. Corp. v. Private Eyes, Inc*., No. C-07-2424 SC, 2007 U.S. Dist. LEXIS 67941, at \*2 (N.D. Cal. Sept. 5, 2007).

Plaintiffs' reliance on their trade secret misappropriation count to support this interference count is equally deficient. The trade secret count must be dismissed (*see* section II.C., *supra*) and, therefore reliance upon it in this interference count is misplaced. Thus, element (3) is missing.[5]

Further, even if the Complaint adequately alleges separate acts independent of the interference itself to satisfy element (3), this count is still deficient. To state a claim for lost prospective economic advantage, a plaintiff must plead facts that support a reasonable probability of the lost economic advantage. *Kasparian v. Los Angeles,* 38 Cal. App. 4th 242, 271 (1995). A vague claim, under which only undefined acts are purported to interfere with a company's customers, does not support the requirement that a plaintiff suffered actual disruption and damages resulting from such disruption. *Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F. Supp. 1303, 1311-12 (N.D. Cal. 1997). Here, the Complaint alleges, in conclusory fashion, that Plaintiffs' "relationships with their actual and prospective customers were . . . disrupted." (Complaint ¶ 146.) There are no facts to support even an inference that Defendants' acts caused Plaintiffs to lose customers, how such loss occurred, or how Defendants' acts affected any of Plaintiffs' current customers. *Silicon Knights,* 983 F. Supp. at 1312. Indeed, the Complaint even fails to identify any customers affected by Defendants' alleged conduct. Hence, requisite elements (4) and (5) are also missing, demanding dismissal.

Moreover, to the extent the interference claim hinges on trade secret misappropriation as the underlying wrongful act, it is preempted by the CUTSA. *See Axis Imex, Inc. v. Sunset Bay Rattan, Inc.,* No. C 08-3931 RS, 2009 WL 55178, *5 (N.D. Cal. Jan. 7, 2009) (an intentional interference with prospective economic relationship claim based on trade secrets misappropriation is preempted by CUTSA). This claim should thus also be dismissed with prejudice.

---

[5] This claim is also based on Defendants allegedly "denigrating the nature, performance, quality, and capabilities of Plaintiffs' technology, products, and services, as well as the direction of Plaintiffs' businesses and strengths of their prospects." (Complaint at ¶ 144.) The Complaint, however, states no separate, underlying claim for any such alleged wrongful "denigration," nor are there any facts pled that would make any such claim plausible on its face. Indeed, such a claim must meet the heightened standard of Federal Rule of Civil Procedure 9(b), and the Complaint does not do so. *See Terarecon, Inc. v. Fovia, Inc.*, No. C 05-4407 CW, 2006 WL 1867734, at *7 (N.D. Cal. Jul. 6, 2006) (holding that false statements underlying a claim for intentional interference with prospective economic advantage must be pled under the requirements of Rule 9(b)).

DEFENDANTS' MOT. TO DISMISS COMPLAINT
Case No. 5:10-cv-03428-LHK

Plaintiffs' interference claim has also been extinguished by the applicable statute of limitations.  Cal. Civ. Proc. Code § 339; *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (Cal. Ct. App. 1999) (interference with prospective business advantage is subject to a two-year statute of limitations).  The latest of the allegedly wrongful underlying acts on which this claim is based occurred one year after the latest date that Messrs. Chen, Szeto, or Jalan departed Foundry's employ.  As shown above (*see* n. 3, *supra*), Mr. Szeto, the Defendant who stayed the longest, left Foundry in May 2005 and the contract restrictions of Article 7 (Complaint., Ex. A at 3 (¶ 7)) expired one year later.  The May 2008 expiry of the applicable two-year statute of limitations presents yet another reason to dismiss this claim, with prejudice.

For these reasons, this claim against all Defendants should be dismissed with prejudice.

### F.     Plaintiffs' Intentional Interference With Contract Claim Fails Under Rule 12(b)(6) and is Time Barred

The elements of a California-based claim for intentional interference with contractual relations are:  "(1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Swingless*, 2009 WL 2031768 at *4 (N.D. Cal. July 7, 2009).  Claims for intentional interference with contracts are subject to a two-year statute of limitations.  Cal. Civ. Proc. Code § 339; *Knoell*, 76 Cal. App. 4th at 168 (interference with contractual relations is subject to a two-year statute of limitations).

