1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation, and FOUNDRY NETWORKS, LLC, a Delaware limited liability company,<br><br>              Plaintiffs,<br><br>     v.<br><br>A10 NETWORKS, INC., a California corporation, LEE CHEN, an individual, RAJKUMAR JALAN, an individual, RON SZETO, an individual, LIANG HAN, an individual, STEVEN HWANG, an individual, and DAVID CHEUNG, an individual,<br><br>              Defendants. | Case No.: 10-CV-03428-LHK<br><br><br><br><br><br><br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

Defendants A10 Networks, Inc., Lee Chen, Rajkumar Jalan, Ron Szeto, and Steven Hwang (together, A10) move to dismiss various claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, this Motion is GRANTED in part and DENIED in part.

I.     Introduction and Background

On August 4, 2010, plaintiffs Brocade Communications Systems, Inc., and Foundry Networks, LLC (Foundry) (together, Brocade) filed a complaint asserting patent infringement, trade secret misappropriation, breach of contract, interference with prospective economic advantage, interference with contract, and unfair competition against Defendants A10 Networks and individuals Lee Chen, Rajkumar Jalan, Ron Szeto, and David Cheung. *See* Dkt. No. 1

1

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(Compl.).  On October 11, 2010, all the defendants other than Mr. Cheung filed a Motion to Dismiss most of Brocade's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  On October 29, 2010, Brocade filed a First Amended Complaint (FAC), naming additional defendants Lian Han and Steven Hwang.  *See* Dkt. No. 37.  The FAC asserts additional patent infringement claims, as well as adding copyright infringement, breach of fiduciary duty, and breach of duty of loyalty claims.

> a.  Allegations Regarding Brocade's Products and Business

The FAC alleges that Foundry was acquired by Brocade in December, 2008.  FAC ¶ 3. Prior to this, Brocade alleges that Foundry established itself as the industry leader in application delivery systems.  These systems help to optimize Internet performance.  FAC ¶¶ 14,15.  Foundry sold application delivery systems as part of its ServerIron and ADX product lines.  FAC ¶ 14. Brocade alleges that Foundry obtained ten U.S. patents on its application delivery system technology.  FAC ¶ 16.  Foundry developed software for use in its products.  FAC ¶ 17.  Brocade alleges that Foundry invested millions in development of its Server Iron and ADX products.  FAC ¶ 18.

Brocade alleges three categories of alleged trade secrets: technical, marketing, and employee-related information.  Brocade identifies its confidential technical information as "the design and technology best suited for the products, software code . . . performance capabilities, constraints and challenges for the product, as well as potential product development plans.  FAC ¶ 19.  Brocade identifies its confidential marketing information as information regarding its products, including customer needs and terms of agreements with customers.  FAC ¶ 20.  Finally, Brocade identifies its confidential employee-related information as "the skill levels, experience, specialties, performance attributes, compensation levels, and attitudes" of employees.  FAC ¶ 21. Brocade alleges that it took precautions to protect this information.  Employees were required to sign employment contracts by which they agreed not to disclose proprietary information, including company development plans and marketing information.  FAC ¶ 48.

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

b.   Allegations Regarding A10's Products and Business

Brocade alleges that defendant Chen was a co-founder of Foundry, and served as its Vice President of Software Engineering until he left the company in 2004.  FAC ¶ 24.  Brocade alleges that Chen supervised the development of the ServerIron products and Foundry's application delivery systems.  *Id.*  Chen supervised the named inventors of the patents in suit and had access to the technical, customer, and employee trade secrets alleged above.  *Id.*  Brocade alleges that while still serving as a Foundry executive, Chen secretly began working on a new venture which would ultimately become A10.  FAC ¶ 26, 30.  Brocade asserts that Chen used Foundry resources to develop the new business.  Brocade further asserts that Chen represented Foundry in negotiations regarding the potential acquisition of Authenet, Inc. while simultaneously pursuing this opportunity on behalf of his new venture.  FAC ¶¶ 27-29.

Brocade alleges that Chen developed A10 to "operate in precisely the same specialized market as Foundry and to compete directly with Foundry" and that A10's products, such as the A10 AX Series network devices, would "copy and compete directly with Foundry ServerIron products" that Chen had helped develop while working at Foundry.  FAC ¶ 31.  Brocade goes on to allege that Chen recruited a large number of employees from Foundry, and tried to avoid arousing suspicions by requiring employees to resign from Foundry and wait a period of time before joining A10.  FAC ¶ 32.  Some of these alleged recruits include defendants Jalan and Szeto.  FAC ¶ 34.  Brocade alleges that both were heavily involved with development of ServerIron products, and that each is a named inventor of one or more of the patents in suit.  FAC ¶ 36.  Brocade alleges that Jalan and Szeto used Foundry's source code to develop the competing AX products.  FAC ¶ 37.

