UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation, and FOUNDRY NETWORKS, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br>v.<br><br>A10 NETWORKS, INC., a California corporation, LEE CHEN, an individual, RAJKUMAR JALAN, an individual, RON SZETO, an individual, LIANG HAN, an individual, STEVEN HWANG, an individual, and DAVID CHEUNG, an individual,<br><br>Defendants. | Case No.: 10-CV-03428-LHK<br><br><br><br><br>ORDER IMPOSING SANCTIONS ON DEFENDANT A10 |

Plaintiffs Brocade Communications Systems, Inc. and Foundry Networks, LLC (together, Brocade) filed a motion for contempt and sanctions as a result of A10's failure to timely produce the source code; and a motion to compel A10 to properly file portions of its Opposition to Plaintiffs' Motion for a Temporary Restraining Order, which contained confidential source code routine names, under seal. *See* ECF Nos. 138 and 157. At the August 12 hearing on these and other motions, the Court issued an order to show cause as to why A10 should not be sanctioned for (1) failing to timely produce source code in violation of the Court's Orders to do so; and (2) publicly filing Brocade's designated confidential information in violation of the Protective Order and the Civil Local Rules. Order, August 12, 2011, ECF No. 173. The show cause hearing was

1

held on August 30, 2011. For the reasons set forth below, the Court imposes sanctions on A10 for $26,680 in attorneys' fees.

**I.      A10's Violations of Court Orders**

Federal Rule of Civil Procedure 37(b) authorizes a district court to impose sanctions on a party that "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The Court may also impose sanctions pursuant to Fed. R. Civ. P. 37(b) on a party that fails to comply with a protective order. *See* Fed. R. Civ. P. 37(b)(2)(A); *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934-35 (citing support for the proposition that Rule 37(b)(2) should provide for enforcement of Rule 26(c) joint protective orders); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986) (upholding a Rule 37(b) sanction for a party's violation of the protective order); Fed. R. Civ. P. 37(b), Advisory Comm. Notes (1970) (explaining that "[t]he scope of Rule 37(b)(2) is broadened by extending it to include any order 'to provide or permit discovery,'" and that Rule 37(b)(2) "should provide comprehensively for enforcement of all these orders," including protective orders under Fed. R. Civ. P. 26(c)).

A.    <u>Violation of Orders to Produce Source Code</u>

The Court has issued two discovery orders requiring A10 to produce its source code and A10 has violated both of them. The first case management order stated that "[a]ll other discovery shall commence now, including discovery of source code relevant to the copyright and patent infringement claims." Case Management Order ("CMO"), March 24, 2011, ECF No. 72. Though the Court ordered A10 to begin production of the source code relevant to Brocade's claims on March 24, 2011, as of the April 28 case management conference ("CMC") A10 had produced **none** of its code. CMC Hr'g Tr. 72, April 28, 2011, ECF No. 86.

A10 argues that the CMO was ambiguous, and that its failure to produce its source code after the CMO was not unreasonable in light of the ambiguity. A10 argues that it interpreted the CMO as resolving a different discovery issue that was raised at the case management conference, and that it did not interpret the CMO as an order to immediately produce its source code. A10's argument, however, is contradicted by its position during the April 28, 2011 CMC. At the April

2

Case No.: 10-CV-03428-LHK
ORDER IMPOSING SANCTIONS

28, 2011 CMC, the Court expressed concern that A10 had violated its March 24 Order by failing to produce any code.

> Well, I have to say, I'm really not happy that you've basically violated my March 24th Order in not producing any code. . . . After I ordered that it be produced, I'm not happy with that.

CMC Hr'g Tr. 72:3-5; 72:13-14, April 28, 2011, ECF No. 86. A10 did not object at that time that it had misunderstood the Court's March 24 Order. Instead, A10 acknowledged the Order and stated "understood your honor, and I apologize." CMC Hr'g Tr. 72:15-16, April 28, 2011, ECF No. 86.

Finally, in support of its position, A10 argues that as of March 24, when the CMO was issued, it had not yet served its written objections to the requests for production of its source code. To the extent, however, that A10 has objected to the production of its source code, the Court overruled those objections, as explained more fully below.

