1  FABIO E. MARINO (SBN 183825)
     fmarino@orrick.com
2  DENISE M. MINGRONE (SBN 135224)
     dmingrone@orrick.com
3  SIDDHARTHA VENKATESAN (SBN 245008)
     svenkatesan@orrick.com
4  CHRISTINA VON DER AHE (SBN 255467)
     cvonderahe@orrick.com
5  NITIN GAMBHIR (SB 259906)
     ngambhir@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
7  Menlo Park, CA 94025
   Telephone:     650-614-7400
8  Facsimile:     650-614-7401

9  Attorneys for Plaintiffs and Counterclaim Defendants
   BROCADE COMMUNICATIONS SYSTEMS, INC. AND
10 FOUNDRY NETWORKS, LLC

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14

15 | BROCADE COMMUNICATIONS | Case No. 10-cv-03428 LHK
   | SYSTEMS, INC., a Delaware corporation, and |
16 | FOUNDRY NETWORKS, LLC, a Delaware |
   | limited liability company, | **BROCADE COMMUNICATIONS**
17 | | **SYSTEMS, INC. AND FOUNDRY**
   | | **NETWORKS, LLC'S NOTICE OF**
18 | Plaintiffs/Counterclaim | **MOTION AND MOTION FOR**
   | Defendants | **SUMMARY JUDGMENT OF**
19 | | **NONINFRINGEMENT OF U.S.**
   | v. | **PATENT NO. 5,875,185**
20 | A10 NETWORKS, INC., a California |
   | corporation; LEE CHEN, an individual; | Date:     December 19, 2011
21 | RAJKUMAR JALAN; an individual; RON | Time:     12:00 pm
   | SZETO, an individual; DAVID CHEUNG, an | Dept:     Courtroom 8, 4th Floor
22 | individual; LIANG HAN, an individual; and | Judge:    Hon. Lucy H. Koh
   | STEVEN HWANG, an individual, |
23 | |
   | Defendants/Counterclaimants |
24

25

26

27

28

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS....................................................................................2

      A.   A10's Acquisition And Assertion Of The '185 Patent ..........................2

      B.   General Technology Background............................................................3
           1.   Two Fundamentally Divergent Approaches To Network
                Communications: Connection-Oriented vs. Connectionless............3
           2.   The Connection-Oriented Technology Of The '185 Patent .....................5
                a.   The "Path Elongation" Issue In Connection-Oriented ATM
                     Networks That The '185 Patent Purports To Address ...................5
                b.   The '185 Patent's Alleged Connection-Oriented Solution
                     Path Elongation.......................................................................6
           3.   The Connectionless Communications Technology Of The Accused
                Products ...............................................................................9
           4.   The Parties' Claim Construction Disputes .................................9

III.  ARGUMENT ........................................................................................11

      A.   The Legal Standard For Granting A Motion For Summary Judgment. ...............11

      B.   A10 Has Not Identified Any Evidence That The Accused FastIron Products
           Infringe. ...............................................................................12

      C.   Brocade Does Not Literally Infringe Any Claim Under Either Party's
           Claim Constructions. ..............................................................12
           1.   Brocade Does Not Infringe Claim 1  .............................................13
           2.   Brocade Does Not Infringe Claim 2  .............................................16
           3.   Brocade Does Not Infringe Claim 3  .............................................16
           4.   Brocade Does Not Infringe Claim 4  .............................................17
           5.   Brocade Does Not Infringe Claim 5  .............................................17
           6.   Brocade Does Not Infringe Claim 7  .............................................18
           7.   Brocade Does Not Infringe Claim 8  .............................................19

      D.   A10 Has Alleged "Divided Infringement" Claims That Fail As A Matter Of
           Law...............................................................................19

      E.   A10 Cannot Show Infringement Under The Doctrine Of Equivalents.................20

IV.   CONCLUSION ........................................................................................21

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 254, 106 S. Ct. 2505, 2513 (1986) ..................................................... 11

*BMC Res., Inc. v. Paymentech, L.P.*
498 F.3d 1380 (Fed. Cir. 2007) ...................................................................... 19, 20

*Celotex Corp. v. Catrett,*
477 U.S. 317, 322-34, 324, 106 S. Ct 2548 (1986) ................................................. 11

*Combined Sys., Inc. v. Defense Tech. Corp.,*
350 F.3d 1211 (Fed. Cir. 2003) .......................................................... 14, 17, 18

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
469 F.3d 1005 (Fed. Cir. 2006) ...................................................................... 21

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,*
493 F.3d 1368 (Fed. Cir. 2007) ...................................................................... 21

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co., Inc.,*
285 F.3d 1046 (Fed. Cir. 2002) ...................................................................... 21

*Lear Siegler, Inc. v. Sealy Mattress Co.,*
873 F.2d 1422 (Fed.Cir.1989) ...................................................................... 21

*Markman v. Westview Instruments, Inc.,*
52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996) ................... 11

*Muniauction, Inc. v. Thomson Corp.*
532 F.3d 1318 (Fed. Cir. 2008) ...................................................................... 19, 20

*Tex. Instruments v. Cypress Semiconductor Corp.,*
90 F.3d 1558 (Fed.Cir.1996) ...................................................................... 21

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.,*
418 F.3d 1326, 1341 (Fed. Cir. 2005) ......................................................... 11, 12

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to the Court's May 9, 2011 Case Management Order, on December 19, 2011 at 12 p.m., or as soon as counsel may be heard, in the Courtroom of the Honorable Lucy H. Koh, located at 280 South 1st Street, San Jose, California 95113, Brocade Communications Systems, Inc. and Foundry Networks, LLC. (together "Brocade") will, and hereby do, move for summary judgment of noninfringement of Defendant A10 Networks, Inc. ("A10") United States Patent 5,875,185 ("the '185 Patent").

