UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BROCADE COMMUNICATIONS SYSTEMS, INC., ET AL.,<br><br>                    Plaintiffs,<br>     v.<br><br>A10 NETWORKS, INC., ET AL.,<br><br>                    Defendants. | Case No.: C 10-3428 PSG<br><br>**ORDER ON MOTIONS IN LIMINE AND DAUBERT MOTIONS**<br><br>**(Re: Docket Nos. 585, 587)** |

Before the court are the parties' in limine and Daubert motions. Plaintiff Brocade Communications Systems, Inc. ("Brocade") and Defendant A10 Networks, Inc. ("A10") each bring seven motions. On July 9, 2012, the parties appeared for a hearing on the motions. Having reviewed the papers and considered the arguments of counsel,

IT IS HEREBY ORDERED that Brocade's Daubert/motion in limine no. 1 is DENIED.

As to the first two categories in dispute, while Brocade may not agree with the methods Dean used to obtain the EX and ID Sentrie gross margin data that Dean relied upon to support her opinions, or the sufficiency of that data, Brocade's challenges go to the weight of the evidence and not to their admissibility. As to the last category, Dean's use of the "lines of code" metric is but one input in her damages calculation and she appears to take into account both the qualitative and quantitative significance of the copied portion in relation to Brocade's work as a whole. Her

1

Case No.: C 10-3428 PSG
ORDER

methodology therefore is not, as Brocade suggests, at odds with *Newton v. Diamond.*[1] In addition, the "line of code" metric is not barred by Federal Circuit precedent, which recognizes that the "lines of code" metric can properly be considered as part of patent damages analysis.[2]

Because Brocade bears the burden of proof on damages, Dean's affirmative damages opinions were properly disclosed as rebuttal testimony.[3]

IT IS FURTHER ORDERED that Brocade's motion in limine no. 2 is GRANTED.

Evidence of the patentee's statements during re-examination may be relevant to "narrow or qualify the construction of claims."[4] The court, however, has already construed the patent claims, as it must, and A10's suggested use of statements runs the undue risk of invading the court's province as arbiter of claim scope. In addition, the court previously held that A10 is estopped from arguing the invalidity of the asserted patents.[5] Under these circumstances, the evidence at issue must be excluded.

IT IS FURTHER ORDERED that Brocade's motion in limine no. 3 is GRANTED.

Evidence that Brocade sought to drive A10 out of business, to stifle its competition and to thwart Cisco's possible acquisition of A10 is not relevant.[6]

IT IS FURTHER ORDERED that Brocade's motion in limine no. 4 is GRANTED.

Evidence of Brocade's narrowing of its claims is not sufficiently probative to substantially outweigh the danger of undue prejudice to Brocade. A10's expert may nevertheless argue, however, that Brocade is seeking damages that are broader than the claims at issue in the trial and as construed by the court.

---

[1] 388 F.3d 1189, 1195 (9th Cir. 2004).

[2] *See Lucent Technologies, Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1332-33 (Fed. Cir. 2009).

[3] *See Ultratech, Inc. v. Tamarack Sci. Co.,* Case No. C 03-CV-3235, 2005 WL 856408, at *1 (N.D. Cal. Apr. 14, 2005); *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1242, 1315 (Fed. Cir. 2011).

[4] *Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.,* 226 U.S. 342, 351 (1924); *see also Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220, 1222 (Fed. Cir. 1988) (citing *Westinghouse*).

[5] *See* Docket No. 592.

[6] *Cf. Blank v. Sullivan and Cromwell,* 418 F.Supp. 1, 4 (S.D.N.Y. 1975).

IT IS FURTHER ORDERED that Brocade's motion in limine no. 5 is DENIED.

Evidence of customer use and demand is relevant to the following *Georgia-Pacific* factors: 8 (commercial success) and 10 (benefits to those who have used the invention).[7] Any concerns about any misuse of such evidence for purposes of deciding infringement may be addressed by an appropriate jury instruction.

