UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BROCADE COMMUNICATIONS SYSTEMS, INC., ET AL.,<br><br>       Plaintiffs,<br>       v.<br><br>A10 NETWORKS, INC., ET AL.,<br><br>       Defendants. | Case No.: C 10-3428 PSG<br><br>**ORDER GRANTING BROCADE'S MOTION FOR PERMANENT INJUNCTION RE PATENT INFRINGEMENT**<br><br>**(Re: Docket Nos. 783)** |

The seventeenth-century jurist John Selden once lamented that "equity varies with the length of the chancellor's foot." Fortunately for the Lord Chancellors' twenty-first century American descendants, circumstances have improved. Even after the Supreme Court in *eBay* disabused us all of the notion that equitable relief in patent cases was essentially a given, the Federal Circuit has with increasing frequency articulated standards to guide trial courts in their consideration of whether and in what form an injunction should follow a finding of patent infringement.

Some have suggested that these standards herald the death, or at least the wounding, of the permanent injunction in patent cases involving hardware or software products with hundreds or thousands of components. One standard in particular – the "causal nexus" standard – bears the

1

Case No.: C 10-03428 PSG
ORDER

brunt of this discussion. Whether those opinions are fair or even accurate is something this court cannot say. What this court can say, however, is that whatever the "trend" of permanent injunctions in such cases, the Federal Circuit has made clear that injunctions can and should continue to issue upon the assembly and presentation of an appropriate record. After careful consideration of the parties' voluminous papers and substantial oral arguments, the court is persuaded that the record in this case, which shows a clear causal nexus between Brocade's loss of exclusivity in its inventions and A10's infringement, is one such example.

As explained below, Brocade's motion for permanent injunction is GRANTED.

## I.   BACKGROUND

A detailed history of this case has been recounted in other orders,[1] and so the court here summarizes only the relevant facts and procedural history necessary for determination of the permanent injunction.[2]

Both Brocade and A10 sell application delivery controllers ("ADC") with Global Server Load Balancing ("GSLB") and High Availability ("HA") features. After a three-week trial, the jury found A10 had infringed four claims from three of Brocade's patents[3]: (1) claim 25 of U.S. Patent No. 7,454,500 ("'500 Patent"); (2) claim 13 of U.S. Patent No. 7,581,009 ("'009 Patent"); (3) claim 24 of the '009 Patent; and (4) claim 1 of U.S. Patent No. 7,558,195 ("'195 Patent"). The infringing products include A10's AX series ADCs ("AX series"). Brocade alleged infringement of other claims from the three patents and from other patents, but these allegations were bifurcated at an earlier stage of the case.[4]

---

[1] *See* Docket Nos. 434, 438.

[2] In the same motion, Brocade also sought a permanent injunction to prohibit A10 from continuing to use Brocade's misappropriated trade secrets. *See* Docket No. 783. The court addresses that request in a subsequent order.

[3] *See* Docket No. 771.

[4] *See* Docket No. 618.

2

Case No.: C 10-03428 PSG
ORDER

The '500 Patent and the '009 Patent involve apparatuses that improve the performance of GSLB.[5] The '500 Patent describes a database "configured to store round trip time data for a plurality of host server site switches."[6] The '009 Patent describes a GSLB system and an adaptation to an existing GSLB system that, among other things, orders network addresses "based upon a first set of performance metrics from the stored performance metrics" and to "reorder one or more network addresses from the plurality of network addresses based upon a second set of performance metrics from the stored performance metrics."[7] The '195 Patent similarly describes "systems and methods for providing route redundancy across Layer 2 devices, as well as selected ports on L2 devices."[8]

The jury found Brocade failed to prove A10's infringement was willful or that it induced infringement.[9] As for patent damages, the jury made the following findings[10]:

> If you have found any of the foregoing claims infringed, what damages do you find Brocade has proven it is more probable than not it has suffered as a result of that infringement?
>
> 1. Lost Profits: $ <u>49, 397,904</u>
>
> 2. Reasonable Royalty
>
>    a. rate: <u>4%</u>
>
>    b. total royalty damages: $ <u>1,975,916</u>
>
> 3. Total Damages: $ <u>1,975,916</u>

---

[5] *See* Docket No. 776 Exs. I, AA.

