1  Scott R. Mosko (State Bar No. 106070)
   scott.mosko@finnegan.com
2  Scott A. Herbst (State Bar No. 226739)
   scott.herbst@finnegan.com
3  FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
4  Stanford Research Park
   3300 Hillview Avenue
5  Palo Alto, California 94304-1203
   Telephone:   (650) 849-6600
6  Facsimile:   (650) 849-6666

7  Attorneys for Defendant and Counterclaimant
   A10 NETWORKS, INC. and Defendants LEE CHEN,
8  RAJKUMAR JALAN, RON SZETO, and STEVE HWANG

9  (Additional counsel listed on signature page.)

10

11
                    UNITED STATES DISTRICT COURT
12                 NORTHERN DISTRICT OF CALIFORNIA
                          SAN JOSE DIVISION
13

14

| | |
|---|---|
| BROCADE COMMUNICATIONS SYSTEMS, INC., a Delaware corporation; and FOUNDRY NETWORKS, LLC, a Delaware limited liability company,<br><br>           Plaintiffs,<br><br>v.<br><br>A10 NETWORKS, INC., a California Corporation, LEE CHEN, an individual; RAJKUMAR JALAN, an individual; RON SZETO, an individual; LIANG HAN, an individual; and, STEVE HWANG, an individual;<br><br>           Defendants.<br><br>A10 NETWORKS, INC.,<br><br>           Counterclaimant,<br><br>v.<br><br>BROCADE COMMUNICATIONS SYSTEMS, INC. and FOUNDRY NETWORKS, LLC,<br><br>           Counterclaim Defendants. | CASE No. 5:10-cv-03428-PSG<br><br>**DEFENDANT A10 NETWORKS INC.'S REPLY TO BROCADE'S OPPOSITION TO MOTION FOR STAY OF PATENT PERMANENT INJUNCTION PENDING APPEAL**<br><br>Date:      February 4, 2013<br>Time:      3:00 P.M.<br>Location:  Courtroom 5, 4th Floor<br>Judge:     Honorable Paul S. Grewal |

## I.   Introduction

The Court has explicitly found that Brocade did not prove that either (1) the features protected by the asserted patents drove demand for the accused products or (2) Brocade has lost market share or customers due to A10's alleged infringement.  Based on those findings alone, the Court should grant a stay of its Patent Injunction pending appeal.  Under the same relevant factual circumstances, Judge Koh denied Apple's request for a permanent injunction against Samsung – despite the jury's billion-dollar verdict against Samsung and Judge Koh's finding that Apple ***did*** suffer irreparable harm in the form of lost customers, market share and downstream sales.  *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 5:11-cv-01846-LHK, Dkt. No. 2197, at 5:23-24, 6:13 (N.D. Cal. Dec. 17, 2012) ("*Apple III*").  While this issue is headed to the Federal Circuit for resolution, in the interim A10 should not be prejudiced by a contrary interpretation of the law, one that not only conflicts with that of another respected jurist *within this very courthouse*, but which will inflict damage on A10 even though A10 may well prevail on its arguments concerning infringement and validity.

If A10 ultimately loses, monetary damages will make Brocade whole.  But if A10 ultimately prevails, the premature entry of an injunction pending final resolution will have resulted in irreparable harm to A10.  Brocade argues that excerpts from A10's press release regarding the patent injunction prove otherwise.  Snippets from a half-page press release, however, should not govern the Court's decision.  Common sense dictates that A10 risks the permanent loss of customers during the appeals process, as well as a possible (even if ill-conceived) claim of contempt by Brocade, if a stay is not issued.  This is true even though A10 believes that it has successfully designed around the asserted patent claims.

For these reasons, A10 respectfully requests that the Court take the more equitable path and stay its patent injunction pending A10's appeal.

## II. Likelihood of Success on the Merits

### A. Permanent Injunction Analysis

#### 1. Causal Nexus

This Court granted Brocade's motion in part because it "confess[ed] to doubt that the causal nexus as articulated in *Apple II* should be required for all irreparable harms offered in support of a request for a permanent injunction." Dkt. No. 830, at 6 (referring to *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 695 F.3d 1370 ("*Apple II*") (Fed. Cir. 2012)). Furthermore, the Court expressly recognized that the causal nexus required in *Apple II* to support an injunction (albeit, in that case, a preliminary injunction)—*i.e.*, a direct causal link establishing that the patented features drove demand for the product—clearly is not present here. Dkt. No. 830, fn. 26.[1]

