1

2

3

4

5

6

7

8

9     UNITED STATES DISTRICT COURT

10    NORTHERN DISTRICT OF CALIFORNIA

11    SAN JOSE DIVISION

12   BROCADE COMMUNICATIONS SYSTEMS, )     Case No.: C 10-3428 PSG
     INC., ET AL.,                   )
13                                   )     **ORDER RE A10'S MOTIONS TO**
                                     )     **STAY THE PERMANENT**
14            Plaintiffs,            )     **INJUCTIONS OR TO MODIFY THE**
        v.                           )     **INJUNCTIONS**
15                                   )
     A10 NETWORKS, INC., ET AL.,     )
16                                   )     **(Re: Docket Nos. 833, 837, 852)**
              Defendants.            )
17   _____)

18

19         On August 6, 2012, a jury found Defendant A10 Networks, Inc. ("A10") liable for, among

20   other things, misappropriation of trade secrets and infringement of patents owned by Brocade

21   Communications Systems, Inc., et al ("Brocade").[1]   Thereafter, the court entered two permanent

22   injunctions against A10, the first on January 10, 2013 prohibiting further patent infringement[2] and

23   the second on January 23, 2013 enjoining further possession and use of the misappropriated trade

24   secrets.[3]

25

26   _____

27   [1] *See* Docket No. 711.

28   [2] *See* Docket No. 830.

Case No.: C 10-03428 PSG
ORDER

A10 now moves to stay those injunctions pending appeal.[4]  A10 has three requests in the alternative: (1) a temporary stay from this court until it can seek a stay pending appeal from the Federal Circuit; (2) a modification of the injunctions to include sunset provisions; or (3) a modification of the terms of the trade secret injunction.[5]  The parties appeared for a hearing on these motions on February 4, 2013.[6]  Having carefully considered the parties' various papers and their arguments at the hearing, the court DENIES A10's requests for stays of the injunctions pending appeal and DENIES A10's alternative requests to stay the injunctions pending a request to the Federal Circuit for relief and to add sunset provisions.  The court GRANTS-IN-PART A10's request to modify the terms of the trade secret injunction.

## I.    BACKGROUND

As the court has already noted several times, earlier orders provide in detail the background of the dispute at issue.[7]  The court therefore provides here only the limited facts necessary to provide context to the motions before it.

Brocade brought numerous claims of trade secret misappropriation, patent infringement, copyright infringement, and various contractual claims against A10 and several individual defendants.[8]  Many of the claims were either dismissed or were bifurcated and held for a later trial.[9]  Of the remaining claims, Brocade pursued a copyright infringement claim, four patent

---

[3] *See* Docket No. 848.

[4] *See* Docket Nos. 833, 837, 852.

[5] *See* Docket Nos. 833, 837, 852.

[6] *See* Docket No. 876.

[7] *See* Docket Nos. 434, 438, 845.

[8] *See* Docket No. 85.

[9] *See* Docket No. 86 at 15:6-13; Docket No. 618 at 82:16-21.

Case No.: C 10-03428 PSG
ORDER

United States District Court
For the Northern District of California

infringement claims, four trade secret misappropriation claims, an intentional interference with contractual relations claim, and a claim for breach of contract.

After the three-week trial, a jury found A10 liable for patent infringement, copyright infringement, trade secret misappropriation, and intentional interference with contractual relations.[10]  Following the verdict, Brocade moved for a permanent injunction to prohibit A10 from further patent infringement and trade secret misappropriation.[11]  A10 in turn moved for judgment as a matter of law ("JMOL") on all of the findings of liability and the damages awards.[12]  On January 10, 2013, the court enjoined A10 from continuing its patent infringement ("patent injunction").[13]  The court also denied A10's request for JMOL on the liability issues but granted A10 a new trial for the patent damages award and the punitive damages award for the intentional interference with contractual relations.[14]  On January 23, 2013, the court enjoined A10 from continuing to practice the misappropriated trade secrets ("trade secret injunction").[15]

Following entry of the patent injunction, A10 moved on an ex parte basis for an "emergency" motion to stay the injunction pending the court's ability to hear and decide on its simultaneous motion to stay pending appeal or in the alternative either to stay the injunction pending request to the Federal Circuit for a stay or to modify the injunction to include a four-week sunset provision.[16]  Noting press releases in which A10 representatives trumpeted how the

---

[10] See Docket No. 771.

[11] See Docket No. 783.

[12] See Docket No. 775.

[13] See Docket No. 830.

[14] See Docket No. 831.

[15] See Docket No. 848.

[16] See Docket No. 832.

