1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BROCADE COMMUNICATIONS SYSTEMS, INC., ET AL.,<br><br>           Plaintiffs,<br><br>     v.<br><br>A10 NETWORKS, INC., ET AL.,<br><br>           Defendants. | Case No.: C 10-3428 PSG<br><br>**ORDER RE: SCOPE OF NEW TRIAL**<br><br>**(Re: Docket Nos. 986, 991)** |

Before the court are a motion brought by A10 Networks, Inc. ("A10") to exclude patent damages evidence from Brocade Communications Systems, Inc., et al ("Brocade") and to enter judgment on the damages and a motion brought by Brocade to strike A10's request. Having considered the parties' papers and arguments, the court DENIES both motions.

The court first addresses Brocade's motion to strike. Brocade argues that A10 improperly seeks reconsideration of the court's January 10, 2013 order and various *Daubert* determinations before the original trial. The court disagrees. Rather than a mere rehash of its earlier efforts, A10's present motion seeks to exclude Brocade's patent damages evidence because the evidence

1

Case No.: C 10-03428 PSG
ORDER

impermissibly conflicts with the court's January 10 order.[1]  This is a distinction with a difference. The court therefore will consider the motion.

Turning to A10's request, A10 specifically moves to exclude from the upcoming retrial evidence from Brocade's damages expert James Malackowski ("Malackowski").  Relying on the court's January 10 order vacating the first jury's patent damages award and setting a new trial, A10 asserts that Malackowski's testimony is no longer admissible, if it ever was.  In that order, the court found that Brocade had not provided substantial evidence from which a reasonable jury could find that the implementations of GSLB and HA on which Brocade owns the asserted patents drive consumer demand for A10's infringing product.[2]  Because Brocade had not made that showing, the court determined that Brocade could not rely on the Entire Market Value Rule ("EMVR") and so also could not rely on A10's entire revenue from its AX series product as the royalty base for its reasonable royalty damages estimates.[3]  The court also found that Brocade failed to provide sufficient evidence to show that the AX Series was the "smallest saleable unit" of the specific implementations of the GSLB and HA features protected by Brocade's patents, and so Brocade's reliance on the entire revenues from the AX Series had to be the result of an EMVR theory.[4]

Because of its findings in the reasonable royalty context, the court further determined that Brocade could not rely on the EMVR in the lost profits context.[5]  Relying on *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,[6] the court nevertheless found that Brocade had presented sufficient evidence to support the first two factors of a *Panduit* theory for lost profits, specifically

---

[1] *See* Docket Nos. 667, 845.

[2] *See* Docket No. 845.

[3] *See id.*

[4] *See id.*

[5] *See id.*

[6] 567 F.3d 1314 (Fed. Cir. 2009); *see also Presidio Components Inc. v. Am. Technical Ceramics Corp.*, 702 F.3d 1351, 1360 (Fed. Cir. 2012).

Case No.: C 10-03428 PSG
ORDER

demand for a directly competing product and an absence of non-infringing alternatives.[7]  The court

did not discuss the other two *Panduit* factors because it determined that the jury's damages award

entries needed to be vacated in any event because they were irreconcilable and problematic in light

of the lack of substantial evidence for an EMVR theory of a reasonable royalty.[8]

Following the court's order, the parties entered into a stipulation regarding the scope of

evidence to be presented at the new trial.[9]  The stipulation provides:

> [T]he entire record of the July 16 Trial shall be deemed admissible; subject to, (a) all prior
> objections and rulings are hereby preserved, and (b) the parties reserve objections to any
> particular piece of evidence or testimony under FRE 401-403 as may pertain to which
> evidence is properly presented in light of the scope of the Retrial.  New evidence, other than
> new testimony of the live expert witnesses . . . , shall not be permitted.  No opinions beyond
> the scope of the Parties' prior expert reports, or beyond the testimony given by the experts
> during the July 16 trial, as they relate to the Retrial, are permitted to be offered during
> direct examinations.[10]

In the stipulation, A10 noted its objection to "any retrial of the [intentional interference with

contractual relations] punitive damages claim along with the patent damages claim, and intends to

present a motion to the Court on that subject," and both parties agreed that at the pretrial

conference, "the Court may rule upon any pretrial motions and/or objections (including but not

limited to the limiting impact, if any, of the JMOL order)."[11]

A10 now asserts that because of that agreement and the court's January 10 order finding

Brocade's evidence insufficient to support any EMVR theory, Brocade has no evidence from

which to provide a viable theory of lost profits or reasonable royalty damages.  A10 thus seeks

---

[7] *See* Docket No. 845

[8] *See id.*

[9] *See* Docket No. 906.