This claim should be dismissed for at least four reasons.  First, the Complaint fails to allege sufficient facts to support a breach of contract claim upon which this claim can be based.  The contracts at issue in this count are the employment contracts between Plaintiffs and the Individual Defendants.  (Complaint at ¶ 151.)  However, the Complaint fails to allege any facts showing either that these contracts were breached, or that Plaintiffs suffered any damage from such breaches.  *See* Section II.D., *supra*.  Consequently, their claim for contractual interference fails.  Further, to the extent that this count relies on the assertion that Defendants misappropriated alleged trade secrets (*see id.* at ¶ 152), this count still fails.  As shown above (Section II.C., *supra*), the Complaint fails to

allege a claim for trade secret misappropriation, and such claim is time barred. Since the Complaint pleads no other independent basis for a claim of interference with contract, *Ashcroft* mandates dismissal.

In any event, preemption applies to the extent that the Complaint bases the interference claim upon trade secret misappropriation. *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. C-07-0635 JCS, 2007 U.S. Dist. LEXIS 39599, at *27 (N.D. Cal. May 16, 2007). Finally, the applicable two-year statute of limitations has long since run because the most recent act on which this claim could be based occurred in May 2005. The contract restrictions of Article 7 expired one year later. Thus, the two-year statute of limitations expired for this claim in May 2008.

Thus, this claim against all Defendants should be dismissed with prejudice.

### G.    Plaintiffs' Unfair Competition Claim Fails Under Rule 12(b)(6)

"Unfair competition" under California law refers to "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"). Although California courts recognize three different varieties of actionable unfair competition—acts that are either unlawful, unfair, or fraudulent (*see*, *e.g.*, *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (Cal. Ct. App. 1996))—the Complaint pleads none of them.

In lieu of facts supporting a facially-plausible claim, Plaintiffs have filled their Complaint with conclusory allegations wholly incapable of satisfying Rule 8(a) and 12(b)(6) under *Ashroft*. *See* Complaint at ¶¶ 156-63; *see also Jackson v. Ocwen Loan Servicing, LLC*, No. 2:10-cv-00711-MCE-GGH, 2010 U.S. Dist. LEXIS 93524, at *12-13 (E.D. Cal. Aug. 20, 2010) (because none of plaintiffs' incorporated claims had been sufficiently pled, the plaintiffs lacked "a predicate 'unlawful' action to underlie their UCL claim."). The Complaint's bases for the unfair competition claim virtually mirrors that of their intentional interference with prospective economic advantage and intentional interference with contract claims, which, as explained above, both fail. Moreover, a breach of contract claim is not considered "unlawful" conduct under the UCL. *Accuimage*, 260 F. Supp. 2d at 954 ("While section 17200 has broad application, . . . its scope is restricted to violations

of law, not contract."). Nor are the Complaint's patent infringement and/or trade secret misappropriation claims legally capable of supporting an unfair competition claim. *See, e.g.*, *Halton Co. v. Streivor, Inc.*, No. C 10-00655 WHA, 2010 U.S. Dist. LEXIS 50649, at *11 (N.D. Cal. May 21, 2010) (patent infringement claim preempts unfair competition claim); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (CUTSA claim preempts unfair competition claim). In short, the Complaint fails to plead any unlawful conduct under the UCL.

The Complaint's failures continue with its faulty allegations of any actionable "unfair" conduct. Unfair conduct under the UCL is conduct that "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. Plainly and simply, the Complaint does not allege any harm to competition.

The Complaint also falls short as to its claim of fraudulent conduct, which, under the UCL, must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL."). Plaintiffs' obligation to plead the "Five Ws" of the fraudulent conduct is even greater under Rule 9(b). The Complaint fails to do so.

Thus, this claim against all Defendants should be dismissed under Rule 12(b)(6). Because Plaintiffs' only claims eligible to underlie this claim are time barred, such dismissal should be with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III.    CONCLUSION

For these reasons, Messrs. Chen, Jalan, and Szeto respectfully urge this Court to dismiss all claims against them, and A10 respectfully urges this Court to dismiss all claims other than Plaintiffs' patent infringement claims.

Dated:  October 11, 2010

FINNEGAN, HENDERSON, FARABOW
GARRETT & DUNNER, L.L.P.


By: _____/s/ Scott R. Mosko_____
                     Scott R. Mosko

Attorneys for Defendants
A10 NETWORKS, INC., LEE CHEN,
RAJKUMAR JALAN, and RON SZETO

Of Counsel:

Smith R. Brittingham IV
smith.brittingham@finnegan.com
John F. Hornick
john.hornick@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Lionel M. Lavenue
lionel.lavenue@finnegan.com
John M. Mulcahy
john.mulcahy@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia  20190-5675
Telephone:  (571) 203-2700
Facsimile:   (202) 408-4400