Regarding defendant Han, Brocade states he is a software engineer who worked for Foundry from 2003-2005.  FAC ¶ 38.  Brocade alleges that Han began working for A10 while still employed by Foundry, and passed technical information regarding the ServerIron and ADX products to specific A10 personnel.  *Id.*

Regarding defendant Hwang, Brocade asserts he is a hardware engineer and former Foundry employee.  FAC ¶ 39.  Brocade alleges that he began working for A10 while still

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1    employed by Foundry, used Foundry resources in conducting business for A10, and passed

2    Foundry's technical information to specific A10 personnel.  *Id.*

3         Brocade alleges that A10 recruited many former Foundry employees with access to and

4    knowledge of its alleged trade secrets, and that A10 was funded in part by investments from

5    employees still working for Brocade.  FAC ¶¶ 54-55.  Finally, Brocade alleges that through its use

6    of Brocade's technical information and source code, A10 was able to launch its competing AX

7    Series more quickly and cheaply than it could have done otherwise.  FAC ¶¶ 57-60.  Brocade

8    alleges that A10 also recruited marketing employees with access to the alleged marketing trade

9    secrets, and that these individuals used Brocade trade secret information in marketing A10's

10   products to Brocade's customers.  FAC ¶ 61.  Brocade alleges that these activities disrupted

11   ongoing and potential client relationships.  FAC ¶ 62.

12        After the FAC was filed, moving defendants withdrew their then-pending Motion to

13   Dismiss, and A10[1] filed a Motion to Dismiss the FAC on November 12, 2010.  *See* Dkt. No. 45.

14   The hearing on this Motion was originally set for February 17, 2011, but was continued to April

15   28, 2011.  *See* Dkt. No. 70.  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter

16   suitable for decision without oral argument.  Therefore, the April 28, 2011 hearing on this Motion

17   is VACATED.  However, the Case Management Conference set to follow the hearing will proceed

18   as scheduled.  In advance of the Case Management Conference, the Court will set a schedule based

19   on the parties' Joint Case Management Statement, filed on February 11, 2011.

20        II.     Standard

21        Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if

22   it fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, the

23   plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

24   *Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the

25   plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted

26   unlawfully."  *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In deciding whether the plaintiff has

27   stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable

28   ------

[1] Defendant David Cheung answered the FAC, and does not join the Motion to Dismiss.

4

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    inferences in the plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

2    However, the court is not required to accept as true "allegations that are merely conclusory,

3    unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

4    F.3d 1049, 1055 (9th Cir. 2008).  Leave to amend must be granted unless it is clear that the

5    complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't. of Corr.*, 66 F.3d 245,

6    248 (9th Cir. 1995).

7    III.     Application

8              a.   Twelfth Claim for Trade Secret Misappropriation

9              A10 advances several arguments in support of its Motion to Dismiss Brocade's claims

10   alleging misappropriation of trade secrets.  First, A10 argues that the FAC pleads facts so

11   inconsistent with those stated in the original Complaint that the court should strike them as "sham."

12   *See* Mot. at 5-6.  Second, in a related argument, A10 urges that the trade secret claims are time-

13   barred based on the allegations of the original Complaint, and that the Court should disregard any

14   contrary allegations in the FAC and dismiss the trade secret claims as untimely.  *See* Mot. at 6-10.

15   Third and finally, A10 argues that Brocade has alleged insufficient facts to state a claim for trade

16   secret misappropriation and that the claims should be dismissed on this ground.  *See* Mot. at 14-16.

17             The Court addresses these arguments in turn.

18             b.   Motion to Strike Amended Pleadings and Dismiss Trade Secret Claim as Time-

19                  Barred

20             The statute of limitations for a trade secret misappropriation claim under California law is

21   three years.  Cal. Civ. Code § 3426.6.   The period begins to run "after the misappropriation is

22   discovered or by the exercise of reasonable diligence should have been discovered."  *Id.*  In support

23   of its first argument, A10 urges the Court to find that Brocade should have discovered its trade

24   secret claims more than three years before filing its first complaint, and therefore that the claims

25   are time-barred.  In support of this argument, A10 states that the original Complaint "painted a

26   picture in which Foundry's co-founder, Mr. Chen, started a competing company while still working

27   for Foundry in 2004, left Foundry later that year and wrongfully started recruiting for Foundry

28   Foundry [sic] engineers to join his new company . . . the OC does not even hint that Foundry was

5

1   unaware of any of this while it was happening.  The FAC attempts to paint a very different picture,

2   in which Foundry was actually completely in the dark until just quite recently."  Mot. at 6.

3   Essentially, A10 asks the Court to assume that Brocade's silence about when it learned of the trade

4   secret misappropriation in the original Complaint should be taken as an admission that it knew

5   about its potential cause of action as of 2004, when Mr. Chen left Foundry, and that the statute of

6   limitations should begin running at that time.  However, after a careful comparison of the

7   Complaint and the FAC, the Court can find no facts in the Complaint that are inconsistent with

8   Brocade's present contention that it did not learn about the alleged trade secret theft until late 2009

9   or early 2010.  A10 complains that "Plaintiffs' FAC omits what they supposedly did know and

10  when they learned it. . . ."  Mot. at 9.  However, the FAC adequately alleges reasons why the trade

11  secret misappropriation claim (and the other claims) were not discovered earlier: the defendants'

12  alleged concealment of their activities.  A claim cannot be dismissed on statute of limitations

13  grounds unless it is clear from the face of the complaint that the statute has run and that no tolling

14  is possible.  *Conerly v. Westinghouse Electric Corp.,* 623 F.2d 117, 119 (9th Cir. 1980).