Even assuming the Court's March 24 CMO was ambiguous, A10's discovery obligations with respect to its source code production were made explicitly clear to A10 at the April 28 CMC. When the issue of A10's source code production arose, the Court explained what A10 was required to produce, and put A10 on notice of the consequences of future noncompliance with the Court's order:

> So in 30 days -- and I really will sanction A10 if you don't produce **all** your source code because I've overruled the burdensome objection. You have one line of products. Your company's only been in existence since 2005. I previously, on March 24th, ordered that source code be produced. If there's a second noncompliance with a second order, the sanctions will be in order.

Transcript from Case Management Conference at 75:2-10, ECF No. 86 (emphasis added).

As of the August 12, 2011 hearing, more than 2 months after the May 31, 2011 deadline to produce **all** A10's source code, A10 had produced some of its source code, but nonetheless failed to produce source code from before 2007. Instead, A10 unilaterally determined that it would only produce "active versions" of the source code since March 8, 2007. A10 argues now that the productions that it has made are reasonable in light of the breadth of the Court's order to produce

3

Case No.: 10-CV-03428-LHK
ORDER IMPOSING SANCTIONS

1    all code. A10 makes much of the fact that it produced approximately 90 additional releases of the

2    source code, but it did so in one large batch, the day before the August 12 sanctions hearing --

3    almost two and a half months after the deadline by which it was ordered to do so.

4        The Court, however, finds A10's interpretation of the April 28 Court order to be

5    unreasonable given the discussion on the record regarding the source code production during the

6    case management conference. Prior to the Court's order, the parties and the Court discussed the

7    temporal parameters for which source code would be produced. Brocade requested code going as

8    far back as 2005, when former members of Foundry allegedly misappropriated trade secrets and

9    began working for A10. The Court specifically considered, and rejected, A10's objection that the

10   breadth of code sought was unduly burdensome and the possibility that A10 only needed to

11   produce code created after 2007 (post-release code). CMC Hr'g Tr. 46:5-51:14, April 28, 2011,

12   ECF No. 86. Indeed, the Court further reinforced A10's obligation to produce more than simply its

13   active versions when it stated: "I mean, this is a patent case. Everyone turns over the different

14   versions of code." CMC Hr'g Tr. 49:5-7, April 28, 2011, ECF No. 86. Therefore, A10's failure to

15   produce the source code from 2005-2007 violates the Court's April 28 Order.

16       Moreover, A10's claim that it has produced **some** of its code is not sufficient to establish

17   that it has substantially complied with the Court's order in light of the purpose for which Brocade

18   requests the source code. Because Brocade is alleging trade secret misappropriation, it is only

19   logical that it would require code versions from 2005 – dating back to the alleged act of trade secret

20   theft – in order to evaluate its claims. This understanding was, as stated above, reinforced

21   explicitly during the April 28 case management conference. CMC Hr'g Tr. 48:16-25; 50:9-14;

22   50:25-51:3, April 28, 2011, ECF No. 86.

23       Instead of complying with the Court's order, A10 decided to pick and choose which

24   versions of its code to produce, and to make an arbitrary cut-off as to which of its code it deemed

25   relevant for Brocade's case. A10 did so at its peril because it was specifically warned not to do so

26   at the April 28 hearing. CMC Hr'g Tr. 51:5-10, April 28, 2011, ECF No. 86 ("I've never heard that

27   the defendant gets to pick and choose what files of the source code they want to produce because

28   based on their own opinion they feel like these particular files are the only ones that are relevant to

4
Case No.: 10-CV-03428-LHK
ORDER IMPOSING SANCTIONS

1  the plaintiff's patent case or copyright case."). A10's failure to produce all of its code, particularly

2  its code from 2005-2007, demonstrates a failure to comply with the Court's April 28, 2011 court

3  order without substantial justification.

### B. Violation of the Protective Order

In addition to the discovery orders to produce source code discussed above, A10 has also violated the Stipulated Protective Order Regarding Confidential Information, which was entered into by the Parties on May 6, 2011, and signed by the Court on May 27, 2011. *See* ECF No. 94. Brocade claims that several documents that A10 filed in its Opposition to Plaintiffs' Motion for a Temporary Restraining Order, "contain[ed] the names of software code routines used in Plaintiffs' proprietary software code base, which were designated as 'Highly Confidential – Source Code' under the Protective Order by Plaintiffs in discovery." Pl.'s Mot. to Order A10 to File Pl.'s Confidential Information Under Seal at 1, ECF No. 157. When Brocade contacted A10 to remove this confidential information from the public record, A10 agreed to remove and file under seal one of the declarations, but refused to file under seal any portion of its Opposition, or the remaining declaration, explaining that it did not believe that the information was properly sealable. Gambhir Decl., Ex. E, ECF No. 158.