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration(s) filed concurrently herewith, all matters cited to herein and all other matters of which the Court may take judicial notice.

Dated: October 11, 2011         ORRICK, HERRINGTON & SUTCLIFFE LLP

                           */s/ Siddhartha M. Venkatesan*
                           SIDDHARTHA M. VENKATESAN
                           Attorneys for Plaintiffs
                  BROCADE COMMUNICATIONS SYSTEMS, INC.
                       AND FOUNDRY NETWORKS, LLC

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**      **INTRODUCTION**

Without any IP of its own to assert, A10 went out and bought a 16-year old patent covering outdated technology (that Brocade never practiced) to assert as a counterclaim shortly before its Answer was due. However, because the '185 patent deals only with "***connection-oriented***" networks, A10 will not be able to prove that its '185 Patent covers the "***connectionless***" networking technology supported by Brocade's Accused Products. Connection-oriented and connectionless network communications represent two fundamentally divergent approaches to data communications: connection-oriented networks require a pre-existing "virtual connection" between two network devices to be established before data can be sent over that connection; by

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

contrast, connectionless networks send data through the network in individual units (typically referred to as "packets"), and not over a pre-established "virtualconnection." These two non-overlapping approaches represent two distinct philosophies for network communications that existed long before the '185 Patent. It is for this reason that the '185 Patent, which focuses on virtual connection management, addresses a problem that simply does not exist in the connectionless world of the Accused Products.

The connection-oriented focus of the '185 Patent is reflected throughout its specification as well as its claims, which use well-known connection-oriented terminology that applies to "Asynchronous Transfer Mode," (ATM) a specific type of connection-oriented technology. Nearly *every* claim limitation (and thus every asserted claim) in the '185 Patent contains one or more ATM claim terms. Presumably aware of these fundamental flaws of the '185 Patent, A10 now seeks to re-write all of these limitations in a transparent effort to cover Brocade's Accused Products. However, even A10's litigation driven claim constructions are not enough to contort the claims of the '185 Patent so far as to cover accused products that practice fundamentally different technologies and thus Brocade would be entitled to Summary Judgment even if A10's constructions were adopted.

In a case as complex as this one, which, as the Court has repeatedly indicated needs to be narrowed before trial, A10's assertion of the '185 Patent should be seen for what it is, an ill-conceived and hastily-executed strategy for A10 to create a distraction from the clear evidence of intellectual property theft that Brocade has already shown, and will prove at trial. There is simply no better candidate for simplifying this case than granting summary judgment of non-infringement of the '185 Patent.

## II.   STATEMENT OF FACTS

### A.   A10's Acquisition And Assertion Of The '185 Patent

A10 sells IP-based application delivery controllers that compete directly with Brocade's ServerIron application delivery controllers. Third Am. Complaint D.I. 85 at, *e.g.*, ¶¶55-60. After being sued for patent infringement, trade secrets misappropriation and copyright infringement, A10 acquired the '185 Patent from the Industrial Technology Research Institute of Taiwan on

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

March 18, 2011.  *See* Venkatesan Ex. A[1], Assignment Record.  Unlike Brocade and A10, ITRI does not sell IP-based network appliances, but is a national research institution focused on a variety of areas of technical research including, as evidenced by the '185 Patent, ATM networking.  *See* http://www.itri.org.tw/eng/about/article.asp?RootNodeId=010&NodeId=0101. Almost immediately after purchasing the '185 patent from ITRI, and well into this case, A10 asserted the '185 Patent against Brocade, on May 16, 2011.  D.I. 92.

**B.  General Technology Background.**

**1.  Two Fundamentally Divergent Approaches To Network Communications: Connection-Oriented vs. Connectionless**

The communication technology at issue relates to network switching and routing.  These communications, often referred to as Layer 2/3 communications, provide for the addressing, packaging and transmission of data from a source device to a destination device across the internet.[2]  Acampora Decl., ¶¶ 26-27.  There are two fundamental, and distinct, approaches to Layer 2/3 internet transmissions: the connection-oriented approach and the "connectionless" approach.  Acampora Decl., ¶ 30.

Connection-oriented communications may be analogized to a conventional telephone call: prior to establishing the call, the caller needs to dial the phone number of the recipient, creating a voice connection between them.  Only then may the caller and recipient talk (transmit data). Acampora Decl., ¶ 31.  Similarly, a connection-oriented network communication requires a logical "connection" between two communicating devices to be set up, using a signaling protocol for connection management, before any data communications between the devices take place. This connection defines the "path" that the transmitted data will take during network communications, meaning it defines which intermediate network devices the communicated data will pass through.  Acampora Decl., ¶ 32.  By establishing a connection prior to data

---

[1] "Venkatesan Ex. __" refers to exhibits attached to the supporting Venkatesan Declaration.  "Acampora __" refers to exhibits attached to the supporting Acampora Declaration.

[2] Layer 2/3 communications are distinct from "higher" Layer communications (Layer 4-7), that are focused on the specifics of the internet application that is transmitting the data and are the focus of many of Brocade's asserted patents in this case, and "lower" Layer communications (Layer 1), that are focused on managing transmission across physical media, such as copper wire, that networks communicate across.  Acampora Decl., ¶¶ 25, 28-29.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

transmission, connection-oriented networks can ensure more reliable communications and ensure that data packets are received in order. After a transmission is completed, the connection between the source and destination may be disconnected (like hanging up after a telephone call).