IT IS FURTHER ORDERED that Brocade's motion in limine no. 6 is DENIED.

Defendants' expert report is proper rebuttal and supplements his prior opinions. Because A10 served the report on Brocade during the course of expert discovery, Brocade has had sufficient opportunity to depose A10's experts regarding these defenses and may cross-examine Defendants' expert at trial.

IT IS FURTHER ORDERED that Brocade's motion in limine no. 7 is GRANTED.

A10 does not oppose this motion.

IT IS FURTHER ORDERED that A10's first Daubert motion is DENIED.

The court is persuaded that Malackowski's opinions on the first two *Panduit* factors are sufficiently grounded in data and his analysis is reliable. Malackowski cited evidence that combined demand for AX and ServerIron increased in 2007 after the patented features were introduced, GSLB was incorporated in late 1999, and HA was incorporated around 2002. Malackowski also considered demand for the patented features, perspective of inventors, the opinions of technical experts and competitors, patents in the same technology spaces, and A10 and Brocade/Foundry competition for contracts. He also appropriately relied on technical experts and the inventor, who opined that the GSLB and HA patents cannot be designed around in a commercially acceptable manner.

Malackowski also calculated separate royalty rates for the DDoSP, GSLB and HA patent groups and explained that his royalty rates for GSLB and HA are based on the presumption that at least one patent from each technology group is valid and infringed. This is sufficient.

Regarding the Entire Market Value Rule, Malackowski's use of the entire value of the AX Series as the royalty base is not erroneous for purposes of Rule 702. He sufficiently considered

---

[7] *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970).

3

Case No.: C 10-3428 PSG
ORDER

appropriate apportionment to reflect the value of the patented features in calculating royalty rate multipliers.

The court also is persuaded that Malackowki's reasonable royalty rate analysis is supported by appropriate data and that his royalty analysis is reliable. Regarding the comparability of licenses Malackowski considered, while the survey he cites may not be ultimately persuasive, A10's challenges ultimately go to the weight of this evidence, not its admissibility. Malackowski also considered the A10/F5 license and analyzed the differences between the A10/F5 license and the hypothetical negotiations between A10 and Brocade over the asserted patents. Malackowski's consideration of value of service contracts on ServerIron in the royalty base to calculate the reasonable royalty also is acceptable.

Regarding Malackowski's calculation of head start damages, Malackowski sufficiently calculated damages for each trade secret. It is also sufficient for him to have calculated the time to develop trade secrets based upon the experience of the product in the market and customer evaluations.

Regarding Malackowski's calculation of avoided costs, because full implementation of the product features was not complete until 2008, 2008 is not an inherently flawed endpoint for the period calculated. Any failure by Malackowski to apportion costs not attributable to its wrongful conduct may be addressed through cross-examination.[8]

Regarding copyright damages, Malackowski has satisfied his burden of establishing that there exists a causal nexus between infringement and the gross profits of the AX Series products. A10 may establish that not all of AX Series profits resulted from infringement through cross-examination and its own presentation of evidence.

With respect to intermediate copying, Malackowski also may rely on Zeidman's analysis which concluded that A10 developed the AX Series products at a rate at least three times faster

---

[8] *See Cartel Asset Mgmt. v. Ocean Fin. Corp.,* 249 Fed. Appx. 63, 79 (10th Cir. 2007) ("Once a plaintiff demonstrates that a defendant made a profit from the sale of the products produced by improper use of a trade secret, the burden shifts to the defendant to demonstrate those costs properly to be offset against its profit and the portion of its profit attributable to factors other than the trade secret") (quoting *Data Gen. Corp. v. Grumman Sys. Support Corp.,* 36 F.3d 1147, 1173 (1st Cir. 1994)).

4

Case No.: C 10-3428 PSG
ORDER

than what would otherwise be expected. This evidence demonstrates a causal nexus and that A10's infringement allowed it to get a product to market much faster than it otherwise would have, resulting in increased profits and lower development costs.