[6] *See id.* Ex. I.

[7] *See id.* Ex. AA.

[8] *See id.* Ex. M.

[9] *See* Docket No. 771.

[10] *See id.*

Case No.: C 10-03428 PSG
ORDER

The jury also found A10 liable for copyright infringement, trade secret misappropriation, and intentional interference with contractual relations. These latter verdicts are not relevant to the permanent injunction Brocade now requests.

Brocade seeks to enjoin A10 permanently from infringing any claims in the '500 Patent, the '009 Patent, or the '195 Patent, which A10 opposes on several grounds.

## II.   LEGAL STANDARD

Pursuant to *eBay, Inc. v. MercExchange, LLC*,[11] there is no presumption in favor of an injunction in patent infringement cases.[12] Instead, a plaintiff retains the burden of showing that the four traditional equitable factors support entry of a permanent injunction: (1) that the plaintiff has suffered irreparable harm; (2) that "remedies available at law are inadequate to compensate for that injury"; (3) that "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) that "the public interest would not be 'disserved' by a permanent injunction."[13]

## III.   DISCUSSION

Brocade's request for a permanent injunction presents the court with two issues to resolve: (1) whether Brocade is entitled to any permanent injunction, and if so (2) the scope of the injunction the court should enter. The court first discusses the four *eBay* factors and then considers the appropriate scope of the injunction.

---

[11] 547 U.S. 388 (2006).

[12] *Id.* at 391.

[13] *See i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (citing *eBay*, 547 U.S. at 391).

4
Case No.: C 10-03428 PSG
ORDER

**A.     Entitlement to an Injunction**

   **1.     Irreparable Harm**

As a preliminary matter, the court must determine the appropriate standard for evaluating irreparable harm in the permanent injunction setting. Relying on the Federal Circuit's recent decisions in *Apple Inc. v. Samsung Electronics Co., Ltd.*,[14] A10 argues that Brocade must show that the patented feature drove demand for the accused AX series to establish whatever irreparable harm Brocade claims.[15] In *Apple I* and *Apple II*, the Federal Circuit instructed that "to satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: 1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement."[16]

Brocade counters[17] that both *Apple I* and *Apple II* were in the context of a preliminary, not permanent, injunction and because of the "emergency relief" of a preliminary injunction, the standard for "irreparable harm" is higher in that context than in the permanent injunction setting here.[18] According to Brocade, the appropriate standard should instead be drawn from *i4i Ltd. Partnership v. Microsoft Corp.*[19] and *Robert Bosch LLC v. Pylon Mfg. Corp.*,[20] in which the

---

[14] 678 F.3d 1314, 1324 (Fed. Cir. 2012) (hereinafter *Apple I*); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370, 1376 (Fed. Cir. 2012) (hereinafter *Apple II*).

[15] Unless otherwise noted, the court draws A10's arguments from its Opposition to Brocade's Motion for Permanent Injunction. *See* A10's Opp'n to Mot. for Perm. Inj. (filed under seal).

[16] *Apple II*, 695 F.3d at 1374.

[17] Unless otherwise noted, the court draws Brocade's arguments from its Motion for Permanent Injunction. *See* Docket No. 783.

[18] The court notes, however, that Brocade nevertheless cited to the district court's second preliminary injunction decision to support Brocade's argument that "stickiness" is relevant to the irreparable harm inquiry. *See* Docket No. 783 at 7; *Apple, Inc. v. Samsung Elecs. Co.*, Case No. 12-cv-00630-LHK, 2012 U.S. Dist. LEXIS 90979 (N.D. Cal. June 29, 2012).

[19] 598 F.3d 831 (Fed. Cir. 2010).