Just days after this Court's order issued, it was cited to the Federal Circuit by Apple as evidence of "confusion and controversy" in the law governing patent permanent injunctions. *See* Plaintiff-Appellant's Petition for Initial Hearing *En Banc*, *Apple Inc. v. Samsung Elecs. Co., Ltd.*, Nos. 2013-1129, 2013-1146, at 3 (Fed. Cir. Jan. 16, 2013) ("*Apple II*'s causal nexus requirement has generated significant confusion and controversy . . . ." (citing *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 5:10-cv-3428, Dkt. No. 830, at 1-2 (N.D. Cal. Jan. 10, 2013)). But there can be no dispute that the Supreme Court in *eBay* held that loss of the right of exclusivity provided by a patent is not sufficient proof of irreparable harm to warrant an injunction. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 377, 391 (2006) ("[T]he Patent Act . . . declares that 'patents shall have the attributes of personal property,' including the right to exclude . . . . But the creation of a right is distinct from the provisions of remedies for violations of that right." (internal quotation marks omitted) (citation omitted)).

---

[1] In its opposition, Brocade quotes this Court's permanent injunction order to argue that it has shown a causal nexus. *See* Order Granting Perm. Inj., Dkt. No. 830, at 2 ("[T]he record in this case . . . shows a clear causal nexus between Brocade's loss of exclusivity . . . and A10's infringement . . . ."), *quoted in* Pls.' Opp'n, Dkt. No. 846, at 5. This, however, is not the causal nexus required by the Federal Circuit in *Apple II* – that the infringing features drive demand for the product. Brocade's argument is both circular and legally irrelevant, as there is a causal nexus between the infringement and the loss of exclusivity in every case where infringement is found.

- 3 -

Defs.' Reply ISO Mot. for Stay of Patent Perm. Inj.
Case No. 5:10-cv-03428 PSG

In cases involving patents that cover isolated, relatively minute features of a complex product, the causal nexus standard set forth in *Apple II* provides the appropriate framework for determining whether there has been legally cognizable, irreparable harm sufficient to warrant an injunction. This trend is consistent with the Federal Circuit's repeated admonishment that "minor patent improvements" do not justify the application of the entire market value rule. *See*, *e.g.*, *LaserDynamics, Inc. v. QuantaComputers, Inc.*, 694 F.3d 51, 67-68 (Fed. Cir. 2012). If a minor improvement does not justify the imposition of a royalty based on the entire market value of the end product, it surely does not justify the imposition of an injunction on the same end product, an even more extreme penalty on the accused infringer.

Here, the Court has found that the allegedly infringing features do not drive consumer demand. Dkt. 830, fn. 26.[2] This case (and *Apple v. Samsung*) are thus distinct, for example, from the fact pattern found in *Edwards LifeSciences AG v. CoreValve, LLC*, where the patent at issue for a valve claimed the fundamental design of the accused device produced by CoreValve. 699 F.3d 1305, 1311-12 (Fed. Cir. 2012). Similarly, in *Presidio Components, Inc. v. American Technical Ceramics Corp.*, the defendant's capacitor was found to infringe the plaintiff's patent covering the fundamental features of a particular type of capacitor. Nos. 2012-1355, 2012-1089, 2012 WL 6602786 (Fed. Cir. Dec. 19, 2012). In *Edwards* and *Presidio*, the patent and the infringing product were essentially co-extensive. Neither involved the instant circumstance – the issuance of an injunction despite the fact that the infringing features are but a tiny portion of the accused product *and* an express finding that the infringing features did not drive demand for the accused product.

Presented with the factual circumstances in the same posture as the instant case, Judge Koh reached the exact opposite conclusion. In particular, she found that the *Apple II* causal nexus is a required predicate to the issuance of a permanent injunction in a patent case. *Apple III*, Dkt No. 2197, at 7:6-7 ("The Federal Circuit has been quite clear that a strong showing of harm is not

---

[2] Indeed, absent a showing of causal nexus, even infringing products that are "less valued" without the patented feature, or even "*inoperable*," do not warrant injunction. *Apple II*, 695 F.3d at 1376.

enough; Apple must link any harm it suffers directly to Samsung's infringement."). Apple has appealed that conclusion to the Federal Circuit, which presumably will resolve it. Given the clear directive of the Federal Circuit in *Apple II* and its application by Judge Koh, A10 respectfully submits that the Court should stay its patent injunction in this case at least until the Federal Circuit further addresses this issue.