3

Case No.: C 10-03428 PSG
ORDER

injunction would have nary an effect on A10's shipment of products,[17] the court denied A10's "emergency" stay motion, leaving the patent injunction in place since January 10, 2013.

Following entry of the trade secret injunction, A10 again moved on an ex parte basis for an "emergency" motion to stay that injunction.[18]  A10 pointed to concerns regarding the description of one of the trade secrets in the injunction, the lack of a current customer "carve-out," and the inclusion of attorneys as parties to whom the injunction applied.  A10 again sought a stay of the injunction pending the court's ability to hear and decide on a motion to stay pending appeal, stay pending request to the Federal Circuit for a stay, or modify the injunction to add a sunset provision and to address A10's concerns.  The court granted this emergency stay until the hearing on A10's stay motions, which occurred on February 4, 2013.  At that hearing the court extended the stay until the court issued its decision on the motion.[19]

The court now provides that decision.

## II.    LEGAL STANDARDS

A motion to stay an injunction is in many ways the mirror image of the earlier successful request for the preliminary or permanent injunction.  As with requests for injunctions, the court addressing a request for a stay must consider four factors[20] (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the

---

[17] *See, e.g.*, "A10 Networks Customers Not Impacted By Narrow Patent Injunction in Brocade Ruling," IT News Online, Jan. 11, 2013, http://www.itnewsonline.com/showprnstory.php?storyid=251372; Joseph F. Kovar, "Brocade, A10 Both Declare Victories In Ongoing Intellectual Property Lawsuit." CRN, Jan. 11, 2013, http://www.crn.com/news/networking/240146156/brocade-a10-both-declare-victories-in-ongoing-intellectual-property-lawsuit.htm;jsessionid=OlCvHpDut6wVRAi0RaK+TA**.ecappj03?pgno=2.

[18] *See* Docket Nos. 850, 851.

[19] *See* Docket No. 876.

[20] *See, e.g., Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1323 (Fed. Cir. 2012).

4

Case No.: C 10-03428 PSG
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

other parties interested in the proceeding"; and (4) "where the public interest lies."[21]  "[T]he four factors can effectively merge" such that the court essentially "assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public."[22]  The Federal Circuit instructs that "[e]ach factor . . . need not be given equal weight" and that "[w]hen harm to applicant is great enough, a court will not require a strong showing that applicant is likely to succeed on the merits."[23]

The court also has wide discretion to modify its injunction[24] and "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."[25]

### III.    DISCUSSION

**A.    Motion to Stay**

As a preliminary matter, the court notes a dispute inherent in the parties' arguments regarding the appropriate standard for the motion to stay.  Brocade argues that the Federal Circuit's sliding scale standard set forth in *Standard Havens* conflicts with the Supreme Court's more recent decision in *Winter v. Natural Resources Defense Council*.[26]  In *Winter*, the Court rejected a similar sliding scale approach used by the Ninth Circuit in the preliminary injunction context.[27]  A10 counters that a motion to stay is sufficiently different from a preliminary injunction that the

---

[21] *See Standard Havens Prod. Inc. v. Gencor Indus. Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990).

[22] *See id.*

[23] *See id.* at 512-13 (internal quotations omitted).

[24] *See System Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 647, 648 (1961).

[25] Fed. R. Civ. P. 60(b).

[26] 555 U.S. 7 (2008).

[27] *See id.* at 20-21.

5

Case No.: C 10-03428 PSG
ORDER

*Standard Havens* standard survives *Winter*.[28]  Although the court has serious doubts that *Standard Havens* could or would be decided the same way after *Winter*, it declines to resolve this question because under either version of the standard, A10 has not made a sufficient showing to warrant a stay of either the patent injunction or the trade secret injunction.

The court first addresses the request to stay the patent permanent injunction and then turns to the request to stay the trade secret injunction.

### 1.      Patent Permanent Injunction

#### a.      Likelihood of Success on Appeal

A10 points to three issues on which it believes it is likely to succeed in its appeal of the injunction: (1) Brocade failed to prove direct infringement; (2) Brocade failed to show a "causal nexus" between the infringement and irreparable harm; and (3) A10 should have been able to challenge the validity of the patents at trial.[29]

A10's first argument regarding failure to prove direct infringement echoes the argument it proffered in its renewed motion for judgment as a matter of law ("JMOL").[30]  As here, A10 argued there that because of the use of the phrases "configured to" and "adapted to" in the claims from the three patents-at-issue, Brocade had to show that users activated the software to prove direct infringement.[31]  In its January 10, 2013 order regarding A10's JMOL ("JMOL order"),[32] the court pointed to *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*[33] and *Finjan, Inc. v. Secure*

---

[28] A10 did not address *Winter* in its papers but did so at the hearing.  *See* Docket No. 876.