[10] *Id.*

[11] *Id.*  In an order dated April 29, 2013, the court agreed with A10 that a retrial of the punitive
damages was not warranted.  *See* Docket No. 935.

Case No.: C 10-03428 PSG
ORDER

entry of judgment in the amount of zero dollars because, according to A10, Brocade cannot satisfy its burden to show damages.  In the alternative, A10 is willing to consent to entry of the lump sum amount of royalty damages to which its expert testified in the original trial.

The court notes that A10 is equally obligated to the restrictions of the stipulation to which it seeks to bind Brocade.  And so A10 has waived any admissibility challenges to Brocade's patent damages other than objections on Fed. R. Evid. 401, 402, or 403 grounds.  The court therefore does not consider any Fed. R. Evid. 702 challenges to the patent damages evidence.

As for those challenges that A10 may pursue, the court finds that Brocade's patent damages evidence is at the very least relevant to its damages theories.  As described above, the court did not find that Brocade failed to produce substantial evidence of any lost profits theory, only that it could not rely on the EMVR in the lost profits context.  A10 maintains that Brocade still must apportion the profits.  A10's argument is appealing, but it has not cited any Supreme Court or Federal Circuit case requiring an apportionment when a patentee claims lost profits based on *Panduit*.  Nor do any of the cases it does cite arise in the context of a *Panduit*-based lost profits claim.[12]  To the extent that Brocade's patent damages evidence supports a non-EMVR lost profits theory, the unfair prejudice does not substantially outweigh the probative value, as required for exclusion under Rule 403.

---

[12] A10 cites *Rite-Hite Corp. v. Kelly Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995), in which the Federal Circuit addressed the EMVR in the lost profits context and indirectly referenced apportionment in its discussion of the need to show consumer demand to pursue an EMVR theory in lost profits.  In *Rite-Hite*, the court also discussed how *Panduit* satisfied the "but for" causation a patentee must show to recover lost profits from an infringing product that directly competed with the patentee's product.  *See id.* at 1546-47.  The other case A10 cites, *Uniloc USA, Inc. v. Microsoft Corp*, 632 F.3d 1292, 1318 (Fed. Cir. 2011), addressed apportionment in the EMVR context, but did not discuss either lost profits generally or *Panduit* specifically.

*Panduit* is an alternative theory of establishing lost profits, *see Presidio Components Inc.*, 702 F.3d at 1360, *DePuy Spine*, 567 F.3d at 1331, and A10 has not provided case law that supports its argument that under that theory, apportionment is necessary.  The Federal Circuit very recently opined that the *Panduit* factors "place no qualitative requirement on the level of demand necessary to show lost profits," *see Versata Software, Inc. v. SAP America, Inc.*, --- F.3d --- (Fed. Cir. 2013), thus suggesting that apportionment – at least as consumer demand stands as a way of showing apportionment – is unnecessary under *Panduit*.

4

Case No.: C 10-03428 PSG
ORDER

As for the reasonable royalty theory, the court admits it is confused why Brocade agreed to limit itself to the evidence and record of the first trial when the court already determined that it could not satisfy either the smallest-saleable-unit doctrine or the EMVR with the evidence it presented there.  Brocade suggests that Malackowski can use the same evidence and opinions and somehow come into compliance with both limits on damages recovery because, *Uniloc USA, Inc. v. Microsoft Corp.*[13] and *LaserDynamics, Inc. v. Quanta Computer, Inc.*[14] notwithstanding, Malackowski's theory passes muster under *Lucent Technologies, Inc. v. Gateway, Inc.*[15]  In *Lucent*, the Federal Circuit stated that "the base used in a running royalty calculation can always be the value of the entire commercial embodiment, as long as the magnitude of the rate is within an acceptable range (as determined by the evidence)."[16]  In *Uniloc* and *LaserDynamics*, separate three-judge panels seemingly disavowed this language, with the *LaserDynamics* court observing that "it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit'" and so "the requirement to prove that the patented feature drives demand for the entire product may not be avoided by the use of a very small royalty rate."[17]  Acting en banc or otherwise, the Federal Circuit has not, however, overruled *Lucent*'s holding regarding the use of a small royalty rate with an entire apparatus's revenues.