15      Striking portions of the FAC and assuming facts not alleged in either complaint is contrary

16  to the Ninth Circuit's holding in *Conerly*.  Moreover, none of the authority cited by A10 supports

17  such actions.  First, as Brocade points out in its Opposition, the Ninth Circuit has held that even

18  inconsistent pleadings may not be stricken unless the Court finds that they were made in bad faith.

19  *PAE Gov't Servs. v. MPRI, Inc.,* 514 F.3d 856, 860 (9th Cir. 2007) ("there is nothing in the Federal

20  Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent

21  or even contradictory allegations.  Unless there is a showing that the party acted in bad faith—a

22  showing that can only be made after the party is given an opportunity to respond under the

23  procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading.").

24  Even assuming that A10 intended to argue that the allegations in the FAC were made in bad faith,

25  it has not sufficiently supported this argument.

26      A10's cited authority is also distinguishable.  For example, in *Stearns v. Select Comfort*

27  *Retail Corp.,* _ F. Supp. 2d _, No. 08-2746 JF (PVT), 2010 WQL 2898284 at *13 (N.D. Cal. July

28  15, 1996), the court struck a new allegation that directly contradicted previous allegations, but

6

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1   refused to strike new allegations that were not contradicted by previous pleadings.  Although A10

2   cites some authority finding that new contentions need not be directly contradictory in order to be

3   stricken as sham pleadings, as A10 concedes, these cases hold that the new allegations must be at

4   least inconsistent with the previous pleadings if the court wishes to ignore them.  *See, e.g., Lockton*

5   *v. O'Rourke,* 184 Cal. App. 4th 1051, 1061 (2010).  As stated above, the Court finds that the

6   FAC's allegations are consistent with those of the Complaint, and that there is no reason to suspect

7   that the amendments were made in bad faith (pursuant to *PAE*).  Therefore, there is no basis to

8   strike new allegations in the FAC.[2]

9          The statute of limitations on trade secret claims begins to run "after the misappropriation is

10  discovered or by the exercise of reasonable diligence should have been discovered."  Cal. Civ.

11  Code § 3426.6.  In the FAC, Brocade alleges that it did not discover the possibility of the alleged

12  misappropriations until late 2009 or 2010.  FAC ¶ 23.  A10 argues that, regardless of these

13  allegations, Brocade should have discovered its claim sooner, and the claim should be barred on

14  this ground.  *See* Mot. at 9-10.  It appears that the factual record must be developed before the

15  Court can determine whether Brocade's claims are time-barred.  For the most part, A10's cited

16  authority finds that trade secret claims are time-barred at the summary judgment phase, not at the

17  pleadings phase.  *Intermedics, Inc. v. Ventritex, Inc.,* 822 F.Supp. 634, 636-37 (N.D. Cal. 1993);

18  *Memry Corp. v. Ky. Oil Tech.,* N.V., No. C-04-03843 RMW, 2007 WL 2746736, *7 (N.D. Cal.

19  Sept. 20, 2007).  Both *Intermedics* and *Memry* were decided at the summary judgment phase.  The

20  courts in both cases found that the statute of limitations began to run because the plaintiffs had

21  *actual notice* of trade secret misappropriation.  As the court noted in *Intermedics*, such a

22  determination is often case-specific and fact-intensive.  *See Intermedics,* 822 F.Supp. at 636.  The

---

23  [2] On Reply, A10 tries to revive its motion to strike by arguing that under Federal Rule of Civil

24  Procedure 12(b)(1), the Court need not presume allegations in the FAC to be true.  In fact, this is
    only accurate if a party moving to dismiss for lack of subject matter jurisdiction under Rule

25  12(b)(1) submits evidence outside the pleadings to support its motion.  See *Savage v. Glendale*
    *Union High Sch. Dist. No. 205,* 343 F.3d 1036, 1040 (9th Cir. 2003) (internal citations omitted).

26  The responding party must then rebut this evidence.  A10 did not move to dismiss pursuant to Rule
    12(b)(1), and it submitted only one exhibit outside the pleadings in support of its Motion.  A10 did

27  not request judicial notice of this exhibit.  Even if it had, the exhibit is consistent with the pleadings
    of both the original Complaint and the FAC.  Thus, A10's arguments regarding Rule 12(b)(1) are

28  inapposite.

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

1    one case A10 cites which found a trade secret claim time-barred at the pleadings phase involved

2    allegations showing that the plaintiff was present at the meeting where his alleged secrets were

3    disclosed, and on this basis, the court concluded that he was at least on inquiry notice as of this

4    date. *Portney v. CIBA Vision Corp.,* No. SACV 07-0854 AG, 2008 WL 5505518 at *9-10 (C.D.