There are two operative parts of the protective order that A10 violated when it published the routine source code names and then failed to remove these filings from the public record. The first part defines "Highly Confidential – Source Code" material as "extremely sensitive Confidential Information or Items in the form of software source code, firmware, HDL (hardware descriptive language) code, or other computer programs or related material that (i) is written in any language at any level of abstraction, *e.g.,* a high-level or assembly-type language that is generally readable by humans but that is not directly executable by a computer when used for a normal intended purpose and (ii) the Designating Party believes in good faith constitutes extremely sensitive 'Highly Confidential' material and for which disclosure to another Party or Non-Party would create a substantial risk that could not be avoided by a less restrictive means." *See* Stipulated Protective Order Re Confidential Information, As Modified, May 27, 2011 at ¶ 2.10, ECF No. 94. The Court finds that the routine names that A10 published in its Opposition papers

were properly designated highly confidential under the parties' Protective Order because the names contained highly sensitive source code information.

The second violation of the parties' Protective Order occurred when A10 refused to immediately correct its publication of the source code routine names after A10 was contacted by Brocade's counsel. A10, in so doing, violated sections 6.1 through 6.3 of the Protective Order which lays out the proper procedure for challenging the designating party's confidentiality designations. *See* Stipulated Protective Order Re Confidential Information, As Modified, May 27, 2011, ECF No. 94. If A10 did not agree with Brocade's designation, it was obligated to follow the procedures outlined in the Protective Order to challenge the designation while maintaining the confidentiality of the designated information.

In addition, Civil Local Rule 79-5 sets forth the proper procedures for sealing information. Under 79-5(d), the rule states "If a party wishes to file a document that has been designated confidential by another party pursuant to a P.O., or if a party wishes to refer in a memorandum or other filing to information so designated by another party, the submitting party **must file and serve an Administrative Motion for a sealing order and lodge the document, memorandum or other filing in accordance with this rule.**" The designating party then has 7 days to submit a declaration establishing that the designated information is sealable. It is not up to the party filing a document containing information designated as confidential by the other party to make a subjective decision about whether the designation is accurate. That decision is for the court to make.

A10 now argues that it had a good faith belief that the routine names were undeserving of Brocade's confidentiality designation given that the routine names at issue were A10's routine names. A10's argument, however, is unconvincing. Brocade has alleged that these source code routine names evidence A10's copyright infringement, and A10 has provided no explanation for why Brocade's routine names appear in A10's code. Therefore, A10 cannot now claim that these source code routine names are within its discretion to designate as it pleases.

Brocade had an interest in ensuring that its own sensitive information was not disclosed to the public, and A10 should have respected Brocade's designation, even if it did not agree. Moreover, A10 fails to acknowledge or explain its violation of both paragraph 6 of the Protective

Order and Civil Local Rule 79-5. A10 has failed to show that its decision to publish Brocade's confidential information, and its decision to disregard the procedures in place for parties to resolve disputes over confidentiality designations, was substantially justified. Therefore, this Court finds that sanctions are appropriate.

## II. SANCTIONS AWARD

Federal Rule of Civil Procedure 37(b) requires the court to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* at 37(b)(2)(C). The amount of monetary sanctions based on attorneys' fees must be "reasonable." *Brown v. Baden (In re Yagman)*, 796 F.2d 1165, 1184-85 (9th Cir. 1986) (reviewing a Rule 11 sanction but announcing a standard applicable to other sanctions as well), *amended on other grounds by* 803 F.2d 1085 (9th Cir. 1986).

The Court ordered Brocade to submit an accounting of the attorneys' fees that it incurred as a result of having to meet and confer and brief its motion for contempt and sanctions based on A10's failure to produce source code (ECF No. 138) and its Motion to Compel A10 to properly file Brocade's designated confidential information under seal (ECF No. 157). A10 argues that the billing records that Orrick submitted are not sufficiently detailed to establish that the work performed was related to meeting and conferring or preparing the two motions referenced above. Moreover, A10 argues, the amount that Brocade seeks – $136,256.15 – is not reasonable. The Court agrees.