Connectionless communications, in contrast, may be likened to a postal system, where each transmitted packet is its own letter bearing the address of the intended destination on its envelope. In a connectionless system, each packet has its own "destination address" that can be read by other devices on the network. Therefore, once the packet is transmitted from its origin, each network device that receives the packet "reads" the destination address and independently determines where to send the packet next. Acampora Decl., ¶ 33. This is akin to intermediate postal facilities receiving a mailed letter and placing it in the appropriate mail truck to travel to another postal facility along the way to the destination. Acampora Decl., ¶ 34. However, since each packet is individually forwarded through the network, there is no predefined path for the packet to follow. This means that connectionless data packets that are part of the same transmission may take different routes through the network, and may arrive at their destination out of order. Acampora Decl., ¶ 33.

ATM is a common type of connection-oriented network technology. ATM networks employ pre-established "virtual circuits" prior to data transmissions. The virtual circuit is constructed from a series of "virtual channels" ("VCs") or logical connections between network devices, and "virtual paths," ("VPs") which bundle together virtual channels. Therefore the virtual path identifies the "pipe" between two network devices, and the virtual channel identifies the connection within that pipe for a particular virtual circuit. Acampora Decl., ¶ 36. Once a virtual circuit is established between two communicating devices, each network device along the path of the virtual circuit will assign specific interfaces (i.e. ports) to the virtual circuit using the values identifying the VC and VP for that virtual circuit. Acampora Decl., ¶ 37. Once the virtual circuit is established, fixed-length packets called "cells" are transmitted through the virtual circuit.

ATM networks were primarily used by telephone companies in the 1990's. However, this

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

technology was overtaken by IP networking[3] at the end of the 1990's. IP networks, which are the predominant networking technology today, are a primarily connectionless Layer 2/3 communication technology. Acampora Decl., ¶¶ 39-40.

### 2. The Connection-Oriented Technology Of The '185 Patent

#### a. The "Path Elongation" Issue In Connection-Oriented ATM Networks That The '185 Patent Purports To Address

The '185 Patent was filed on October 10, 1995, during the time that ATM networks were still often used. The '185 Patent clearly deals with ATM networking, as it references ATM literature throughout and even provides an ATM "glossary" of terms at the end of the specification. Acampora Ex. E, '185 Patent at 10:1-17. Specifically, the '185 Patent purports to address the issue of "path elongation" in ATM networks supporting mobile devices. As described above, a virtual circuit --or "virtual channel connection" (VCC) to use the '185 Patent's terminology -- is established between two mobile terminals (such as a wireless phone or laptop, and called an "MT" in the '185 Patent). Path elongation occurred when an MT moved from one wireless coverage area, supported by a wireless "base station" (BS), to another BS. Since the MT would be communicating with a new BS, the VCC was altered to send data to the new BS instead of the original BS. '185 Patent at 1:61-2:57. The '185 patent refers to this alteration as an "elongation" of the existing VCC to the new BS, through a new virtual channel connection from the original BS to a new BS. Subsequent VCC communications passed through the original BS to the new BS, which would be a longer route than necessary.

As illustrated in Figure 2 of the '185 Patent, path elongation could become a particularly acute problem where the MT moved across multiple base stations during a single communication. In the figure, the elongated path unnecessarily passes through three BS's (identified as 60g, 60h and 60i) to reach the current MT location at BS 60j:

---

[3] IP networking was well-known before the filing of the '185 Patent and was viewed as a connectionless contrast to the connection-oriented ATM networking in the mid-1990's. Acampora Decl., ¶ 41.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHS WEST:261369209.4



Base stations 60g, 60h and 60i remain in VCC even though MT "g" has moved to base station 60j

Solid arrow shows path of VCC between base station 60k and base stations for mobile terminal "g"

Path of mobile terminal "g" across multiple base stations

### b. The '185 Patent's Alleged Connection-Oriented Solution Path Elongation

The '185 Patent discloses a technique specifically addressed at minimizing path elongation. The '185 Patent discloses two scenarios – an "intraswitch mobility" scenario where a mobile terminal moves from a first base station to a second base station that is connected to the same switch; and an "interswitch mobility" scenario where the mobile terminal moves from a base station associated with a first switch to a new base station associated with a second switch (Figure 2 above shows the prior art's approach to the interswitch case). Acampora Decl., ¶ 48.

In the intraswitch mobility scenario, the VCC segment from the switch to the old base station is deleted and replaced with a VCC segment to the new base station after the MT moves to the new base station. Thus, unlike the prior art, the resulting VCC does not pass through the original base station after a mobile terminal moves, but rather passes directly from the switch to the new base station. Acampora Decl., ¶ 49.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4



FIG. 5A

Original VCC between MT a and MT c (thick dashed line) is altered to exclude BS 60a. The new VCC is the thin dashed line

MT "c" moves from BS 60a to BS 60b

Intraswitch mobility is accomplished by four messages that work together to modify the VP and VC associations at the original base station so that the VCC will go to the new base station instead. These messages (the "location message," "connection message," "routing message" and "complete message") are expressly defined in the specification, and they explicitly require an identification and alteration of the "VCC values" (i.e., the VC and VP values for the VCC) at the base station. Acampora Decl., ¶¶ 52-53.