Regarding intentional interference damages, because A10 and Foundry were competitors, the benefit conferred upon one company is a reasonable and legally permissible means of estimating the damage done to the other. Brocade arguably had lost opportunity costs, including opportunities for licensing. In addition, Malackowski's conclusion that He's work was critical to the development of the AX Series products is supported by the factual record. Chen's email suggests that he was frustrated by the slow progress of QA automation prior to hiring He. After Chen hired He, A10 was able to develop an automated Layer 2 QA within two months. Chen also explains that the work he did for A10 was comparable to three senior QA's work.

Regarding contract damages, Malackowski cites sufficient evidence in the record to support his conclusions, specifically, the annual compensation rates of the departed employees. In particular, Malackowski pro-rated the compensation of various employees by the amount of time that Chen's unlawful action deprived Foundry of their employment.

IT IS FURTHER ORDERED that A10's second Daubert motion is DENIED.

Rubin is qualified to testify as an expert in the field of computer forensic analysis. Rubin's forensic analysis involved reviewing internet caches, email screenshots and attachments, and documents from computer hard drives that he recovered. Rubin took into account when email subject lines and document attachments contained facial designations related to Raksha or A10 as opposed to Foundry or Brocade. A10's challenges to Rubin's expertise and opinions go to the weight of them rather than to their admissibility.

IT IS FURTHER ORDERED that A10's third Daubert motion is DENIED.

Zeidman is qualified to testify as a copyright expert. The court is satisfied that he has ample expertise and experience to support his opinions regarding the structure, sequence and organization of the disputed code, proper clean room procedures, software development time, and the alleged theft of additional Brocade code based on similarities between Brocade's code and code located in A10's development repository as well as the possession of hundreds of uncorrelated Foundry

5
Case No.: C 10-3428 PSG
ORDER

1 source code files by A10 developers. Brocade also has established that even though the abstraction/filtration/comparison test is not required where the alleged copying is literal code,[9] Zeidman nevertheless used it.

IT IS FURTHER ORDERED that A10's motion in limine no. 1 is GRANTED.

Judge Ambler previously concluded that notwithstanding A10's alleged discovery abuses in failing to comply with various orders, including the February 7, 2012 order, terminating and evidentiary sanctions were not warranted.[10]

IT IS FURTHER ORDERED that A10's motion in limine no. 2 is DENIED.

Brocade served an amended identification of trade secrets on June 11, 2012 and in particular, Brocade provided sufficient clarification of Trade Secret 20, which included Meckley documents that had been disclosed to Brocade on April 4, 2012.

IT IS FURTHER ORDERED that A10's motion in limine no. 3 is GRANTED.

Except for references regarding the He testing code and A10's hiring of Foundry/Brocade employees after September 2005, any reference to patent, trade secret, or copyright claims not previously identified by Brocade is prohibited. References to infringement of the He testing code and A10's hiring of Foundry/Brocade employees after September 2005 is probative of Brocade's interference of contract claims. Similarly, A10's hiring of Foundry/Brocade employees after September 2005 is probative of A10's intent to acquire Brocade's trade secrets, source code, knowledge, and other confidential information and A10's effort to target Brocade's market niche.

IT IS FURTHER ORDERED that A10's motion in limine no. 4 is DENIED.

Brocade may provide evidence regarding the contents of Meckley and Szeto's hard drives. Under Fed. R. Evid. 104(b), the evidence will be admitted subject to connection. In the event that Brocade fails to establish that A10 is vicariously liable for Meckley and Szeto's conduct or that A10 acquired certain information from Meckley, the evidence will not be admitted and the jury so instructed.

---

[9] *See Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994).

[10] *See* Docket 641.

6
Case No.: C 10-3428 PSG
ORDER

1  **IT IS SO ORDERED.**

2  Dated:   7/13/2012

                                               PAUL S. GREWAL
                                               United States Magistrate Judge

**United States District Court**
For the Northern District of California

7

Case No.: C 10-3428 PSG
ORDER