5
Case No.: C 10-03428 PSG
ORDER

Federal Circuit found that the plaintiffs had met their burden by showing direct competition between the parties and that the plaintiffs had lost sales to the defendant as a result of the introduction of a device that infringed.[21]

This threshold question of the appropriate standard is a difficult one. In the Federal Circuit's most recent decisions regarding permanent injunctions, there is a curious absence of references to the causal nexus standard,[22] and the Federal Circuit previously has counseled at least in the context of a trademark case that preliminary and permanent injunctions "are distinct forms of equitable relief that have different prerequisites and serve entirely different purposes."[23] On the other hand, both the Supreme Court and the Federal Circuit have advised that the standard for irreparable harm is the same for preliminary and permanent injunctions.[24]

The court must confess to doubt that the causal nexus as articulated in *Apple II* should be required for all irreparable harms offered in support of a request for a permanent injunction. Whatever its ultimate merit where the particular irreparable harm claimed is a loss of sales, that

---

[20] 659 F.3d 1142 (Fed. Cir. 2011).

[21] *See i4i Limited*, 598 F.3d at 861; *Robert Bosch*, 659 F.3d at 1151. Brocade also claims that, as with the defendant in *Bosch*, A10 lacks the "financial wherewithal to satisfy a judgment." *See* Docket No. 783. As the court explains below, Brocade sufficiently shows irreparable harm even without proving this additional claim, and so the court does not address A10's financial state. The court notes, however, that Brocade has provided no evidence that A10 is subject to the same threat of bankruptcy or financial stress as the defendant in *Bosch*.

[22] *See Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 2012 WL 6602786, --- F.3d --- (Fed. Cir. 2012); *Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305 (Fed. Cir. 2012).

[23] *Lermer Germany GmbH v. Lermer Corp.*, 94 F.3d 1575, 1577 (Fed. Cir. 1996).

[24] *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32-33 (2008) (noting the similarity in the factors considered in the preliminary injunction and permanent injunction setting); *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *Bosch*, 659 F.3d at 1148 n.3 (noting that the standard for irreparable harm is the same in the preliminary and permanent injunction settings); *see also Apple Inc. v. Samsung Elecs. Co.*, Case No. 11-cv-1846 LHK, 2012 WL 6569786, at *2 n.2 (N.D. Cal. Dec. 17, 2012) (noting that "the irreparable harm requirement applies to both preliminary and permanent injunctions" and that nothing in *Apple II* limits its application to preliminary injunctions).

strict standard appears to move into the irreparable harm analysis a consideration better suited for the equitable factors of balance of hardships and public interest.[25] The court does not however have to decide this broader question here, because Brocade has proven a sufficient nexus between the established infringement and irreparable harm from the loss of its exclusive right to practice its patents.[26] As the Federal Circuit noted in *Bosch*, although plaintiffs who have proven infringement no longer enjoy any presumptions toward an injunction or irreparable harm, "it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude."[27] In other words, the lack of presumption toward an injunction "does not mean that the nature of patent rights has no place in the appropriate equitable analysis."[28]

The Federal Circuit recently repeated the importance of the right of exclusivity in *Edwards Lifesciences AG v. CoreValve, Inc.*[29] and *Presidio Components, Inc. v. American Technical Ceramics Corp.*[30] As the *Edwards Lifesciences* court explained, "[t]he Court in *eBay* did not hold

---

[25] *See Apple II*, 695 F.3d at 1376 ("Thus, the causal nexus inquiry is indeed part of the irreparable harm calculus: it informs whether the patentee's allegations of irreparable harm are pertinent to the injunctive relief analysis, or whether the patentee seeks to leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant."); *see also eBay*, 547 U.S. at 396-97 (J. Kennedy concurring); Sarah R. Wasserman Rajec, *Tailoring Remedies to Spur Innovation*, 61 Am. U. L. Rev. 733, 773-74 (2012) (suggesting "a modest expansion" of the public interest factor because "[u]ltimately, the problems the Court attempted to address in *eBay* are problems best weighed in terms of the public interest because it is a more straightforward approach to those concerns than using market share as a proxy for innovative capability").

[26] Brocade also alleges that it has lost market share, downstream effects, brand recognition, and lost sales and that it has met the causal nexus standard by showing that its infringing features drove demand for the AX series. Brocade has not presented sufficient evidence to support its contention that its loss of market share and sales was the result of A10's infringement. Brocade asserts that GSLB and HA were critical features for both the ServerIron and AX products. But as A10 points out, Brocade does not hold the patents to GSLB or HA; it owns only the patents to *enhancements* of those features. Brocade, therefore, has not shown that its patented features drove demand for either its sales or A10's sales. *Cf. Apple II*, 695 F.3d at 1376.