### 2. There Is No Evidence Of Irreparable Harm Due to A10's Alleged Infringement

In its order granting permanent injunction, this Court found that Brocade did not prove any loss of market share attributable to A10's alleged infringement. Dkt. No. 830, n.26 at 7 ("Brocade has not presented sufficient evidence to support its contention that its loss of market share and sales was the result of A10's infringement."). The Court also found that Brocade did not prove that the features *actually claimed* by its patents have driven demand for either party's sales. *Id.* Remarkably, Brocade's opposition not only ignores but flat out contradicts these findings, asserting that "Brocade has lost customers and market share to A10." Dkt. No. 846, at 4. The Court's findings nullify every argument that Brocade has raised and continues to champion in support of its suddenly urgent bid to enjoin A10 immediately. Brocade's protestations are also belied by the fact that it waited for years to bring this lawsuit and never sought a preliminary injunction for the alleged infringement of its patents.

Brocade's reliance upon the fact that it competes with A10 (*see* Pls.' Mot. for Perm. Inj., Dkt. No. 783, at 4) is of no moment where there is no evidence of a causal nexus between the alleged infringement and the alleged harm. Brocade lost customers or market share because A10's products and services (and, presumably, the products and services of others in the marketplace) are superior to Brocade's for reasons entirely unrelated to the asserted patents.

Because Brocade has no evidence that it has suffered loss of sales or market share due to the alleged infringement, it ultimately resorts to the unsubstantiated argument that, absent an injunction, A10 would be unable to satisfy its liability at law. But here again the Court has already rejected Brocade's argument. *See* Dkt. No. 830, at 6 n.21 ("Brocade has provided no evidence that A10 is subject to the same threat of bankruptcy or financial stress as the defendant in

*Bosch*."). And logic dictates that a company that is not enjoined is more likely, not less likely, to avoid financial stress.

Thus, the Court has already considered and implicitly rejected Brocade's contentions that it will suffer irreparable harm if the Court stays its patent injunction pending appeal.

### B. Direct Infringement

All four of the asserted patent claims require that the claimed system, switch or device be specifically "configured" or "adapted" to carry out claimed functions. This Court expressly recognized that, contrary to the arguments Brocade has been making throughout this case, Brocade's patent claims do in fact require *more than mere capability*. JMOL Order, Dkt. No. 845, at 21-22. However, citing *Fantasy Sports* and *Finjan,* this Court held that, in cases involving devices controlled by software, such devices are in fact configured to carry out the specific function if in fact the software is merely capable of carrying out those functions. *Id.* at 23.

A10 believes that this finding is incorrect, and irreconcilable with the cases establishing that mere capability is not the same as actual configuration – even in cases involving devices running software. All of the relevant cases direct the analysis to the language of the claims. In *Fantasy Sports*, the claims at issue were "means for" claims that, on their face, only claim capability and do not claim actual configuration. In *Finjan*, the claims are similarly, and explicitly, directed to capability and not configuration (*e.g.*, a "logical engine for preventing execution"). Here, in sharp contrast, each of the claims requires, specifically, that the switch/system/device be "configured" or "adapted" in a specific way. And the evidence is un-contradicted that, as shipped, the AX series devices are not so configured or adapted. For this reason, A10 is likely to succeed on the merits and overturn the jury's infringement verdict.

## III. Balance of Harms

### A. Possible Loss of Customers and Ill-conceived Assertions of Contempt

It is true that A10 prudently engaged in a redesign effort and announced that effort to its customers when the injunction issued. Moreover, the Court ordered A10 to provide notice of the injunction to all its customers, (Dkt. No. 830 at 17-18), and A10 has done so. In this environment, A10 is, not surprisingly, dealing with questions from concerned customers every day. The cloud

of an injunction does not just go away overnight and, despite its best efforts, A10 is very much at risk of losing additional customers should the injunction not be stayed pending appeal.

In addition, despite A10's good faith efforts in developing and implementing its redesign—and despite Brocade's repeated reliance on that redesign in opposing this request for a stay—there is no assurance that Brocade (or this Court) will ultimately agree that A10's redesign successfully avoids infringement. Indeed, Brocade may argue precisely the opposite. Accordingly, and contrary to Brocade's cynical suggestion that the redesign moots the need for a stay, it is entirely appropriate to issue a stay pending appeal even when a workaround has been deployed. *E.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc*, 694 F.3d 1312, 1342 (Fed. Cir. 2012) (noting that the Federal Circuit issued a stay of the permanent injunction pending appeal even where the defendant needed only eight months to implement its design-around); *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 863-64 (Fed. Cir. 2010) (noting that a stay was granted in a case where the defendant required only six months to remove infringing features from its products).