[29] *See* Docket No. 837.

[30] *See* Docket No. 775.

[31] *Compare* Docket No. 775 *with* Docket No. 837.

[32] *See* Docket Nos. 831, 845.

[33] 287 F.3d 1108, 1118 (Fed. Cir. 2002).

6

Case No.: C 10-03428 PSG
ORDER

United States District Court
For the Northern District of California

*Computing Corp.*[34] in holding that inclusion in A10's software of Brocade's patented features could give rise to infringement even if users did not activate the features.[35]   As it did in its JMOL, A10 argues that *Fujitsu Ltd. v. Netgear, Inc.*[36] requires Brocade to show a user activated the function to show direct infringement.   As the court further explained in its JMOL order, however, *Fujitsu* involved a method claim which by necessity requires that all steps of the method be performed for infringement to occur.[37]

A10 asserts that because two of the cases cited in *Fujitsu*, *Intel Corp. v. U.S. International Trade Commission*[38] and *Acco Brands, Inc. v. ABA Locks Manufacturer*[39] involved apparatus claims, *Fujitsu* applies to apparatus claims as well as method claims.[40]  In *Intel*, the Federal Circuit held that for a claim describing "programmable selection means," "the accused device, to be infringing, need only be capable of operating" in the infringing mode.[41]  In *Acco*, the Federal Circuit held that where the accused product – a padlock – could operate in two modes, only one of which was infringing, the patentee had to show use in the infringing mode because the patent claimed only that operation.[42]

---

[34] 626 F.3d 1197, 1205 (Fed. Cir. 2010).

[35] *See* Docket No. 845.

[36] 620 F.3d 1321, 1329 (Fed. Cir. 2010).

[37] *See* Docket No. 845.

[38] 946 F.2d 821 (Fed. Cir. 1991).

[39] 501 F.3d 1307 (Fed. Cir. 2007).

[40] *See* Docket No. 837.

[41] 946 F.2d at 832.

[42] 501 F.3d at 1313.

Case No.: C 10-03428 PSG
ORDER

As the court noted in its JMOL order, the claim language of Brocade's patents cannot be interpreted to mean "capable of"[43] and so *Intel* is inapplicable.  But as the Federal Circuit explained in *Finjan* and *Fantasy Sports*, in an apparatus claim involving software, inclusion of an infringing mode of operation nevertheless suffices to show infringement regardless of whether a user ever activates the infringing feature.[44]  A10 fails to explain why *Finjan* and *Fantasy Sports* do not control.  The court therefore finds A10's argument regarding direct infringement does not show sufficiently a likelihood of success on appeal.

Citing to *Apple, Inc. v. Samsung Elecs. Co.*,[45] A10 next argues that Brocade failed to show the requisite causal nexus between its claims for irreparable harm and A10's infringement.  But the court explained in its JMOL order, regardless of whether the causal nexus standard is appropriate in the permanent injunction context, unlike in *Apple* Brocade showed that A10's infringement caused Brocade's irreparable injury, namely the exclusive practice of its patents.  Because Brocade's right to exclude a direct competitor from practicing its patents cannot be remedied through damages, an injunction is appropriate.[46]  The Federal Circuit recently has emphasized the importance of exclusivity in the permanent injunction context,[47] and so the court finds this argument likewise does not support a likelihood of success on appeal.[48]

---

[43] *See* Docket No. 845.

[44] *See Finjan*, 626 F.3d at 1205; *Fantasy Sports*, 287 F.2d at 1118.

[45] 678 F.3d 1314, 1324 (Fed. Cir. 2012).

[46] *See Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1315 (Fed. Cir. 2012).

[47] *See Presidio Components, Inc. v. American Technical Ceramics Corp.*, 702 F.3d 1351 (Fed. Cir. 2012); *Edwards Lifesciences*, 699 F.3d at 1315.

[48] The court further notes that since the patent injunction in this case the Federal Circuit twice has declined *en banc* review of the causal nexus standard.  *See Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 2012-1507 (Fed. Cir. Jan. 31, 2013); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 2013-1129, 2013 WL 444755 (Fed. Cir. Feb. 4, 2013).