According to Brocade, its theory does not run afoul of *Uniloc* or *LaserDynamics* because it is not relying on the EMVR but rather on a presentation that the AX Series is the smallest saleable unit and so it may still rely permissibly on the entire revenue from its sales as the royalty base.  The court has its doubts, given its previous holding that in the first trial Brocade did not established that

---

[13] 632 F.3d 1292 (Fed. Cir. 2011).

[14] 694 F.3d 51 (Fed. Cir. 2012).

[15] 580 F.3d 1301 (Fed. Cir. 2009).

[16] *Id.* at 1338-39.

[17] 694 F.3d at 67; *see also Uniloc*, 632 F.3d at 1320.

Case No.: C 10-03428 PSG
ORDER

the AX Series is the smallest saleable unit and also because, even if it is, another, second, EMVR or apportionment analysis may be necessary.[18]

But given the Federal Circuit's variety of opinions, the court cannot say at this point that Malackowski's testimony presents such unfair prejudice that it substantially outweighs any probative value to Brocade's case for damages.  The court therefore will not exclude all evidence of patent damages given the statutory requirement of an award of reasonable royalty damages upon a finding of infringement[19] and given that Brocade has suggested it can use the same evidence and avoid conflicting with the court's January 10 order.  But the court cautions Brocade to heed the Federal Circuit's warning in *Uniloc* regarding the introduction of a product's entire revenue without a corresponding showing that the EMVR is appropriate.  The court has its doubts, but is willing to give Brocade an opportunity to present a theory that can survive the Federal Circuit's directives and this court's order.

Having determined that the retrial will go forward as scheduled, the court turns to other disputes the parties raised in their pretrial papers.  First, Brocade and A10 dispute whether the parties must read their transcript designations from the first trial into the record or whether they simply can supply the jury with a binder of transcripts.  The court agrees with A10 that providing the jury with binders of transcripts is problematic.  But the court does not agree that the only other option is to read the transcripts into the record.  The court thus changes the terms of the parties' stipulation to allow them either to read the transcripts into the record or to present live witnesses

---

[18] *See AVM Tech., LLC v. Intel Corp.*, Case No. 10-610-RGA, 2013 WL 126233, at *3 (D. Del. Jan. 4, 2013) ("The use of a saleable unit that is greater than the patented feature is going to introduce *Uniloc* error when the patented feature is a 'date picker' whether the saleable unit is a computer loaded with 'Outlook' or simply 'Outlook.'").

[19] *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.").

6

Case No.: C 10-03428 PSG
ORDER

who may testify within the scope of their testimony from the first trial.  Accordingly, the parties shall have two extra hours to present their respective cases for a total of eight hours per side.

As to Brocade's blanket Fed. R. Evid. 703 challenge to A10's desire to publish inadmissible evidence on the grounds that its expert relied on the materials, the court will determine the propriety of the publications on an exhibit-by-exhibit basis.  The parties agreed at the pretrial conference to meet and confer regarding objections to exhibits and transcript designations.  As the court ordered then and repeats now, the parties shall submit no later than Thursday, May 16, 2013, their narrowed list of exhibit and transcript designation objections.  They shall also submit with those objections electronic and hard copy versions of the exhibits and transcript designations for the court to review.  Per the parties' stipulation, the court will consider only Fed. R. Evid. 401, 402, or 403 objections to the admissibility of the evidence and will consider Fed. R. Evid. 703 challenges only as to material not previously published to the jury in the first trial.

Along with the exhibits and transcript designations, the parties also shall provide to the court by Thursday, May 17, 2013 an update regarding the dispute over the neutral statement to be read during jury selection and presumably as part of the jury instructions.  If a dispute remains, the parties shall submit their proposed statements along with a one-page, single-spaced brief detailing their arguments and objections.

**IT IS SO ORDERED.**

Dated:  May 15, 2013

PAUL S. GREWAL
United States Magistrate Judge

Case No.: C 10-03428 PSG
ORDER