5    Cal. Dec. 24, 2008).  But Brocade makes no similar admission in either the original Complaint or

6    the FAC.  Therefore, the Motion to Strike new pleadings, and the Motion to Dismiss the trade

7    secret misappropriation claims as time-barred, are DENIED.  The statute of limitations defense

8    may be raised again at the summary judgment phase.[3]

9               c.    Motion to Dismiss Trade Secret Claim for Insufficient Pleading

10          A10 argues that Brocade has alleged "virtually no facts supporting the alleged

11   misappropriation of Foundry trade secrets."  *See* Mot. at 14.  A10 submits that the FAC fails to

12   allege sufficient facts to make the trade secret misappropriation claim "plausible on its face," and

13   therefore must be dismissed pursuant to *Iqbal*.  The Court disagrees.

14          A claim for trade secret misappropriation under California law requires pleading (1) the

15   existence of a trade secret, and (2) misappropriation of the trade secret.  *See* Cal. Civ. Code §

16   3426.1; *Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 950 (N.D. Cal.

17   2003).  As outlined in the Introduction, Brocade has alleged that it has trade secrets, including the

18   design of its ServerIron and ADX products, related software including source code, customer

19   information, and employee information.  FAC ¶¶ 18-22.  Brocade alleges that it has made efforts to

20   maintain the secrecy of this information, including by requiring employees to sign confidentiality

21   agreements.  FAC ¶¶ 22; 47-51.  Brocade further alleges that individual defendants, including Jalan

22   and Szeto, made copies of certain Brocade trade secrets (such as the ServerIron and ADX source

23   code).  FAC ¶59.  Brocade asserts that A10 used its knowledge of its trade secrets, including the

24   ServerIron and ADX products design and related software, to provide a "jump start" on developing

---

[3] A10 has also moved to dismiss Brocade's breach of contract, breach of fiduciary duty, breach of the duty of loyalty, interference, and unfair competition claims as time-barred, relying on the same legal and factual arguments it advances regarding the trade secret misappropriation claim.  The Court rejects the arguments regarding Brocade's other claims for the same reasons that it rejects the argument regarding the trade secret misappropriation claim.  The Court cannot determine that the limitations period on these claims should have started running in 2004-05, as A10 claims, without development of the factual record.

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

competing products.  FAC ¶¶ 35, 37, 59.  Brocade alleges that A10 then recruited "vital sales personnel" from Brocade in order to gain access to confidential sales and marketing information to use in marketing its competing products.  FAC ¶ 61.

Brocade's allegations are sufficient to state a claim "plausible on its face."  A10's argument that it is "equally plausible that A10 brought its accused AX Series to market through completely proper means" misapprehends the relative burdens at this point in the litigation.  The Court is not weighing the relative probability that the facts alleged are true.  *See Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) (holding that *Iqbal* does not impose a probability requirement).  Instead, it is determining whether or not Brocade has alleged facts sufficient to "provide the grounds of [its] entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. 2007) (internal citations and quotation omitted).  It concludes that Brocade has done so.

As Brocade notes, another court in this district has reached a similar conclusion about a similar trade secret misappropriation claim.  *See DocMagic Inc. v. EllieMae Inc.,* _ F. Supp. 3d. _, No. C 09-04017 MHP, 2010 U.S. Dist. LEXIS 108628 at *50-53 (N.D. Cal. Oct. 12, 2010) (finding trade secret misappropriation claim sufficiently alleged when plaintiff alleged that defendant used its customer information to launch a competing product).  This conclusion is also in accord with decisions by other district courts in the Ninth Circuit.  *See W.L. Gore & Assocs. v. GI Dynamics Inc.,* No. CV-10-8088-PHX-GMS, 2010 U.S. Dist. LEXIS 133309 at *25-27 (D. Ariz. Dec. 15, 2010) (finding trade secret misappropriation claim adequately pled under the Uniform Trade Secrets Act and in light of *Iqbal* where the plaintiff alleged "research, development, and market opportunities" and "product design . . . patent portfolio, and future plans" as its trade secrets, and alleged that defendant had used these materials to launch a competing product with similar features to plaintiff's product and to file patent applications); *DLC Dermacare LLC v. Castillo,* No. CV-10-333-PHX-DGC, 2010 U.S. Dist. LEXIS 132403 at *12-*14 (D. Ariz. Dec. 14, 2010) (same; finding adequately-pled claim based on plaintiff's allegation that its "operation of DermaCare facilities, including manuals, training materials, and marketing information" were trade secrets, and that the defendant had used these manuals in operating competing facilities).

9

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1   Finally, A10 argues that Brocade's pleadings are insufficient because many of them rely on

2   pleadings made "on information and belief."  However, as the authority cited by A10 itself holds,

3   pleading in this manner is acceptable for information that is not presumptively in the knowledge of

4   the pleading party.  *Hutchens v. Alameda County Soc. Servs. Agency,* No. C-06-06870 SBA, 2008

5   U.S. Dist. LEXIS 69429 at *11-14 (N.D. Cal. Sept. 9, 2008) (finding that failure to plead

6   information presumptively in the plaintiffs' possession "failed to put defendant on notice as to what

7   it should defend against.").  In the instant case, to use one example, information about whether and

8   how former Foundry and Brocade employees allegedly copied Brocade source code and used it to

9   create a competing product is presumptively in the possession of A10, not Brocade.  Therefore,

10   A10 has not identified any basis for the Court to disregard these pleadings.

11   The Court concludes that Brocade has adequately pled a claim for trade secret

12   misappropriation.  Therefore, the Motion to Dismiss Brocade's twelfth claim for trade secret

13   misappropriation is DENIED.