As to the work performed related to Brocade's motion for sanctions based on A10's failure to produce source code, many of the billing records that Orrick has produced do not contain sufficient detail to establish that the work performed – the work for which Brocade seeks reimbursement – was actually performed because of A10's failure to produce its source code after the May 31, 2011 production deadline imposed by the Court. As a result, the Court will limit the attorneys' fee award in the following ways:

7
Case No.: 10-CV-03428-LHK
ORDER IMPOSING SANCTIONS

First, the Court will not credit fees generated before May 31, 2011. Although the Court finds that A10 violated the Court's March 24 CMO by failing to produce any source code by the April 28 CMC, it was not until May 31, 2011 that A10 had a firm deadline regarding when all of its code needed to be produced. Therefore, the Court will not credit attorneys fees accumulated before A10 had a firm deadline regarding the code production. Second, the Court will not credit fees generated before June 20, 2011, the point at which A10's source code was available for inspection at Iron Mountain. *See* Mosko Decl. Ex. F (indicating issues relating to review of source code was a result of issues with escrow agent Iron Mountain).

Third, the Court will only credit entries with sufficient detail that it can objectively determine whether the work performed was directly related to meeting and conferring about and briefing Brocade's Motion to Compel A10's source code. Accordingly, the Court did not credit time billed for purely internal strategy sessions and communications; time billed to inspect source code; vague billing terms such as "review of documents;" and hours billed by non-attorneys.

- The Court finds that 3.2 attorney hours were reasonably spent on identifying the source code produced and the deficiencies with that production on June 21, 2011.

- Through its billing records Orrick has indicated that it spent 30.9 attorney hours meeting and conferring with opposing counsel or drafting correspondence to opposing counsel on issues related to discovery or source code. Having reviewed the often vague billing records, the Court finds that 30% of the time billed was related specifically to meeting and conferring with A10 on deficient source code productions that Brocade sought. The remaining 70% of the time appears to address other discovery issues or other tasks not directly related to meeting and conferring on the source code issue. Therefore, the Court will award 9.3 attorney hours.

- Regarding researching, drafting, and revising the sanctions motion, the Court will only credit hours billed after July 5 – the point at which it appears from billing records that attempts to reach a resolution by meeting and conferring on the issue failed. As

8

Case No.: 10-CV-03428-LHK
ORDER IMPOSING SANCTIONS

such, the Court credits 20.9 attorneys hours spent researching, drafting, and revising the motion for discovery sanctions.

- Through its billing records Orrick has indicated that 15.5 attorney hours were dedicated to preparing for oral argument. The Court credits only the time billed by Ms. Mingrone, the attorney primarily responsible for arguing the motion, or 5 attorney hours, to be reasonably compensable.

In total, the Court determines that 38.4 attorney hours were reasonably spent on meeting and conferring about and drafting the brief related to A10's source code. A10 has proposed a blended billing rate of $630 – the average billing rate of the Orrick attorney time keepers on this matter. Def.'s Response to Order to Show Cause at 16, August 24, 2011. The Court finds this blended billing rate to be reasonable. Therefore, the total amount of fees, given the average attorney billing rate of $630, is $24,192.

As to attorneys' fees related to Brocade's Motion to Compel A10 to file its Opposition under seal, the Court disagrees with A10 that the amount sought is unreasonable. According to Brocade's billing records, there were three attorneys who billed 3.95 hours in corresponding with opposing counsel and preparing the papers for this issue. The Court has calculated the attorneys' fees to be $2,488 and the Court finds this amount reasonable in light of the circumstances. In total, the Court awards Brocade $26,680 in attorneys' fees for its work related to meeting and conferring about and briefing docket numbers 138 and 157.

Finally, at the August 12 hearing, the Court ordered A10 to publicly file all of its confidential source code routine names given the company's position that Brocade's source code routine names are not confidential information. A10 argues that being required to publicize its routine names would be unduly expensive and would require them to publicize information that could be considered confidential under the Protective Order. In light of the sanctions already imposed, the Court declines to impose additional sanctions at this time. A10 is on notice, however, that it must respect Brocade's confidentiality designations and employ the procedures for

9
Case No.: 10-CV-03428-LHK
ORDER IMPOSING SANCTIONS

challenging such designations in the future.  This Court will not tolerate the flagrant disregard of a party's confidential information.

**IT IS SO ORDERED.**

Dated: September 6, 2011



LUCY H. KOH
United States District Judge

10

Case No.: 10-CV-03428-LHK
ORDER IMPOSING SANCTIONS