In the interswitch mobility scenario, a mobile terminal moves from a base station connected to one switch to a base station that is connected to another switch. In this scenario, path elongation is not completely eliminated. Rather, the VCC is elongated so that it passes through the first switch to the second switch and down to the new base station. '185 Patent at 3:29-35. However, the VCC does not pass through the original base station, as in the prior art example, but only passes through the original switch, thereby reducing the amount of path elongation. Acampora Decl., ¶ 50.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4



**FIG. 7A**

:PHYSICAL LINK
:VP
:VP ALLOWED THE GROUPING OF SEVERAL VC's

VCC between MT a and MT c elongated to pass through switch 54 en route to switch 58 and BS 60c

MT c moves from BS 60a (connected to switch 54) to BS 60c (connected to switch 58)

Original VCC between MT a and MT c (thick dashed line) and new VCC (thin dashed line)

The interswitch scenario uses four messages as well. However, instead of a "complete" message, the '185 Patent discloses and claims a "couple message," that informs the new switch that "the elongated path" from the old switch has been "set up." '185 Patent at 7:10-15 & Claim 3; Acampora Decl., ¶ 54.

Claims 1-2 of the '185 Patent claim the intraswitch scenario, claiming the particular messages (including the requirements that they identify "VCC values" for the base station) involved in intraswitch mobility, as well as subsequent VCC alteration to eliminate path elongation. Claims 3-6 claim the interswitch scenario, again claiming the messaging (which again identify "VCC values"), and resulting partial elongation of the VCC. Claims 7-8 claim the VCC alteration under either the interswitch and intraswitch scenarios.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHS WEST:261369209.4

BROCADE'S NOTICE OF MOTION AND MSJ OF NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

### 3. The Connectionless Communications Technology Of The Accused Products

The Accused Products are networking products that communicate using connectionless Layer 2/3 IP networking technology, not the connection-oriented ATM technology of the '185 Patent. A10 has accused three categories of products:

- FastIron SX, FCX and ES products, which are "wired" connectionless IP networking devices that do not provide for wireless communications;

- Wireless Controllers and Access Point Devices, which support wireless local area network ("WLAN") communications by supporting the IEEE 802.11 wireless communication standard. Acampora Decl., ¶ 58. The Brocade Wireless Controllers can be used to control many Access Point Devices. Acampora Decl., ¶ 60. IEEE 802.11 standardizes wireless local area network communication and defines the format of data "frames," which are used for wireless data communications. IEEE 802.11 data communications are connectionless communications. Acampora Decl., ¶¶ 59, 61.

- Professional services and configuration software.

### 4. The Parties' Claim Construction Disputes

The Parties dispute the construction of five terms in the '185 Patent summarized below. As Brocade will demonstrate in response to A10's *Markman* briefing, the Brocade constructions are the correct ones and should be adopted by the Court.

Consistent with the claim language and intrinsic record of the '185 Patent, the Brocade constructions clarify the connection-oriented nature of the '185 Patent. For example, the Brocade construction of "virtual channel connection," is a "virtual connection between two end stations," meaning the logical virtual connection that must be established between two devices in a connection oriented network. Similarly, Brocade's construction of "switched virtual connection" is consistent with the specification, as well as the well-known meaning of the term, which is a particular type of virtual connection that can be created "dynamically," or on demand. Brocade's constructions for the remaining "message" terms are also pulled directly from the specification, and make clear that these messages are intended for identification and modification of existing

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

virtual connections in a connection-oriented network to remediate the path elongation issue.

In contrast, A10 proposed to replace the "virtual channel connection" language present throughout the claims with a term "logical path," that appears nowhere in the specification. Even setting aside the legal defects in A10's construction, a connectionless network does not maintain a "logical path through which a mobile terminal communicates." Acampora Decl., ¶ 73. Packets transmitted in connectionless environment do not follow a "logical path" between the transmitting and the receiving devices. Rather, each packet is routed by each receiving network device based on the intended destination of the packet. Acampora Decl., ¶ 33. Each set of routing decisions for each packet is made independently of other packets, and are not part of a "logical path" for a particular device. Acampora Decl., ¶ 33.

| Terms & Claims | Brocade's Proposed Construction | A10's Proposed Construction |
|---|---|---|
| "virtual channel connection" or "virtual channel connection (VCC)" <br><br> [Claims: All claims] | "a virtual connection between two end stations. | "a logical path through which a mobile terminal communicates" |
| "switched virtual connection" or "switched virtual connection (SVC)" <br><br> [Claims: 4, 7, and 8] | "a connection between two base stations that is dynamically established by signaling protocol" | "a dynamically-established logical path" |
| "a couple message containing the virtual channel connections for the first mobile terminal" <br><br> [Claims: 3, 4, 5, and 6] | "a control message sent by the first switch through different elongated paths to the second switch that contains the virtual channel connections for a mobile terminal pair" | A10 believes that the meaning of this term is clear and unambiguous to a person of ordinary skill in the art. To the extent a construction is needed, the plain and ordinary meanings of this term is "control information identifying the logical paths through which the first mobile terminal communicated." |
| "a complete message containing the altered virtual channel connections for the first mobile terminal" | "a control message sent via a predefined handoff virtual channel containing the virtual channel connections associated with the first mobile terminal" | A10 believes that the meaning of this term is clear and unambiguous to a person of ordinary skill in the art. To the extent a construction is needed, the plain and ordinary meanings of this term is "control |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

| Terms & Claims | Brocade's Proposed Construction | A10's Proposed Construction |
|---|---|---|
| [Claims: 1 and 2] | | information identifying the updated logical paths through which the first mobile terminal communicates." |
| "a connection message containing virtual channel connections for the first mobile terminal"<br><br>[Claims: 1, 2, 3, 4, 5, and 6] | "a control message containing VCC values for a mobile terminal pair" | A10 believes that the meaning of this term is clear and unambiguous to a person of ordinary skill in the art. To the extent a construction is needed, the plain and ordinary meanings of this term is "control information identifying the logical paths through which the first mobile terminal communicated." |

## III.  ARGUMENT

### A.  The Legal Standard For Granting A Motion For Summary Judgment.

Summary judgment is appropriate where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c).  Once Brocade demonstrates there is no genuine issue of material fact as to non-infringement, the burden shifts to A10 to "make a showing sufficient to establish the existence of an element essential to [A10's] case, and on which [A10] will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-34, 324, 106 S. Ct. 2548 (1986). There is no genuine issue of material fact if "the evidence . . . is of insufficient caliber or quantity to allow a rational finder of fact" to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513 (1986).