[27] 659 F.3d at 1149.

[28] *See id.*

[29] 699 F.3d 1305 (Fed. Cir. 2012).

[30] 2012 WL 6602786, --- F.3d --- (Fed. Cir. 2012).

7
Case No.: C 10-03428 PSG
ORDER

that there is a presumption against exclusivity on successful infringement litigation."[31]  Rather, "[a] patentee's right to exclude is a fundamental tenet of patent law," and so "[a]bsent adverse equitable considerations, the winner of a judgment of validity and infringement may normally expect to regain the exclusivity that was lost with the infringement."[32]

The *Presidio Components* court observed that "particularly with an eye to protecting the public interest, the decision to deny a permanent injunction remains within the equitable discretion of the district courts," but that "the axiomatic remedy for trespass on property rights is removal of the trespasser."[33]  Courts therefore should be guided by the "historical practice of protecting the right to exclude through injunctive relief . . . given the difficulties of protecting this right solely with monetary relief."[34]

Here, Brocade has demonstrated that A10's infringement prevents it from practicing its patents exclusively.  Brocade has shown that its ServerIron series of ADC ("ServerIron") practices the four claims from the three patents-in-issue.  In particular, Ivy Hsu ("Hsu"), one of the named inventors of the three patents, and Azer Bestavros and Izhak Rubin, two of Brocade's experts, testified that Brocade's product practiced the route redundancy invention in the '195 Patent and the re-ordering features of the '500 Patent and the '009 Patent.[35]  Neither party has presented any evidence that Brocade licenses any of the technology in the patents to any other parties.[36]

---

[31] *Id.*

[32] *Id.* at 1314.

[33] 2012 WL 6602786, at *8.

[34] *Id.*

[35] *See* Docket No. 682 at 384:19 – 385:15, 400:17 – 401:12; Docket No. 692 at 816:20 – 817:6, 846:10-13, 862:2-11; Docket No. 695 at 1373:3-10.

[36]  At trial Brocade and A10 both pointed to an A10 settlement agreement with F5, Inc. as a comparable license to determine reasonable royalty damages.  *See* Docket No. 758 at 2367:9 – 2368:12; Docket No. 463 at 3283:6-8.

8
Case No.: C 10-03428 PSG
ORDER

Brocade also shows that it is in direct competition with A10, such that its loss of exclusivity is particularly injurious.[37] Brocade's witness, Ken Cheng ("Cheng"), and A10's founder, Lee Chen ("Chen"), both described Foundry/Brocade and A10 as competitors.[38] Emails from A10 employees identify Foundry – now Brocade – as a "good target[] to attack."[39] Cheng also distinguished the "high performance" products Brocade and A10 offer from the GSLB and HA products offered by companies with larger market share.[40] Brocade's expert James Malackowski identified 165 of its customers who bought A10's AX product with the infringing features included and who had also been Brocade customers.[41]

In a situation such as this, where Brocade has shown that it practices its patent, that A10 is its direct competitor, and that Brocade does not license its patents, Brocade has shown that it suffers the type of irreparable harm that a permanent injunction is intended to remedy.[42]

### 2. Inadequate Remedies at Law

The court also finds that money damages are inadequate to remedy the harm to Brocade from A10's infringement. A loss of exclusivity traditionally has been addressed through injunctive relief because, as with other property rights, payment of money is unsuitable for remedying the

---

[37] As to the parties' dispute regarding the nature of the market in which they compete, the court notes that Brocade is not obligated to show that it competes exclusively with A10. Although a two-competitor market may support an irreparable harm claim, it is not a prerequisite. *See Bosch*, 659 F.3d at 1151.

[38] *See* Docket No. 691 at 518:23 – 519:4; Docket No. 711 at 2039:20-25.

[39] *See* Trial Ex. 932.

[40] *See* Docket No. 682 at 444:13-23.

[41] *See* Docket No. 758 at 2337:7-11, 2363:3-10.