### B. Patent Reexamination Proceedings

As A10 has already advised the Court, in the course of the inter partes reexamination proceedings, the PTO has twice rejected each of the patent claims that the jury considered at trial. Brocade claims that "courts have rejected A10's argument that interim reexam results are a basis to stay or deny an injunction." Dkt. No. 846 at 6 n.3. But courts have done no such thing, and one of the cases cited by Brocade expressly **granted** a stay of a permanent injunction pending reexamination. *See, e.g. Standard Havens Prods. v. Gencor Industries, Inc.*, 1993 WL 172432, at *1 (Fed. Cir. 1993) (unpublished) ("Accordingly, we reverse the decision of the district court as based on legal error and remand with instructions to stay the imposition of the permanent injunction and to stay any further proceedings respecting damages until the reexamination decision becomes final."). The status and stage of reexamination proceedings are unquestionably relevant to the balance of equities. *See, e.g.*, *Standard Havens Prods. v. Gencor Industries, Inc.*, 897 F.2d 511, 514 (Fed. Cir. 1990) (finding that plaintiff had shown "a substantial legal question regarding validity," directly relevant to the likelihood of success prong in the standard for a stay pending appeal, by pointing to collateral reexamination proceedings). In fact, courts sometimes stay trial

- 7 -

Defs.' Reply ISO Mot. for Stay of Patent Perm. Inj.
Case No. 5:10-cv-03428 PSG

proceedings altogether pending the results of PTO reexaminations. *See, e.g.*, *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) ("When a district court stays patent validity proceedings before it until completion of a reexamination proceeding, that stay must be accepted if the purpose of the reexamination statute is to be preserved."). If the PTO rejection of Brocade's asserted patents becomes final, as appears likely, it would be necessary to dissolve any injunction based on those claims, assignor estoppel notwithstanding. *See, e.g.*, *Total Containment v. Environ Prods., Inc.*, 921 F. Supp. 1355, 1380(E.D. Pa. 1995) ("This court has ruled that the doctrine of assignor estoppel does not apply to claims cancelled during reexamination proceedings because an equitable doctrine may not circumvent the operation of a statute."); *see also Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine, Inc.*, 68 U.S.P.Q.2d 1755, 1758-60 (E.D. Mich. 2003) (ordering a stay of pending reexamination and noting that the stay was proper even if assignor estoppel applied to the defendant); *Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp. 2d 440, 442 (D.N.H. 1997) (notwithstanding assignor estoppel, "the court determines that a stay [pending reexamination] in this case is appropriate").[3]

## IV.  Conclusion

For all the foregoing reasons A10 respectfully requests the Court stay its patent injunction pending appeal.

Dated: January 26, 2013

Respectfully submitted,
IRELL & MANELLA

By: */s/ Morgan Chu*
  Morgan Chu

Attorneys for Defendant and Counterclaimant A10 NETWORKS, INC. and Defendants LEE CHEN, RAJKUMAR JALAN, RON SZETO and STEVE HWANG

---

[3] A10 believes it will succeed in showing, on appeal, that the doctrine of assignor estoppel (even if it remains good law) was improperly applied here.

- 8 -

Defs.' Reply ISO Mot. for Stay of Patent Perm. Inj.
Case No. 5:10-cv-03428 PSG

Additional Counsel:

Mark A. Flagel (SBN 110635)
Mark.Flagel@lw.com
Robert Steinberg (SBN 126407)
Bob.Steinberg@lw.com
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

Morgan Chu (SBN 70446)
MChu@Irell.com
David Nimmer (SBN 97170)
DNimmer@irell.com
Elliot Brown (SBN 150802)
EBrown@irell.com
H. Annita Zhong (SBN 266924)
HZhong@irell.com
IRELL & MANELLA, LLP
1800 Avenue Of The Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

E. Robert Yoches (Admitted Pro Hac Vice)
bob.yoches@finnegan.com
John F. Hornick (Admitted Pro Hac Vice)
john.hornick@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Lionel M. Lavenue (Admitted Pro Hac Vice)
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, Virginia 20190-5675
Telephone: (571) 203-2700
Facsimile: (202) 408-4400

- 9 -

Defs.' Reply ISO Mot. for Stay of Patent Perm. Inj.
Case No. 5:10-cv-03428 PSG