Case No.: C 10-03428 PSG
ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A10 finally argues that, prior to reassignment to the undersigned, Judge Koh erroneously granted summary judgment on the issue of assignor estoppel, which precluded A10 from arguing that Brocade's patents are invalid.[49]  To the extent that A10 challenges the doctrine of assignor estoppel itself, the court must reiterate Judge Koh's observation that the doctrine remains viable under *Diamond Scientific Co. v. Ambico, Inc.*,[50] whatever the status of the licensee estoppel doctrine.  Unless and until the Federal Circuit says otherwise, the court again rejects A10's invitation to undermine a viable doctrine of law.[51]

As to A10's argument that Judge Koh erred by finding no genuine dispute of material fact regarding A10's privity with Rakjumar Jalan ("Jalan"), who assigned rights in the patents-at-issue to Foundry and thereby Brocade,[52] A10 likewise fails.  As the undersigned sees it, Judge Koh properly applied *Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*[53] and correctly found that the disputes of fact A10 raised in its opposition were immaterial to the issue of its privity with Jalan.  As Judge Koh explained, Jalan indisputably and notably had a leadership role at A10, the company changed its product line after he joined A10 to produce the infringing product, and Jalan participated in the design of the infringing product.[54]  On those grounds among others, Judge Koh properly granted summary judgment on the issue of privity between A10 and Jalan.  A10 may disagree with Judge Koh's determination, but it has not met its burden to show that it is likely to succeed on appeal on its assignor estoppel argument.

---

[49] *See* Docket No. 837.

[50] 848 F.2d 1220, 1224-25 (Fed. Cir. 1988).

[51] *See* Docket No. 845 at 12 n.55.

[52] *See* Docket No. 592.

[53] 903 F.2d 789, 793 (Fed. Cir. 1990).

[54] *See* Docket No. 592.

9

Case No.: C 10-03428 PSG
ORDER

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Having determined that A10 has not shown at all a likelihood of success on appeal, the court could deny the motion to stay on those grounds alone.  The court nevertheless considers A10's arguments on the remaining factors.

### b.    Irreparable Injury and Balance of Hardships

A10 combines the irreparable harm and balance of hardships factors to argue in essence that the potential harm to Brocade from the injunction being stayed is far less than the harm to A10 if the injunction remains in place.[55]  A10 argues that it will suffer reputational harm and that the injunction threatens its primary source of revenues.  A10 further argues that the ServerIron product in which Brocade exercises its patents is one of many lines of products and therefore any harm to Brocade would be far less than the harm to A10.

As the court noted at the hearing regarding A10's ex parte motion to stay the injunction, A10's executives have indicated to the press that the design-arounds to the infringing features are already in place and the injunction will not disrupt A10's shipment of product.[56]  The court also notes that any reputational harm most likely occurred when the jury found A10 liable for patent infringement and the parties engaged in competing press releases detailing the results of the trial.[57]  As to Brocade's harm, the court detailed that harm in its order granting the injunction and so only

---

[55] *See* Docket No. 837.

[56] *See* Docket Nos. 836, 854; *see also* "A10 Networks Customers Not Impacted By Narrow Patent Injunction in Brocade Ruling," IT News Online, Jan. 11, 2013, http://www.itnewsonline.com/showprnstory.php?storyid=251372; Joseph F. Kovar, "Brocade, A10 Both Declare Victories In Ongoing Intellectual Property Lawsuit." CRN, Jan. 11, 2013, http://www.crn.com/news/networking/240146156/brocade-a10-both-declare-victories-in-ongoing-intellectual-property-lawsuit.htm;jsessionid=OlCvHpDut6wVRAi0RaK+TA**.ecappj03?pgno=2.

[57] *See, e.g.*, "Brocade awarded $112M verdict in dispute with A10," Computerworld, Aug. 7, 2012, http://www.computerworld.com/s/article/9230038/Brocade_awarded_112M_verdict_in_dispute_w ith_A10 ; "A10 Networks Receives Jury Verdict Finding No Willful Infringement in Patent Lawsuit against Brocade Communications Systems Inc. and Foundry Networks," PR Newswire, Aug. 7, 2012, http://www.prnewswire.com/news-releases/a10-networks-receives-jury-verdict-finding-no-willful-infringement-in-patent-lawsuit-against-brocade-communications-systems-inc-and-foundry-networks-165299976.html.

10

Case No.: C 10-03428 PSG
ORDER

1    repeats here that absent an injunction Brocade cannot exclusively exercise its patents and preclude

2    a direct competitor from infringing.[58]

3          The court also feels obligated to correct a misstatement of law in A10's motion.  In its

4    papers, A10 states that the court's finding that the loss of exclusivity could be the basis for

5    Brocade's irreparable harm "is squarely at odds with *eBay*, which vitiated the presumption of

6    irreparable harm and placed the burden of proving actual irreparable harm on patentees."[59]  A10

7    misreads *eBay v. MercExchange, LLC*.[60]  The Supreme Court did not end the presumption of

8    irreparable harm upon a finding of infringement;[61] the Federal Circuit ended that practice in *Robert*