14   d.   First through Tenth Claims for Indirect and Induced Patent Infringement

15   A10 next argues that Brocade has not sufficiently alleged direct infringement by third

16   parties to sustain its claims for indirect patent infringement, and has not sufficiently alleged intent

17   to induce infringement to sustain its claims for induced patent infringement.  *See* Mot. at 11-13.

18   Indirect patent infringement requires an allegation of direct infringement by another.  *Dynacore*

19   *Holdings Corp. v. U.S. Philips Corp.,* 363 F.3d 1263, 1274 (Fed. Cir. 2004).  Inducement of

20   infringement requires an allegation of indirect infringement, with the additional element that the

21   defendant "possessed the requisite knowledge or intent to be held vicariously liable."  *Dynacore*

22   *Holdings,* 363 F.3d at 1273 (internal citations omitted).

23   Regarding indirect infringement, A10 argues that the FAC does not sufficiently allege

24   infringement by others.  Brocade responds that the FAC sufficiently alleges infringement by A10's

25   customers and manufacturers, by alleging that "A10 (and/or third parties acting on A10's behalf)

26   manufactures, imports, sells and/or offers to sell products, including its AX Series products, that

27   infringe the Patents-in-suit," and that A10 then sells these products to its customers. FAC ¶¶ 61,

28   63.  Brocade states that A10's customers "clearly have a motivation to operate Defendants' devices

10

United States District Court
For the Northern District of California

1  in an infringing manner." Opp'n at 12. As the Federal Circuit noted in *Dynacore*, a plaintiff can

2  base its assertions of direct infringement on infringement by customers of the accused product.

3  *Dynacore Holdings*, 363 F.3d at 1274. Thus, Brocade has adequately alleged that A10's AX Series

4  products are accused of infringing the patents-in-suit, that any manufacturer, importer or seller in

5  the supply chain for this product indirectly infringes the patents, and that any customer who

6  purchases the AX Series products and uses them as intended infringes the patents. The Court finds

7  that these allegations are sufficient to provide the grounds for Brocade's entitlement to relief.

8        Likewise, the Court finds that Brocade's allegations regarding induced infringement are

9  sufficient. In order to prove its allegations of induced infringement, Brocade will have to show that

10  A10 and the individual defendants "knowingly induced infringement and possessed specific intent

11  to encourage another's infringement." *AstraZeneca LP v. Apotex, Inc.,* Nos. 2009-1381, 2009-

12  1424, 2010 U.S. App. LEXIS 22660 at *37 (Fed. Cir. Nov. 1, 2010). However, this proof is not

13  required at the pleadings stage. At this point, Brocade need only sufficiently allege its claims so

14  that A10 knows against what it is defending. Brocade has alleged that Jalan and Chen had intimate

15  knowledge of the patents in suit and set about designing the accused AX series products "with full

16  knowledge" of these patents. SAC ¶ 37. The Court finds that these allegations are sufficient to

17  make Brocade's claims of induced infringement plausible. Particularly because "[d]eterminations

18  of knowledge or of intent [such as the intent to induce infringement] relevant to patent law issues

19  pose challenging factual determinations," the Court finds that the question of whether A10 or any

20  individual defendant possessed the requisite intent to induce infringement cannot be resolved

21  without development of the factual record. *Dynacore Holdings*, 363 F.3d at 1274.

22        Accordingly, the Motion to Dismiss claims ten through twelve for indirect and induced

23  patent infringement is DENIED.

24        e.   Eleventh claim for Copyright Infringement

25        A10 argues that Brocade has alleged insufficient facts to state a claim for copyright

26  infringement. *See* Mot. at 13-14. A claim for copyright infringement requires a plaintiff to assert

27  (1) ownership in a valid copyright and (2) copying of original elements of the copyrighted work.

28  *Feist Publs. Inc. v. Rural Telephone Serv. Co., Inc.,* 499 U.S. 340, 361 (1991). "Copying" may be

11

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court<br>For the Northern District of California

shown by proving access to the copyrighted work and substantial similarity between the works. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1162 (9th Cir. 1977).  A10 does not appear to dispute that Brocade has sufficiently alleged the first element. In the FAC, Brocade alleges that its BigIron software and ServerIron software are copyrightable, and that it has applied to register the copyrights for the software with the U.S. Copyright Office. FAC ¶ 17.  In its opposition brief, Brocade states that these copyright registrations have issued. Opp'n at 15, n.5.  Thus, Brocade has sufficiently alleged ownership in a valid copyright.