For the Court to find noninfringement, it must:  (1) determine the meaning and scope of the asserted patent claims, and (2) compare the construed claims to the device accused of infringement.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996).   Brocade is entitled to summary judgment if it can show only that it is "more likely than not" that its Accused Products do not possess the asserted claim elements.  *Anderson*, 477 U.S. at 252; *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 (Fed. Cir. 2005).   Once Brocade has made such a *prima facie* showing, A10 must introduce more than a scintilla of evidence to create a material issue of disputed fact; as

ORRICK, HERRINGTON &<br>SUTCLIFFE LLP<br>ATTORNEYS AT LAW<br>SILICON VALLEY

OHS WEST:261369209.4

it cannot, Brocade is entitled to summary judgment.  *Warner-Lambert Co.*, 418 F.3d at 1341.

**B.    A10 Has Not Identified Any Evidence That The Accused FastIron Products Infringe.**

Regardless of claim construction, A10 has identified literally no evidence that the FastIron products infringe the claims of the '185 Patent.  All of the evidence cited by A10 in its infringement contentions deals exclusively with the IEEE 802.11 standard supported Accused Mobility Controllers and Accused Access Point Devices.[4]  Acampora Decl., ¶¶ 64-65.  The only document that A10 relies upon that even mentions the accused FastIron products is a marketing brief cited with respect to the preamble of some claims.  This marketing material does not describe any technical details of any FastIron product and is not cited in any of A10's evidence for any actual claim limitation in the '185 Patent.[5]

Therefore, given that FastIron literature is available on the Brocade website, Brocade has produced nearly 6 million pages of documents as well as nearly every version of its source code, A10  has had ample opportunity to perform an adequate investigation and summary judgment on A10's claims against FastIron is now appropriate.

**C.    Brocade Does Not Literally Infringe Any Claim Under Either Party's Claim Constructions.**

If the Court adopts Brocade's construction of "virtual channel connection" / "VCC," (and related language with respect to the construed "message" terms) there is no dispute that A10 cannot prove infringement, as it has shown no evidence that the Accused Products practice such outdated technology.  Adopting this claim language properly limits the '185 Patent to its appropriate scope – a connection-oriented, ATM-like network that is distinct from the connectionless IP network and 802.11 communications supported by the Accused Products.  Simply put, the claims of the '185 Patent are directed to a problem that does not exist in connectionless communications: "path elongation," which presupposes a pre-existing virtual "path."  However, even under A10's "logical path" construction, Brocade does not infringe.

---

[4] In addition, the bulk of A10's assertions regarding IEEE 802.11 operation are based on the standards document itself and Cisco literature.  Neither piece of evidence shows the actual implementation of 802.11 within the Accused Products.

[5] The marketing brief is only cited with respect to the preamble of the claims.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

OHS WEST:261369209.4

Specifically:[6]

1. **Brocade Does Not Infringe Claim 1**

- **"a. the first mobile terminal issuing to the first base station a location message containing the location of the second base station;"[7]**

A10 has pointed to the "probing" performed by a mobile terminal when it is scanning for the best wireless signal and certain 802.11 "association" messages that a mobile terminal will send to the base station (allegedly, the Accused Access Point) it is communicating with. Acampora Decl., ¶43. Probe messages that are sent to the first access point do not contain the second base station's location. Acampora Decl., 25-26. Similarly, an IEEE 802.11 "association" request does not contain the location of any base station and an IEEE 802.11 "reassociation" request would only be sent to the *second* base station and would not contain the location of the second base station. Acampora Decl., 28. None of these communications satisfy this limitation because none of them both a) are sent to the first base station after the mobile terminal moves to the second access point and b) contain the location of the second access point, as expressly required by the claim language. Acampora Decl., ¶55.

In addition, A10 has not alleged that Brocade uses, makes, sells or offers for sale the claimed "mobile terminal" in this claim limitation. Rather, A10 has *only* directed its infringement allegations to the Accused Access Point products, the alleged "base station" of this claim limitation. Therefore, A10 can only allege infringement based on *someone else* infringing the "mobile terminal" limitation. This defect violates the Federal Circuit's proscription against alleging "divided infringement" and is fatal to A10's claim. *Infra* at 20-21.

- **"b. the first mobile terminal issuing to the second base station a connection message containing virtual channel connections for the first mobile terminal;"**

As with the previous limitation, A10 again alleges that the IEEE 802.11 "association" messages and/or "reassociation messages" meet this limitation. Acampora Ex. J, A10

---

[6] Dr. Acampora sets forth in detail the reasons that Brocade does not infringe the '185 Patent in his declaration. Acampora Decl., ¶¶ 74-78.