[42] *See Edwards Lifesciences*, 699 F.3d at 1315 (noting that "[a]bsent adverse equitable considerations, the winner of a judgment of validity and infringement may normally expect to regain the exclusivity that was lost with the infringement" and that "[c]ourts awarding permanent injunctions typically do so under circumstances where plaintiff practices its invention and is a direct market competitor"); *Bosch*, 659 F.3d at 1149 (noting that reference to equitable relief is "particularly apt in traditional cases . . . where the patentee and adjudged infringer both practice the patented technology").

9

Case No.: C 10-03428 PSG
ORDER

injury suffered.[43] As the Federal Circuit instructs, "the axiomatic remedy for trespass on property rights is removal of the trespasser."[44]

As the court described above, no evidence suggests that Brocade licenses any of the technology at issue, and Brocade has established that it directly competes with A10. Brocade also established that its exclusive practice of its products serves to distinguish its products. Cheng and Hsu testified that Foundry sought to differentiate ServerIron through the development of enhanced GSLB and HA features.[45] Although money damages may compensate Brocade for previous harm from the infringement, they do not protect Brocade's right to practice exclusively its patented improvements to the GSLB and HA functions.[46] Here, exclusivity protects Brocade's competitive position.[47] Brocade's right to exclusivity cannot be protected through damages alone; an injunction is necessary to ensure its rights.[48]

### 3. Balance of Hardships

Brocade argues that in light of the irreparable harm occurring as a result of A10's infringement and A10's claims that it can design around the infringing features, the balance of hardships tips in Brocade's favor. A10 responds that because of its small size in comparison to

---

[43] *See Edwards Lifesciences*, 699 F.3d at 1315; *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring) (observing that the "long tradition of equity practice" of "grant[ing] injunctive relief upon a finding of infringement in the vast majority of patent cases" should inform courts deciding on the appropriateness of injunctive relief).

[44] *See Presidio Components*, 2012 WL 6602786 at *8.

[45] *See* Docket No. 682 at 379:4-24; Docket No. 449:6-22, 450:18 – 452:4.

[46] *See Edwards Lifesciences*, 699 F.3d at 1315 (noting that "[c]ourts awarding permanent injunctions typically do so under circumstances where plaintiff practices its invention and is a direct market competitor") (quoting *Adv. Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554 (D. Del. 2008)).

[47] *See id.* ("The innovation incentive of the patent is grounded on the market exclusivity whereby the inventor profits from his invention.").

[48] *See id.*

10
Case No.: C 10-03428 PSG
ORDER

Brocade and the central role of the AX product to its business, the balance of hardships instead weighs against granting an injunction.

A10 "cannot escape an injunction simply because it is smaller . . . or because its primary product is an infringing one."[49] But the purpose of an injunction is to protect the exclusive rights of the patentee, not to punish the infringer.[50] Thus, the patentee has "no cognizable interest in putting [an infringer] out of business."[51] With these tenets in mind, the court considers the balance of hardships to the parties.

Entry of an injunction would prohibit A10 from continuing to practice the four claims from Brocade's three patents but, based on A10's evidence, it would not drive A10 out of business. A10's expert Elizabeth Dean testified that many of the AX series' other features improved performance and accordingly drove demand.[52] In its opposition, A10 admits that Brocade's features do not drive demand for the AX product or that the infringing features are core components of the AX product.[53] A10's witnesses also stated at trial that A10 could easily design around Brocade's patented claims.[54] The hardship A10 would suffer, therefore, is minimal. As to A10's arguments regarding the effect on it of Brocade's proposed injunction, the court addresses those contentions in more detail in its consideration of the appropriate scope of the injunction.

Brocade, on the other hand, would suffer ongoing loss of its rights to exclusively practice its patents, and Brocade's loss would be at the hands of a direct competitor. Brocade's hardship in

---

[49] *Bosch*, 659 F.3d at 1156.

[50] *See Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 968-69 (N.D. Cal. 2009).

[51] *Id.* (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1311 n.12 (Fed. Cir. 2007)).

[52] *See* Docket No. 762 at 3020:7-22, 3075:5-11, 3082:2 – 3084:7.

[53] *See* Docket No. 801.

[54] *See* Docket No. 758 at 2487:20 – 2489:10, 2494:12-23, 2497:23 – 2498:4, 2503:20 – 2504:25.