9    *Bosch v. Pylon*.[62]  In *eBay*, the Court only mandated that the traditional four factors for permanent

10   injunctions applied with equal force in the patent context and that infringement did not create a

11   presumption toward an injunction.[63]  It was the Federal Circuit in *Bosch* that went further and held

12   that no presumption of irreparable harm arose upon a finding of infringement.[64]

13         But nothing in either *eBay* or *Bosch* suggests that the loss of exclusivity cannot be the basis

14   for a showing of irreparable harm.  Such a statement actually would be "squarely at odds" with the

15   Court's other holding in *eBay* that "broad classifications" and "categorical rules" are inappropriate

16   in the consideration of an injunction request.[65]  In *Bosch*, the Federal Circuit in fact expressly

17   explained that exclusivity remained an important factor and cited to cases post-dating *eBay* in

_____

[58] *See* Docket No. 845.

[59] *See* Docket No. 837.

[60] 547 U.S. 388 (2006).

[61] *See id.* at 391 (holding that the four factors "apply with equal force to disputes arising under the Patent Act").

[62] 659 F.3d 1142, 1151 (Fed. Cir. 2011).

[63] *See* 547 U.S. at 391.

[64] *See* 659 F.3d at 1151.

[65] *See* 547 U.S. at 393.

11

which the court approved loss of exclusivity as a basis for irreparable harm.[66]  The Federal Circuit's recent decisions in *Edwards Lifesciences AG v. CoreValve, Inc.*[67] and *Presidio Components v. American Technical Ceramics Corp.*[68] further supports the court's finding that Brocade's loss of exclusivity could result in irreparable harm.

> *eBay* and *Bosch* require only that patentees show that they are in fact losing an exclusive right because they can no longer rely on the finding of infringement to satisfy that requirement. Here, Brocade and A10 are direct competitors, there is no indication that Brocade licenses its patents, and it is forced to compete against its patents absent an injunction.  Brocade made sufficient showing of irreparable harm to support entry of an injunction.  And in light of the minimal harm to A10 that A10 itself stated, the balance favors Brocade and continued enforcement of the injunction.

### c.      Public Interest

> A10 argues that public interest supports staying the injunction to ensure that innovators such as A10 may continue to use their skills in support of the public's access to new technology.[69] A10 also points to an invalidity finding of the patents at issue at the United States Patent and Trademark Office to suggest that the public is disserved by enforcement of invalid patents.[70]

---

[66] *See* 659 F.3d at 1150 (noting that "[a]lthough the Supreme Court disapproved of this court's absolute reliance on the patentee's right to exclude as a basis for our prior rule favoring injunctions, that does not mean that the nature of patent rights has no place in the appropriate equitable analysis" and pointing to *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008), in which the court affirmed a finding of irreparable harm on the basis of a loss of exclusivity).

[67] 699 F.3d 1305 (Fed. Cir. 2012).

[68] 702 F.3d 1351 (Fed. Cir. 2012).

[69] *See* Docket No. 837.

[70] *See* Docket No. 454 Exs. 8, 12; Docket No. 800 Exs. 1, 2.

Case No.: C 10-03428 PSG
ORDER

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

The invalidity argument is not before the court because, as described earlier, Judge Koh properly found A10 was in privity with Jalan and therefore subject to the same assignor estoppel doctrine as Jalan.  The court further finds that because A10 apparently has already developed a new design-around, the public is not left without access to noninfringing features of A10's product.  The injunction also already carves out current customers.  The public interest therefore is not disserved by continued enforcement of the injunction.

Because the court finds that A10 has not shown that it is likely to succeed on the merits of its appeal, that it will suffer harm from the injunction that outweighs the harm Brocade will suffer absent the injunction, or that the public interest is served by a stay, A10's request is DENIED.  In light of the time that has already passed from the issuance of the injunction and A10's public representations that it had already completed design-arounds, the court also DENIES A10's request for a four-week sunset provision.

### 2.    Trade Secret Permanent Injunction

#### a.    Likelihood of Success on Appeal

A10 proposes several grounds on which it expects to prevail on appeal of the trade secret injunction the court entered on January 23, 2013: (1) Brocade was fully compensated for past harm and no future harm is threatened; (2) the trade secrets are public; and (3) Brocade provided insufficient evidence to show trade secret misappropriation.[71]

The court addressed the insufficiency of evidence argument in its JMOL order[72] and adopts here the details from that order regarding the finding that Brocade provided sufficient evidence to support the jury's trade secret misappropriation verdict.  Suffice it to say here that Brocade provided sufficient evidence that A10 used Brocade's trade secrets, that Brocade took steps to keep those secrets confidential and that they remained confidential, and that A10 did not independently

---

[71] *See* Docket No. 852.