A10 asserts that Brocade has not met its burden regarding the second element.  It argues that the "only allegations of wrongdoing" are "conclusory allegations" which are insufficient under *Iqbal.* Mot. at 13.  In support of this argument, A10 cites a number of cases, all from outside the Ninth Circuit.  As Brocade notes in its opposition, most of these cases are factually dissimilar to the present case.  *See, e.g., Dodd v. Woods,* No. 8:09-C-1872-T-27AEP, 2010 WL 3747007, at *2-5 (M.D. Fla. Aug. 31, 2010) (dismissing claims based on alleged copying of ideas rather than protectable expression); *Roberts v. Keith,* 04 CV 10079, 2009 WL 3572962 (S.D. N.Y., Oct. 23, 2009) (dismissing claims failing to allege domestic infringement); *Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals,* No. 08 Civ. 6195 (PKC), 2009 WL 2850230, *3 (S.D.N.Y. Aug. 28, 2009) (dismissing claims for statutory damages and attorney's fees because plaintiff failed to allege facts supporting post-registration infringement of written materials after being granted leave to amend).  The one case in which software copying was alleged dismissed those claims with leave to amend.  *Tegg Corp. v. Beckstrom Elec. Co.,* No. 08-435, 2008 WL 2682602 at *7-*9 (W.D. Pa. July 1, 2008).  Leave was given because the complaint's allegations were confusing regarding what software components were protected or protectable, which copyrights were owned by the plaintiffs, and what activities of defendants were accused of infringing.  *Id.*

Brocade alleges that A10 "used . . . Foundry's source code . . . in making and developing the A10 products . . . " and that "the A10 AX Series products utilize software code copied from, or substantially similar to, Plaintiffs' copyrighted software code."  FAC ¶ 37, 57.  Brocade further alleges that A10 retains an unauthorized copy of the Foundry source code.  FAC ¶ 59.  Source code

12

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

is often not publicly available.  As a result, it can be difficult or impossible for a plaintiff to examine accused source code before some discovery has occurred.  *See Miller v. Facebook, Inc.,* No. C 10-00264 WHA, 2010 U.S. Dist. LEXIS 75204 at \*3-\*5 (N.D. Cal. July 23, 2010) (finding direct copyright infringement sufficiently pled based on defendant's access to the code, and allegations that the accused game mimicked the "look and feel" of the original game.)  The Court finds that Brocade has alleged facts sufficient to make its copyright claim "plausible" rather than merely "possible," and therefore has met its pleadings-phase burden under *Iqbal*.  If discovery reveals that Brocade's allegations, many of which are made on information and belief, are incorrect, A10 may move for summary judgment on the copyright infringement claim.

Accordingly, the Motion to Dismiss Brocade's eleventh claim for copyright infringement is DENIED.

### f.   Thirteenth Claim for Breach of Contract

#### i.   Failure to plead sufficient facts

As with all of the other claims it addresses in its Motion, A10 argues that Brocade has alleged insufficient facts to state a breach of contract claim.  A breach of contract claim requires allegations of (1) a contract; (2) plaintiff's performance or excuse for failure to perform; and (3) defendant's breach and resulting damage to plaintiff.  *Marolda v. Symantec Corp.,* 672 F. Supp. 2d 992, 1005-6 (N.D. Cal. 2009).  A10 does not dispute that Brocade has alleged that all of its employees signed employment contracts.  Brocade appended the contracts to the FAC.  *See* FAC ¶¶ 47-51.  Instead, A10 argues that Brocade's allegations of breach are legally insufficient.  The Court disagrees.  As outlined in the Introduction and Background section, Brocade alleges numerous specific acts by A10 and the individual defendants which, when taken as true, breach different provisions of the employment contract.

The Court is not persuaded by A10's assertion that Brocade's allegations of breach of contract are legally insufficient.  For example, A10 complains that Brocade has not sufficiently alleged that the defendants breached the provision prohibiting them from using and disclosing proprietary information, but as the Court has already found that Brocade has sufficiently alleged misappropriation of trade secrets, this argument fails.  Likewise, A10 argues that Brocade has not

13

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  sufficiently alleged a breach of the contract provision requiring assignment of inventions. This

2  provision provides that employees will "assign to the Company all . . . right, title and interest in

3  and to any and all Inventions (and all Proprietary Rights with respect thereto) . . . made or

4  conceived or reduced to practice . . . during the period of my employment with the Company."

5  FAC ¶ 49. Brocade alleges that the individual defendants used proprietary Brocade information in

6  developing products for A10, and that some of this activity occurred while defendants were still

7  employed by Foundry. Therefore, the Court finds that Brocade has sufficiently alleged this cause

8  of action as well.[4]

9        The Court also finds that Brocade has adequately alleged breach of contract provisions

10  forbidding employment or business activities for another entity while employed by Foundry.

11  Brocade clearly alleges that all of the individual defendants performed work for A10 to help

12  develop the accused AX Series product while still employed by Foundry. FAC ¶¶ 30, 37-39.