[7] For the purposes of this Motion, Brocade does not need to take the position that the preamble of claim 1 is an additional limitation. However, Brocade does not concede that the preamble is non-limiting.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

BROCADE'S NOTICE OF MOTION AND MSJ OF NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185 CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

Infringement Contention at 7-10. This assertion fails because neither message will contain the

connection-oriented "virtual channel connections" (which Brocade has construed as the pre-

established "virtual connection between two end stations") for the mobile terminal, because IEEE

802.11 messages are connectionless and do not identify any "virtual connections." Acampora

Decl., ¶61.

A10 cannot prove infringement even under its construction for "connection message…,"

which is "control information identifying the updated logical paths through which the first mobile

terminal communicates." Devices that use connectionless communications do not establish

"logical paths," through which they communicate. Acampora Decl., ¶71. Rather, each

transmitted packet is independently routed, and does not follow any "logical path" for a particular

"mobile terminal." Acampora Decl., ¶73. The "association" / "reassociation" requests therefore

do not identify any "logical path" for the mobile terminal, and do not infringe.

Finally, A10 cannot prove infringement of this limitation because it has pointed to the

same action – the transmission of association and/or reassociation requests, that allegedly

infringes the first limitation. This is a deficient contention as a matter of law, as the Federal

Circuit has held that the same step in an allegedly infringing method cannot infringe multiple

different limitations of a patent claim. In *Combined Sys., Inc. v. Defense Tech. Corp.,* 350 F.3d

1211 (Fed. Cir. 2003), the Federal Circuit rejected an attempt by a patentee to read two separate

limitations in a method claim for making shotgun shells on a single accused action. The Court

held that "at least in the absence of compelling evidence to the contrary in the written description

or prosecution history" (absent here) , the patentee could not prove infringement unless it showed

that the accused "folding" step and "inserting" occurred as two independent steps. *Id.* at 1211-12.

Accordingly, A10 cannot prove infringement by pointing to the alleged transmission of

"association and/or reassociation" messages for multiple limitations here.

- **"c. the first base station issuing a routing message containing the location of the first and second base stations and the virtual channel connections for the first mobile terminal; "**

Again, A10 alleges that "client association, reassociation, and/or deassociation" messages

meet this limitation, and again this assertion fails because a) none of these connectionless IEEE

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

BROCADE'S NOTICE OF MOTION AND MSJ OF NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185 CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

1  802.11 messages contain virtual channel connections under either Brocade's construction or

2  A10's construction; b) none of these messages contain the location of the first base station, let

3  alone ***both*** the location of the first and second base stations; and c) A10 has relied on association

4  and reassociation already with respect to the previous two limitations, and cannot rely on the

5  same activity again for infringement.

6        A10's construction of "virtual channel connections," which is "a logical path through

7  which a mobile terminal communicates," does not save its assertion either, since mobile terminals

8  do not communicate though a "logical path." Acampora Decl., ¶73.

9             •    **"d. the switch altering the virtual channel connections for the**
                  **first mobile terminal to reflect the move to the second coverage**

10                    **area; and; "**

11        A10 has again relied on "client association, reassociation, and dissociation messages" that

12  fail as these connectionless-oriented messages cannot "alter[] the virtual channel connections"

13  under either party's construction for "virtual channel connections" as previously discussed.

14  Acampora Decl., 29-30.

15        A10 also unsuccessfully relies upon Brocade documentation showing that the Accused

16  Products support "Virtual Local Area Networks." A Virtual LAN (or "VLAN") has nothing to do

17  with connection-oriented communications, but is rather an administrative tool that permits a

18  network to be divided into logical segments, such as a "human resources" network and "IT"

19  network.[8] Dividing a network up logically has nothing to do with connection-oriented

20  communications. Acampora Decl., ¶65.

21             •    **"e. the switch issuing to the second base station a complete**
                  **message containing the altered virtual channel connections for**

22                    **the first mobile terminal."**

23        A10 has alleged that the "Brocade Wireless Controller (switches) issue completion and

24  routing messages," but has not identified any "completion" or "routing" messages in its

25  supporting evidence. A10 Infringement Contention at 15. Accordingly, its assertion fails for lack

26  of proof. In any event, the claim language (and Brocade's construction of it, "a complete

27  message containing the altered virtual channel connections for the first mobile terminal") requires

28  _____

[8] Further, VLANs were well known at the time the '185 Patent was filed. Acampora Decl., ¶42.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 15 -

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

the "complete message" to contain the VCC identifiers, which is not possible in the accused connectionless technology. Acampora Decl., 30-31.

Further, A10 cannot prove that the connectionless IP communications supported by the Accused Products "alter[] virtual channel connections" under even its own construction for "complete message containing...," ("control information identifying the updated logical paths through which the first mobile terminal communicates") as there are no "logical paths through which the first mobile terminal communicates" to identify. Acampora Decl., 34.

**2. Brocade Does Not Infringe Claim 2: "The method of claim 1, wherein the step of altering comprises eliminating the first base station from the virtual channel connection."**

Again A10 merely relies on generic marketing material describing performance features and VLANs, but these materials do not show an "elimination" of the first base station from any "virtual channel connection" under any cognizable theory. A10 Infringement Contention at 18-20; Acampora Decl., ¶¶31-32 In any event the accused connectionless IP and 802.11 communications do not "alter[]" "virtual channel connections."

**3. Brocade Does Not Infringe Claim 3**

- **Brocade does not infringe the first, second, third or fifth limitations of Claim 3.**

These limitations are identical to the same limitations in Claim 1, so the Accused Products do not infringe them for the same reasons identified for Claim 1. Acampora Decl., ¶56.