11
Case No.: C 10-03428 PSG
ORDER

the absence of an injunction outweighs A10's hardship if an injunction were to be entered. The balance, therefore, weighs in favor of entry of an injunction.

### 4. Public Interest

Brocade argues that the public interest is served through protection of its patent rights. It contends that A10's customers will not be harmed because the proposed injunction bars only future sales of the AX series. A10 contends that Brocade seeks to "hold up" the AX series through an injunction barring the manufacture or use of entire devices when only limited features have been shown to infringe. A10 also argues that the public interest in competition undercuts Brocade's proposed injunction.[55]

The exclusive rights espoused in patents represent the public's willingness to sacrifice access to an invention or method for a limited period of time to allow the inventor the opportunity to recoup on her investment.[56] That balance between free competition and the patentee's ability to recover her investment aspires to promote innovation by denying the public access to the invention in the short-term in exchange for a guarantee of disclosure and public access to the invention in the long term.[57] Short-term exclusivity ideally encourages more investment in research and

---

[55] A10 also seeks to reargue that Brocade's patents are in fact invalid, which one of the individual defendants was barred from arguing at trial because of the assignor estoppel doctrine. *See* Docket No. 361. Although A10 suggests that the assignor estoppel doctrine should suffer the same fate as the licensee estoppel doctrine, which the Supreme Court terminated in 1969, the Federal Circuit has quite plainly held that it remains viable. *See Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224-25 (Fed. Cir. 1988). A10 has provided little more than a few sentences to suggest that this court should find the doctrine unviable or inapplicable at this late stage of the litigation. Because A10 provides so little space to the argument, no doubt in part because the argument lacks merit, the court does the same. The assignor-estoppel doctrine prevents arguments regarding invalidity, and so the court will not consider A10's attempts to address that issue at this point.

[56] *See Edwards Lifesciences*, 699 F.3d at 1315.

[57] *See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*, 534 U.S. 124, 142 (2001) ("The disclosure required by the Patent Act is the *quid pro quo* of the right to exclude.").

12
Case No.: C 10-03428 PSG
ORDER

development of inventions.[58]  Protecting a patentee's exclusive practice of her patent, therefore, generally serves the public interest.

Brocade's experts testified that the patented features improve performance of ServerIron and that it has implemented those features.[59]  Brocade thus is not seeking to preclude the public's access to the patented inventions.  As to A10's arguments regarding the effect of an injunction on customers who have already purchased and continue to use the AX product, the court addresses those issues in greater detail in its discussion of the appropriate scope of the injunction.[60]  For now, the court notes that an injunction barring future infringement and carving out current users from its effects preserves the public interest.[61]  The court finds that the public interest would not be disserved by a permanent injunction.

**B.     Scope of the Injunction**

Having determined that the four *eBay* factors support entry of a permanent injunction, the court turns to the appropriate scope.  The court possesses "inherent discretion to fashion equitable relief"[62] and may consider a "variety of equitable considerations, and responsive equitable remed[ies] in patent cases."[63]

Brocade seeks entry of the following injunction:

---

[58] *See Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480 (1974) ("The patent laws promote [the progress of science] by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development.  The productive effort thereby fostered will have a positive effect on society through the introduction of new products and processes of manufacture into the economy, and the emanations by way of increased employment and better lives for our citizens.").

[59] *See* Docket No. 682 at 379:4-24; Docket No. 449:6-22, 450:18 – 452:4.

[60] *See i4i Limited*, 598 F.3d at 863 (noting that the public interest may be served through limitations in the "scope and effect" of an injunction).

[61] *See id.* (noting that where current users and licensees of the infringing product were carved out of an injunction, the public interest was served).

[62] *Bosch*, 659 F.3d at 1149.

[63] *Edwards Lifesciences*, 699 F.3d at 1315 (listing various remedies).

13
Case No.: C 10-03428 PSG
ORDER

IT IS HEREBY ORDERED that pursuant to 35 U.S.C. § 283, A10 and its successors, assigns, officers, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities) during the period commencing on the date hereof and through and including the date of expiration of each of the patents are hereby ENJOINED and RESTRAINED from infringing any claim of U.S. Patent Nos. 7,454,500, 7,558,195, and 7,581,009 by making, using, selling or offering to sell in the United States, or importing into the United States any AX series application delivery controller or any variation thereof not more than colorably different.