[72] *See* Docket No. 845.

Case No.: C 10-03428 PSG
ORDER

derive the trade secrets.  A10 may disagree with the court's finding, but it has not shown that it is likely to succeed on appeal on this argument.

The court also addressed A10's arguments regarding the subsequent publicity of the trade secrets at some point after the misappropriation took place.  In its injunction order, the court evaluated the evidence proffered by both A10 and Brocade for each of the trade secrets to determine whether Brocade's trade secrets no longer remained secret.[73]  The court also addressed A10's argument that Brocade expert James Malackowski's ("Malackowski") testimony regarding the head start period for the trade secret damages calculation somehow acted as a concession by Brocade that the secrets could have been independently derived by this point in time.[74]  A10 unsurprisingly disagrees with the court's assessment of the evidence and its arguments, but disagreement with the court is not sufficient to show that there is a likelihood of success on appeal.

As to A10's contention that the court impermissibly made findings absent an evidentiary hearing, the court conducted a hearing regarding the injunction requests on November 8, 2012.[75]  A10 had its opportunity at that time to present its evidence regarding its argument that the trade secrets had become public.

A10 also points to Malackowski's testimony to argue that it will prevail on appeal because Brocade did not show future harm from the continued use and practice by A10 of its trade secrets.[76]  The court repeats here in summary form its assessment of Malackowski's testimony to underscore why A10's argument fails.  Malackowski, a damages expert and not a trade secrets expert, testified about how much time A10 saved from misappropriating Brocade's trade secrets

---

[73] *See id.*

[74] *See id.*

[75] *See* Docket No. 822.

[76] *See* Docket No. 852.

14

Case No.: C 10-03428 PSG
ORDER

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

and, using that time, calculated the amount of unjust enrichment damages to which Brocade was entitled.[77]  Malackowski did not testify that independent development of Brocade's trade secrets was inevitable or probable or even possible.  He testified instead about the shortcut in time that A10 enjoyed from misappropriating Brocade's trade secrets.  A10's argument that Malackowski conceded that A10 would have independently developed Brocade's trade secrets and therefore no future injury exists therefore fails.

A10 has not shown that it is likely to succeed on appeal of the trade secret injunction.  Once again, on these grounds alone, the court may deny the motion to stay the injunction, but it will consider the remainder of A10's arguments.

### b.        Irreparable Harm of the Parties

A10 makes several arguments regarding the irreparable injury that would befall it if the injunction, as currently drafted, were to take effect.  A10 points to the ability to service its current customers, its attorneys' ability to use the trade secrets during this litigation and likely appeals, and an overbroad description of Trade Secret 11.  As described in further detail below, the court finds that it can address A10's concerns by modifying the injunction.  As modified, A10 will be able to provide service to its current customers, Trade Secret 11 will be more appropriately defined, and A10's attorneys will be able to continue to access the trade secrets to aid A10 in its litigation.

Because the concerns above are addressed by the court's modifications, A10's harm arises only from its inability to continue to sell its products with Brocade's trade secrets.  A10 concedes that it will be able to remove or design around the misappropriated features within six weeks.[78]  In light of A10's ability to address the trade secret issue in its products and Brocade's ongoing injury

---

[77] *See* Docket No. 757 at 2379:1-10.

[78] *See* Docket No. 852 Ex. 1 at ¶¶ 3-4.

15

Case No.: C 10-03428 PSG
ORDER

**United States District Court**
For the Northern District of California

from A10's use of the misappropriated trade secrets, the court finds A10 has not shown sufficient harm that outweighs the harm to Brocade from a failure to enforce the injunction.

### c.   Public Interest

Even though the court has already determined that A10 has not shown sufficient likelihood of success on appeal or irreparable harm that is not addressed by the modifications below, the court briefly addresses A10's public interest arguments.  Aside from its arguments that its customers will be injured absent a stay – which the court addresses with its modifications below – A10 proffers policy arguments for staying the injunction.[79]  The court agrees with A10 that a robust intellectual property system is important and recognizes the role of protecting intellectual property rights as part of ensuring the integrity of that system, which is why an injunction preventing A10 from continuing to benefit from misappropriated trade secrets is appropriate.

### B.   Motion to Modify the Injunction

As the court noted above, A10 seeks modification of the trade secret injunction to address three concerns: (1) an overbroad description of Trade Secret 11; (2) the ability to continue to provide service to current customers; and (3) whether A10's attorneys may have access to the trade secrets.  A10 also seeks a six-week sunset provision to implement its redesigned code.  The court addresses each concern in turn.