13  Therefore, this claim is sufficiently alleged.

14        Finally, the Court finds that Brocade has adequately alleged breach of the contract

15  provisions forbidding solicitation of Brocade's clients and employees. While A10 complains that

16  the complaint is insufficient because it fails to identify "which employees the individual defendants

17  solicited," in fact, the FAC asserts that Chen solicited defendants Jalan, Szeto, Han, Hwang, and

18  Cheung, as well as other employees. See FAC ¶¶ 34-44, 54, 61. Brocade's allegations therefore

19  provide sufficient detail such that A10 can respond to its claims. At this point in the litigation, this

20  is all Brocade must do.

21        Therefore, the Court DENIES A10's Motion to Dismiss Brocade's thirteenth claim for

22  breach of contract.

23             ii.   Unenforceability of anti-solicitation provision

24        A10 moves to dismiss the portion of Brocade's breach of contract claim which is based on

25  the following clause from the employment contracts: "for the period of my employment by the

---

26  [4] The Court likewise rejects A10's argument that because the assignment provision is self-
27  executing, it cannot be breached. A10 has cited no authority for this proposition, and the
    proposition lacks merit. If the defendants used inventions they conceived at Foundry for purposes
28  outside of their employment at Foundry, such action would thwart the assignment clause and at
    least potentially constitute a breach.

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    Company and for one (1) year after the date of my employment by the Company I will not . . . (ii)

2    solicit the business of any client or customer of the Company (other than on behalf of the

3    Company)."  Mot. at 20.  A10 argues that under California law, this type of non-compete provision

4    is unenforceable.  *See* Bus. & Prof. Code § 16600; *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th

5    937, 948 (Cal. 2008).  Brocade challenges A10's argument regarding *Edwards*, saying that it

6    invalidated a noncompetition clause as opposed to a non-solicitation clause, and is therefore

7    inapposite.  Opp'n at 18.  However, in *Edwards*, the court noted that "[t]he second challenged

8    clause prohibited Edwards, for a year after termination, from 'soliciting,' defined by the agreement

9    as providing professional services to any client of Andersen's Los Angeles office."  *Edwards v.*

10   *Arthur Andersen LLP*, 44 Cal. 4th 937, 948 (Cal. 2008).  Given this recent statement by the

11   California Supreme Court regarding the scope of Business and Professions Code § 16600, the

12   Court finds that the language Brocade relies upon for this portion of its breach of contract claim

13   would be unenforceable under California law, unless it falls into one of the statutory exceptions.

14   Such clauses may be enforceable if they are "necessary to protect an employer's trade secret."

15   *Asset Mktg. Sys. v. Gagnon,* 542 F.3d 748, 758 (9th Cir. 2008).   Because it is at least plausible,

16   based on all of the allegations in the FAC, that Brocade will be able to show that this exception

17   applies to this portion of its breach of contract claim, the Court finds that Brocade has stated a

18   claim for breach of this provision of the contract.  For the reasons set forth in the preceding section,

19   the Court rejects A10's argument that the factual allegations underlying this claim are too vague or

20   conclusory to state a claim.

21        Accordingly, the Motion is DENIED regarding Brocade's thirteenth claim for breach of

22   contract.

23             g.   Fourteenth and Fifteenth Claims for Breach of Fiduciary Duty and Breach of the

24                  Duty of Loyalty

25        A10 argues that because Brocade has not sufficiently alleged how the defendants worked

26   on behalf of A10 while still employed at Foundry, these claims must fail.  As stated above,

27   however, the Court finds that the FAC sufficiently alleges that the defendants used proprietary

28   Brocade information in developing products for A10, and that some of this activity occurred while

15

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   defendants were still employed by Foundry.  FAC ¶¶ 30, 37-39.  A10 asserts that the FAC does not

2   sufficiently allege that Jalan and Szeto took any actions that could constitute a breach while still

3   employed by Foundry, the FAC sufficiently alleges facts making it plausible that they did.  For

4   example, the FAC alleges that they retained copies of Brocade source code which were later used

5   in developing the AX Series products; presumably, any copies were made before Jalan and Szeto

6   left the company.  FAC ¶¶ 37, 57-59.

7        Accordingly, the Motion to Dismiss the fourteenth and fifteenth claims for breach of

8   fiduciary duty and breach of the duty of loyalty is DENIED.

9            h.   Sixteenth Claim for Interference with Prospective Economic Advantage

10        A10 argues that Brocade's claim for interference with prospective economic advantage is

11   not supported by sufficient factual allegations.  On this claim, the Court agrees with A10.  This

12   claim requires allegation of the following elements: (1) an economic relationship between the

13   plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2)

14   defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by

15   defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5)

16   economic harm to the plaintiff proximately caused by the acts of the defendant.  *Sessions Tank*

17   *Liners v. Joor Mfg.,* 17 F.3d 295, 301 (9th Cir. Cal. 1994) (citing *Blank v. Kirwan*, 39 Cal.3d 311,

18   330-31 (1985)).  "[A] plaintiff must establish an existing economic relationship or a protected

19   expectancy with a third person, not merely a hope of future transactions."  *See Swingless Golf Club*

20   *Corp. v. Taylor,* No. C 08-05574 WHA, 2009 WL 2031768 at *4 (N.D. Cal. July 7, 2009).  Here,

21   Brocade has failed to allege the existing economic relationship or protected expectancy with any

22   third party.  While the parties' briefing focused on other elements of this claim, the Court finds that

23   Brocade has not adequately alleged the first element.  The FAC states that the defendants "engaged

24   in wrongful conduct designed to interfere with or disrupt Plaintiffs' relationships with their actual

25   and prospective customers," but does not identify the identity of the customers or the basis for

26   Brocade's expectation.  FAC ¶ 194.  In this instance, the Court agrees with A10 that the pleadings

27   are too vague to determine whether Brocade has alleged more than a mere hope of future

28   transactions with potential or existing clients.