- **"d. the first switch issuing, via the second switch, to the second base station a couple message containing the virtual channel connections for the first mobile terminal; and"**

For the remaining limitation of Claim 3, A10 again points to the "client association, reassociation, and dissociation messages." A10 Infringement Contention at 32-35. This assertion fails at least because a) there is no "virtual channel connections for the first mobile terminal" in the accused connectionless environment; b) A10 has failed to identify any message issued from the first switch to the second switch as required by the claims, but rather only identified messages sent between the mobile terminal and the base station; and c) A10 cannot rely on "association, reassociation, and dissociation messages" to infringe every limitation of Claim 3

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    under controlling Federal Circuit precedent.  Acampora Decl, 32-33; *Combined Sys., Inc.*, 350
2    F.3d at 1211-12.
3         A10's construction of "complete message...." ("control information identifying the logical
4    paths through which the first mobile terminal communicated")  is similarly unavailing, as there
5    are no "logical paths through which the first mobile terminal communicated" to be identified in
6    the connectionless packet communications technology A10 has accused.  Acampora Decl., ¶73.

            **4.    Brocade Does Not Infringe Claim 4: "The method of claim 3, further**
7               **comprising the step of after issuing the routing message, establishing a**
8               **switched virtual connection to the second base station."**

9         Again, A10 relies upon IEEE 802.11 connectionless "client association, reassociation, and
10   dissociation messages" and unrelated marketing material and references to VLANs to prove this
11   limitation.  A10 Infringement Contention at 38-42.  The "switched virtual connection," is a
12   connection-oriented virtual connection that is created on demand.  Acampora Decl., 35. None of
13   the cited materials can show that Brocade uses switched virtual connections under its
14   construction, "a connection between two base stations that is dynamically established by
15   signaling protocol," which is consistent with the fact that a "switched virtual connection" is a
16   particular type of ATM virtual connection.  Acampora Decl., 35.
17        A10's construction of "switched virtual connection" ("a dynamically-established logical
18   path") is similarly deficient as it incorporates the "logical path" requirement that is absent in the
19   Accused Products.  Acampora Decl., ¶73.  Again, the fact that A10 is identifying the same action
20   for infringement of this claim as it does with respect to the steps of Claim 3 is a legal defect that
21   further undermines A10's assertion.  *Combined Sys., Inc.*, 350 F.3d at 1211-12.

            **5.    Brocade Does Not Infringe Claim 5 or 6**

22
23        •    **Claim 5 claims "The method of claim 3, wherein before the step**
24             **of issuing the couple message: a. determining if a loop exists in**
             **the first switch; and b. if a loop is determined to exist,**
25             **eliminating the loop."**

26        •    **Claim 6 claims "The method of claim 5, wherein the steps of**
27             **determining and eliminating are performed for a plurality of**
             **switches."**
28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 17 -

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

1    A10 has relied upon the same evidence as with Claim 3 to show infringement of these

2    claims. However, none of these cited materials address the concept of removing network "loops"

3    (i.e. paths through a network that do not end) in connection with a mobile terminal moving from a

4    first base station to a second base station (indeed, the citations A10 relies upon do not mention

5    loops at all) in either single switch or a plurality of switches. Acampora Decl., 36.

6           **6.     Brocade Does Not Infringe Claim 7**

7                  a.     **"a. designating a virtual channel connection (VCC) between a
                          first and a second mobile terminal; and"**

8    A10 again relies upon the same documents that describe IEEE 802.11 association

9    requests, generic marketing material and VLANs. None of these references disclose a

10   connection-oriented VCC between a first and second mobile terminal under either Brocade's or

11   A10's claim constructions. Acampora Decl., ¶57.

12   Again, A10 has failed to allege that Brocade uses, makes, sells, or offers for sale the

13   claimed "mobile terminal." Rather A10 only alleges that Brocade infringes the claimed "base

14   station" and "switch" limitations. Therefore, A10 has at best spelled a divided infringement

15   claim, which cannot stand under Federal Circuit authority. *Infra* at 20-21.

16                 b.     **"b. altering the VCC between the first and second mobile
                          terminals when the second mobile terminal moves from a first
17                        base station to a second base station, where:"**

18   A10 again relies on the same documents describing connectionless 802.11 messages and a

19   textbook description of 802.11 roaming that merely confirms the connectionless nature of the

20   Accused Products that cannot infringe the claimed "VCC." Acampora Decl., 38-39.

21                 c.     **"[b](1) if the first and second base stations are connected to the
                          same switch, altering the VCC in the first switch, deleting the
22                        VCC in the first base station, and adding the altered VCC in
                          the second base station; and "**
23

24   A10 has relied upon the same evidence identified in limitations 7.a. and 7.b. and has failed

25   to show any alteration or deletion of VCCs for the reasons discussed with respect to 7.a. and 7.b.

26   Acampora Decl., 39. In addition, by casually citing to the same actions as with the previous

27   limitations, A10 violates *Combined Sys., Inc. v. Defense Tech. Corp.*

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 18 -

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

**d.** **"[b](2) if the first and second base stations are connected to a first and a second switch, respectively, establishing an elongated path by:**

- **1. creating a switched virtual connection (SVC) from the first base station to the second base station via the first and second switches;**

- **2. deleting the VCC in the first base station,**

- **3. after deleting the VCC in the first base station, determining if a loop exists in a switch in the SVC;**

- **4. if a loop is determined to exist in a switch, eliminating the loop;**

- **5. altering the VCC to delete the eliminated loop; and**

- **6. sending to the second base station a couple message containing the VCC for the second mobile terminal."**

A10 cites to the same evidence as with respect to limitation 7.a., which does not show that the connectionless 802.11 and IP communications supported by the Accused wirless products have either and SVC or VCC under either party's construction of VCC or SVC. Acampora Decl., ¶57.