Brocade's proposed injunction overreaches. Brocade has established infringement by A10 for only four claims from the three patents-in-issue: claim 25 from the '500 Patent; claims 13 and 24 from the '009 Patent; and claim 1 from the '195 Patent.[64] And yet Brocade seeks an injunction that presumes that the AX series infringes all of the claims in the three patents and bars the sale of the product accordingly.

Brocade argues that it is nevertheless entitled to the broad injunction because it claimed from the start of this litigation that A10's products infringed all of the claims in its patents, and it should not be unfairly prejudiced now because it had to bifurcate its claims at an earlier stage of the trial.[65] But permanent injunctions occur after a trial on the merits and after a finding of infringement.[66] Brocade cannot seek what is in essence a preliminary injunction for the claims it has yet to prove A10 infringed under the rubric of a permanent injunction.[67]

A10 argues that the proposed injunction also is problematic because it bars the sale of the AX series – save for versions that are more than colorably different – on the basis that the products inherently infringe on Brocade's patents even though the AX series is composed of many features, only a few of which have been found to infringe.[68] According to A10, barring the sale of the entire

---

[64] *See* Docket No. 771.

[65] *See* Docket No. 618.

[66] *See Lermer*, 94 F.3d at 1577.

[67] *See Amoco Production Co.*, 480 U.S. at 546 n.12 (noting the additional requirement of likelihood of success on the merits for preliminary injunctions).

14
Case No.: C 10-03428 PSG
ORDER

product pushes the balance too far in Brocade's direction and disserves the public interest because a ban would provide to Brocade a competitive advantage over A10 beyond the advantage provided by its rights of exclusivity from its patents.

The balance between the exclusivity protected by patent law and the public's eventual ability to practice the invention depends on ensuring that the patentee may exercise her exclusivity rights over only her patented invention.[69]  The public interest is not served by extending a patentee's exclusivity to features that are not covered by her patent.[70]  And as the court has already observed, Brocade's patents do not extend to the entire AX series.  Brocade's patents provide exclusivity only to the claims covered therein.  And Brocade has only shown that A10 is infringing four of those claims.[71]

To address these issues, the court will narrow the injunction it enters against A10.[72]  The court finds that A10 should be enjoined from selling AX series devices that include the software and hardware at issue in this trial that the jury found infringes claim 25 of the '500 Patent, claims 13 and 24 of the '009 Patent, and claim 1 of the '195 Patent.  If, as A10's experts asserted at trial,

---

[68] *See* Docket No. 763 at 3075:7-11.

[69] *See Apple II*, 695 F.3d at 1375 (noting that where "the patentee seeks to leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant" an injunction is not warranted); *eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring) (noting that where for example an injunction would preclude sale of an entire device when the patentee holds the patent only to small components included in the device, "legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest").

[70] *See eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring).

[71] *See* Docket No. 771.

[72] A10's legitimate concerns led the court nearly to narrow even further the injunction and prohibit A10 from only the use in its products of the software and hardware infringing on the patents.  But after lengthy consideration, the court could not discern any difference in the net effect if it entered a narrower injunction.  Even under a tapered injunction, A10 still would have to end sales of the current version of its AX series until it could complete a design-around.  The injunction the court enters with this order has the same effect: A10 must stop sales and production of the version of its AX series that infringes Brocade's patents until it can complete a design-around.

15
Case No.: C 10-03428 PSG
ORDER

A10 can design around the infringing features,[73] A10 may continue to sell the AX series without the infringing software, and the public may continue to enjoy the non-infringing features of the product. If A10 cannot design around the infringing features and loses market share as a result, the patented software and hardware are more essential to the product than A10 predicts, and A10 has no entitlement to continue infringement of Brocade's patents only to ensure that A10 remains competitive.[74] Regardless of the outcome, Brocade's exclusive rights to the claims in its patents that it proved A10 infringed are protected.

The court also clarifies that the injunction applies only to future sales and use.[75] Customers of A10 who have already purchased and continue to use infringing AX series devices shall not be affected by this injunction.