### 1.   Description of Trade Secret 11

A10 contends and Brocade agrees that the description of Trade Secret 11 in the court's original injunction is overbroad and describes general functionality rather than the specific feature described by the trade secret.[80]  The court likewise agrees that the description of Trade Secret 11 in the injunction needs to be modified.  Brocade submitted a proposed amendment to the injunction

---

[79] *See* Docket No. 852.

[80] *See* Docket Nos. 852,

Case No.: C 10-03428 PSG
ORDER

that adds the details that particularly describe the trade secret.[81]  The court has reviewed Brocade's proposed injunction and finds that it appropriately and specifically describes Trade Secret 11.  The court will modify the injunction accordingly.

### 2.    Carve-Out for Current Customers

A10 asserts that to provide service to its current customers, its employees and agents must continue to have and to use a full version of the AX Series source code, which includes code with the misappropriated trade secrets.[82]  A10 argues that the court should modify the injunction to allow A10 and its employees and agents to continue to possess and to use the trade secrets to provide service to current customers.

Brocade concedes that A10's employees need to have and to use the entire source code to continue to provide service to its current customers, but Brocade argues that A10 should only have six weeks – the amount of time A10 asserts it needs to redesign the AX Series without the trade secrets – to continue to possess and to use the trade secrets to provide customer service.[83] According to Brocade, after the six-week period, any of A10's customers who have problems with their software should upgrade to the version without the trade secrets.[84]

As the court noted in its order granting Brocade's request for a permanent injunction regarding the patent infringement, the public interest requires that the court mitigate the effects of the injunction on third parties – like A10's customers.[85]  The court agrees with A10 that a current customer carve-out is an appropriate modification to the injunction to allow A10's customers to

---

[81] *See* Docket No. 875 Ex. A (filed under seal).

[82] *See* Docket No. 852.

[83] *See* Docket No. 874; Docket No. 875 Ex. A.

[84] *See* Docket No. 874.

[85] *See* Docket No. 830; *see also i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) (approving carve out for current customers in patent permanent injunction context).

Case No.: C 10-03428 PSG
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

continue to receive service until they decide to upgrade their software.  Under Brocade's modification, the injunction effectively would force customers to upgrade their software after the six-week sunset period ends if they want any service from A10.  Brocade's counsel admitted as much at the hearing.  But the goal of the injunction is to prevent A10 from continuing to practice Brocade's trade secrets, not to force A10's customers to purchase products they may not necessarily want.

The court therefore will modify the injunction to allow A10 to continue possession and use of the trade secrets for the sole purpose of providing service to its current customers.  The injunction as modified will continue to prohibit A10 from including the trade secrets in any new shipments of the AX Series.

### 3.    Attorneys

A10 argues that the injunction as currently drafted may preclude A10's litigation counsel from having or using the trade secrets during the remainder of this litigation and in any future appeal.  Brocade concedes that an application of the injunction to A10's litigation counsel would be inappropriate.  The court agrees.  The court will modify the injunction to express explicitly that the injunction does not apply to A10's litigation counsel.

A10 further argues that its attorneys should be permitted to have ongoing access to the trade secrets to advise A10 as it attempts to design around or remove the trade secrets from its products.[86]  Brocade disagrees and asserts that any advice from attorneys with knowledge of the trade secrets during development of a non-infringing version of the product would be an improper "use" of the trade secrets.[87]

---

[86] *See* Docket No. 852.

[87] *See* Docket No. 874.

18

Case No.: C 10-03428 PSG
ORDER

To support this rather novel concept of the "use" of trade secrets, Brocade cites to two cases, *Tingley Sys., Inc. v. CSC Consulting, Inc.*[88] and *Computer Associates International v. Quest Software, Inc.*[89] In *Tingley*, the district court noted that a pleading including allegations that a clean room included people with knowledge of the trade secrets sufficiently stated a claim.[90] In *Computer Associates*, the district court found that where an attorney who had knowledge of the trade secret code had communicated with participants in the clean room, the communications between the attorney and the participants were subject to inspection by the other side.[91]

Although these cases suggest that an attorney with knowledge of the trade secrets who advises on the clean room procedures may waive any privilege if the clean room subsequently is used as a defense, the cases do not suggest an expansion of the term "use" under the California Uniform Trade Secret Act ("CUTSA") to include attorneys advising clients on how to avoid practicing the trade secrets. At the hearing Brocade's counsel even suggested that a product that did not practice the trade secret because of advice from an attorney with knowledge of the trade secrets in fact would use the trade secret. Brocade stretches the CUTSA's protection of trade secrets too far.

In its modified injunction, the court will carve out A10's attorneys and litigation counsel. Brocade is welcome to challenge any clean room process A10 uses, but the court will not extend the protection of its trade secrets beyond CUTSA's boundaries.