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    Accordingly, A10's Motion is granted as to Brocade's sixteenth claim for interference with

2  prospective economic advantage, and the claim is DISMISSED with leave to amend.

3          i.    Seventeenth Claim for Interference with Contractual Relations

4    As with all of the other claims, A10 asserts that Brocade has failed to meet its burden to

5  allege sufficient facts to state a claim for interference with contractual relations.  This claim

6  requires pleading the following elements: (1) a valid contract between plaintiff and a third party;

7  (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a

8  breach or disruption of the contractual relationship; (4) actual breach or disruption of the

9  contractual relationship; and (5) resulting damage.  *Guidiville Band of Pomo Indians v. NGV*

10 *Gaming, Ltd.,* 531 F.3d 767, 774 (9th Cir. 2008).  The Court finds that Brocade has adequately

11 alleged facts making this claim plausible on its face.  Specifically, Brocade has alleged that (1) it

12 had employment contracts with its employees; (2) that the defendants knew of these agreements

13 (because they entered such agreements themselves); (3 and 4) that the defendants encouraged other

14 Foundry employees and former employees to breach their employment agreements by working for

15 A10 while still employed by Foundry, and by disclosing proprietary information belonging to

16 Foundry after their employment had terminated; and (5) that Brocade suffered damages in the form

17 of lost business as a result.  *See* FAC ¶¶ 34, 38-46, 54-55, 61-62.

18    Accordingly, the Motion is DENIED regarding Brocade's seventeenth claim for

19 interference with contractual relations to the extent it relates to employees.

20    Regarding customers, Brocade argues that this claim embraces allegations that its

21 "relationships with [its] actual and prospective customers were in fact disrupted and Plaintiffs' [sic]

22 have been damaged."  However, this allegation arises under the claim for intentional interference

23 with prospective economic relationship, and is only incorporated by reference into the contractual

24 interference claim.  *See* FAC ¶ 196.  The FAC does not otherwise allege that defendants caused the

25 breach of a contract between Brocade or Foundry and its customers.  Therefore, to the extent this

26 claim is based on interference with contracts between Brocade and its customers, the FAC does not

27 allege sufficient facts to support such a claim.  *See, e.g., Swingless,* 2009 WL 2031768 at *4

28 (finding interference with contractual relations adequately pled when the plaintiff identified

17

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    contracts "between plaintiff and its customers" and defendants' induction of breach by its

2    representation to buyers "that the defendants were the exclusive owners of the patents in dispute.").

3    The Court hereby grants Brocade leave to add allegations to state such a claim.

4               j.   Eighteenth Claim for Unfair Competition

5               California's Unfair Competition Law (UCL) defines unfair competition as any unlawful,

6    unfair or fraudulent business practice.  Bus. & Prof. Code § 17200.  Thus, a practice may be

7    unlawful, unfair or fraudulent to serve as the underlying basis for a UCL claim.  *Pfizer, Inc. v. Sup.*

8    *Ct.,* 182 Cal. App. 4th 622, 629 (2010).  A10 appears to concede that an interference with contract

9    claim can serve as the underlying violation for a UCL claim.  *See* Reply at 15.  Regardless of

10   whether or not A10 concedes this, it is true that a claim for interference with contract can serve as

11   the underlying basis for a UCL claim.  *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.,*

12   479 F.3d 1099, 1107 (9th Cir. 2007) (holding that "CRST adequately alleged that Werner violated

13   the UCL because CRST adequately alleged that Werner engaged in . . . intentional interference

14   with CRST's employment contracts.").  Because the Court has found that Brocade adequately

15   stated a claim for interference with contract, it likewise finds that Brocade has adequately alleged a

16   UCL violation based on this predicate act.

17               Accordingly, A10's Motion to Dismiss is DENIED regarding the eighteenth claim for UCL

18   violations.

19       IV.     Conclusion

20               For the reasons set forth above, the Court GRANTS the Motion and dismisses with leave to

21   amend Brocade's sixteenth claim for interference with prospective economic advantage, and

22   DENIES the Motion as to all other asserted claims.  Leave to amend is also granted as to Brocade's

23   seventeenth claim for interference with contractual relations if Brocade intends to include its

24   relations with its customers in that claim.  If Brocade wishes to file an amended complaint, it shall

25   do so within **21 days of the date of this Order.**  No additional claims or parties may be added

26   without leave of Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

27

28

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**IT IS SO ORDERED.**

Dated: March 23, 2011

_____
LUCY H. KOH
United States District Judge

Case No.: 10-CV-03428-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California