**7.** **Brocade Does Not Infringe Claim 8: "The method of claim 7, wherein steps 3-5 are repeated for a plurality of switches."**

As A10 has failed to show the creation, alteration or deletion of VCCs for a single switch, it cannot show these limitations for a plurality of switches among the Accused Products.

**D.** **A10 Has Alleged "Divided Infringement" Claims That Fail As A Matter Of Law**

Setting aside the numerous defects in its literal infringement claims, A10 cannot prove infringement because its infringement contentions are prohibited "divided infringement" claims under the Federal Circuit cases of *BMC Res., Inc. v. Paymentech, L.P.*, and *Muniauction, Inc. v. Thomson Corp.* 498 F.3d 1380 (Fed. Cir. 2007); 532 F.3d 1318 (Fed. Cir. 2008). Each of the independent claims of the '185 Patent (claims 1.a., 1.b., 3.a., 3.b., and 7.a.) all require a "mobile terminal" to perform one of the claimed steps.[9] However, none of the Accused Products are

---

[9] Specifically, the first two limitations of claims 1 and 3 (and claims 2 and 4-6 that depend from these claims), requires that "the first mobile terminal issu[es] to the first base station a location message containing the location of the second base station;" and that "the first mobile terminal issu[es] to the second base station a connection message containing virtual channel connections for the first mobile terminal;" '185 Patent at Claims 1, 3. Claim 7 (and dependent Claim 8) requires the "designati[on of] a virtual channel connection (VCC) between a first and a second

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4

"mobile terminals." Therefore, according to A10's own allegation, some unnamed third party must practice the alleged "mobile terminal" steps of the '185 Patent's claims. This is not a provable claim of patent infringement because no single actor performs all steps of the claims.

*BMC Resources*, the Federal Circuit applied this rule to affirm a summary judgment ruling of noninfringement of a method claim that involved remote payment processing, where several of the claimed steps could only be performed by third party financial institutions and other steps were allegedly performed by the defendant payment processor. *Id.* at 1381. *Muniauction* similarly rejected an infringement claim directed against an online auction site where certain steps could only be performed by third party bidders using the site. *Muniauction*, 532 F.3d at 1329-1330. In both cases, the Federal Circuit reaffirmed the traditional rule that a single party must perform all steps of an asserted claim, or that multiple parties acting under the "control of direction" of a "mastermind" party infringed. *Id.* at 1329. The latter "control and direction" standard is a stringent one, akin to proving agency under common law, and the Federal Circuit found that arms-length commercial relationships, such as the third party financial institutions that in *BMC Resources* and the commercial bidders in *Muniauction* could not infringe under this standard. *Id.* at 1329; *BMC Resources*, 498 F.3 at 1381.

A10's allegations under the '185 Patent therefore must fail. As A10 has failed to identify any Accused Product that is the claimed "mobile terminal," A10 is necessarily alleging that some third party infringes the "mobile terminal" steps of Claims 1, 3 and 7. However the activities of a third party using the claimed "mobile terminal" cannot be imputed to Brocade. Accordingly, A10 cannot prove infringement under *BMC Resources* and *Muniauction*.

### E. A10 Cannot Show Infringement Under The Doctrine Of Equivalents

A10 cannot prove its claims under the doctrine of equivalents either, as it has presented no evidence of equivalency and would read out claim limitations by applying the doctrine of equivalents to the Accused Products. "To support a finding of infringement under DOE," A10 must present "on a limitation-by-limitation basis", "particularized testimony and linking argument as to the 'insubstantiality of the differences' between [the '185 Patent claims] and [the Accused

---

mobile terminal" in its first limitation. '185 Patent at Claims 7.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

Products], or with respect to the function, way, result test." *Tex. Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed.Cir.1996). "[E]vidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed.Cir.1989).

Here A10 has identified no evidence that the differences between the connectionless technology employed by the Accused Products and the connection-oriented claims of the '185 Patent are "insubstantial." Nor could it prove these differences are insubstantial, given the fundamental differences between connectionless and connection-oriented network communications. Acampora Decl., ¶35. Moreover, IP networking and VLANs were known at the time the '185 Patent was filed, meaning that A10 "had an obligation to claim that technology" if it truly believed it was equivalent. *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co., Inc.*, 285 F.3d 1046 (Fed. Cir. 2002) (en banc) (per curiam); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1380 (Fed. Cir. 2007). Indeed, to allege a claim under doctrine of equivalents, A10 would have to read out the limitations in every claim of the '185 Patent requiring the creation, alteration and/or deletion of VCCs and SVCs, which are connection-oriented constructs. The doctrine of equivalents cannot be used to "vitiate" claim limitations, and therefore any assertion that A10 may raise under the doctrine of equivalents fails. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed. Cir. 2006).

## IV. CONCLUSION

For the foregoing reasons, Brocade respectfully submits that it is entitled to entry of summary judgment of non-infringement of the '185 Patent.

Dated: October 11, 2011                    ORRICK, HERRINGTON & SUTCLIFFE LLP


                                           */s/ Siddhartha M. Venkatesan*
                                           _____
                                           SIDDHARTHA M. VENKATESAN
                                           Attorneys for Plaintiffs
                                           BROCADE COMMUNICATIONS SYSTEMS,
                                           INC. AND FOUNDRY NETWORKS, LLC

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

BROCADE'S NOTICE OF MOTION AND MSJ OF
NONINFRINGEMENT OF U.S. PATENT NO. 5,875,185
CASE NO. 10-CV-03428 LHK

OHS WEST:261369209.4