This narrowly tailored injunction addresses Brocade's irreparable harm and the inadequacy of legal remedies to compensate for that harm because it protects Brocade's exclusive rights in its patents and ensures that Brocade recaptures whatever market share it should possess through its exclusive exercise of its patents.

The court's injunction also balances the hardships and the public interest more fairly. The public retains access to A10's noninfringing features to the extent they remain viable absent the infringing features. If A10's noninfringing features are not viable absent Brocade's patents, the public loses nothing more than features it would not have received absent A10's infringement. A10 retains the right to continue marketing its product without the infringing features, and to the

---

[73] *See* Docket No. 758 at 2487:20 – 2489:10, 2494:12-23, 2497:23 – 2498:4, 2503:20 – 2504:25.

[74] *See Bosch*, 659 F.3d at 1149.

[75] *See i4i Limited*, 598 F.3d at 863 (approving carve out of customers who already had purchased the infringing software to preserve the public interest). Brocade concedes in its papers that the court should carve out customers who have already purchased and continue to use the infringing AX series products. *See* Docket No. 783 at 14 (noting that "while A10 would be precluded from importing or selling additional AX devices with the infringing HA and GSLB features, the proposed injunction does not affect AX devices previously sold to customers before the injunction goes into effect").

16
Case No.: C 10-03428 PSG
ORDER

degree that A10 creates new features to compete with Brocade's patented software, innovation is promoted.

Brocade's motion for a permanent injunction is GRANTED pursuant to the narrowly tailored injunction the court provides below.

### C. Notice Requirement

Brocade seeks to require A10 to send notice to all of A10's customers of the injunction the court issues.[76] Brocade argues that notice is necessary to protect its rights in its patents by alerting A10's customers that the patented features are available from Brocade. A10 responds that a notice requirement is a "mandatory injunction" disfavored by courts. The cases A10 cites, however, deal with preliminary injunctions, which occur before an adjudication on the merits and in a setting in which the goal is to maintain the status quo pending litigation.[77] Here, Brocade has shown that A10 has infringed claims from its patents.

A10 also argues that the notice requirement serves only as punishment because the jury's award of damages at trial serves as a license for the past infringement and allows customers to continue using the previously infringing products.

Other courts have permitted notice requirements to "protect plaintiff's rights in the [] patent."[78] Because the court has narrowed Brocade's proposed injunction to cover only the relevant features that infringe the four patent claims adjudicated at trial, the court will allow the notice requirement.

---

[76] *See* Docket No. 793 Ex. 1.

[77] *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009); *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa Cnty.*, 550 F.3d 770, 776 (9th Cir. 2008).

[78] *Braintree Lab., Inc. v. Nephro-Tech, Inc.*, 81 F. Supp. 2d 1122, 1137 (D. Kan. 2000); *see also ePlus, Inc. v. Lawson Software, Inc.*, Case No. 3:09cv620, 2011 WL 2119410 at *24 (E.D. Va. 2011).

17
Case No.: C 10-03428 PSG
ORDER

## IV.    CONCLUSION

The court finds that Brocade is entitled to a narrowly tailored injunction to protect its rights to exclusivity against A10's infringement. For the foregoing reasons,

IT IS HEREBY ORDERED that pursuant to 35 U.S.C. S 283, A10 and its successors, assigns, officers, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities), who have actual notice of this injunction, during the period commencing on the date hereof and through and including the date of expiration of each of the patents described herein are hereby ENJOINED and RESTRAINED from making, using, selling, or offering to sell in the United States, or importing into the United States any AX series application delivery controller that includes features that infringe claim 25 from U.S. Patent No. 7,454,500, claims 13 and 24 of U.S. Patent No. 7,581,009, or claim 1 of U.S. Patent No. 7,558,195.

IT IS FURTHER ORDERED that A10 shall provide within 10 business days of issuance notice of this order to all distributors, customers, or third-parties who have ordered, received, or purchased any AX series application delivery controller from A10 or any affiliated entity.

**IT IS SO ORDERED.**

Dated:   January 10, 2013

_Paul S. Grewal_
PAUL S. GREWAL
United States Magistrate Judge