---

[88] 152 F. Supp. 2d 118 (D. Mass. 2001).

[89] 333 F. Supp. 2d 688 (N.D. Ill. 2004).

[90] *See* 152 F. Supp. 2d at 118.

[91] *See* 333 F. Supp. 2d at 701.

19

Case No.: C 10-03428 PSG
ORDER

### 4.      Sunset Provision

A10 finally argues for a six-week sunset provision during which time it may continue to sell AX Series products with the trade secrets to new customers while it designs around the trade secrets.[92]   As A10's counsel conceded at the hearing, A10's sales during the sunset period would also be subject to any current customer carve-out that the court adds to the injunction.   Brocade opposes this modification.

As both Brocade and A10 have stated, once customers purchase these products they retain them for several years.   Permitting A10 to continue selling the product with the trade secrets to new customers and then allowing A10 to serve those new customers until they decide to upgrade circumvents the purpose of the injunction.   A10 had notice after the jury's verdict in August and again in September when Brocade sought an injunction that it may be enjoined from continuing to make and sell its product with the trade secrets.   Its timing in making the necessary changes is its right but it is not grounds for a sunset provision that would allow it to sell to more new customers and through the customer carve-out to continue providing service to those new customers using Brocade's trade secrets potentially for years.

The request for the sunset provision is DENIED.

### IV.      CONCLUSION

The court finds A10 is not entitled to stays of the injunctions pending appeal but it is entitled to modification of the trade secret injunction.[93]   For the foregoing reasons,

IT IS HEREBY ORDERED that pursuant to California Civil Code § 3426.2(a) and (c), A10 and its successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with them (including any affiliated entities), who have actual notice of this injunction,

---

[92] *See* Docket No. 852.

[93] The court also takes this opportunity to modify the injunction to omit time limits that it inadvertently included in the original injunction.   *See* Docket No. 880.   The court removes those time limits here and notes that pursuant to California Civil Code § 3426.2(a) A10 may move for termination of the injunction if and when the trade secrets no longer retain their confidential status.

20

Case No.: C 10-03428 PSG
ORDER

commencing on the date hereof are hereby ENJOINED and RESTRAINED from disclosing or distributing information regarding ███████████████████████████████████████ or making, using, selling, offering to sell, or importing any AX series application delivery controller using or incorporating a feature ████████████████████████████████ except as described below.

IT IS FURTHER ORDERED that pursuant to California Civil Code § 3426.2(a) and (c), A10 and its successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with them (including any affiliated entities), who have actual notice of this injunction, commencing on the date hereof are hereby ENJOINED and RESTRAINED from disclosing or distributing information regarding linking, for ██████████████████████████████████████████████████████████████████ or making, using, selling, offering to sell, or importing any AX series application delivery controller using or incorporating the same feature except as described below.

IT IS FURTHER ORDERED that pursuant to California Civil Code § 3426.2(a) and (c), A10 and its successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with them (including any affiliated entities), who have actual notice of this injunction, commencing on the date hereof are hereby ENJOINED and RESTRAINED from disclosing or distributing information regarding ████████████████████████████████████████ ███████████ or making, using, selling, offering to sell, or importing any AX series application delivery controller using or incorporating the same feature except as described below.

IT IS FURTHER ORDERED that pursuant to California Civil Code § 3426.2(a) and (c), A10 and its successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with them (including any affiliated entities), who have actual notice of this injunction, commencing on the date hereof are hereby ENJOINED and RESTRAINED from disclosing or distributing information regarding ████████████████████████████████████████████████ or making, using, selling, offering to sell, or importing any AX series application delivery controller using or incorporating the same feature except as described below.

IT IS FURTHER ORDERED that nothing in this injunction precludes A10, its successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with them (including any affiliated entities), who have actual notice of this injunction from reverse engineering the trade secrets described elsewhere in this injunction through development within a clean room environment or through any other lawful means of development.

IT IS FURTHER ORDERED that A10, its successors, assigns, officers, agents, servants, employees, and persons in active concert or participation with them (including any affiliated entities) may continue to possess and to use the trade secret features described above for the sole

21

purpose of providing service to customers who purchased the AX Series prior to the date of this injunction.  Attorneys for A10 may continue to possess and to use the trade secret features described above for the purposes of representing A10, its successors, assigns, officers, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities) in litigation and to advise A10, its successors, assigns, officers, agents, servants, employees, attorneys, and persons in active concert or participation with them (including any affiliated entities) to avoid future practice of the trade secrets.

**IT IS SO ORDERED.**

Dated: February 12, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: C 10-03428 PSG
ORDER